DMP:SKW/MAA
F. #2015R02002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

FAWAZ OULD AHMED OULD
AHEMEID,
    also known as "Ibrahim Idress" and
    "Ibrahim Dix,"
               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW

20-CR-502 (BMC)

THE GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A PRETRIAL CONFERENCE
PURSUANT TO THE CLASSIFIED INFORMATION PROCEDURES ACT

BREON PEACE
United States Attorney
Eastern District of New York

Sara K. Winik
Meredith A. Arfa
Assistant United States Attorneys
(Of Counsel)

**PRELIMINARY STATEMENT**

The defendant, Fawaz Ould Ahmed Ould Ahemeid, also known as "Ibrahim Idress" and "Ibrahim Dix," is charged in a six-count indictment with offenses arising from his activities on behalf of the foreign terrorist organizations al-Qaeda in the Islamic Magreb ("AQIM") and al-Murabitoun, both of which operate under al-Qaeda's umbrella. See ECF No. 3. The defendant planned and was involved in significant terrorist attacks against Western targets, including: (1) an attack on the La Terrasse restaurant in Bamako, Mali, on March 7, 2015, in which five individuals were killed; (2) an attack on the Hotel Byblos in Sevare, Mali, on August 7, 2015, in which 13 individuals—including five United Nations workers—were killed; and (3) an attack on the Radisson Blu Hotel in Bamako, Mali, on November 20, 2015, in which 20 individuals were killed, including U.S. citizen Anita Ashok Datar. See ECF Nos. 1, 14.

The government has determined that this case may implicate classified information. Accordingly, the government respectfully submits this memorandum of law to apprise the Court of the applicability of the Classified Information Procedures Act, 18 U.S.C. app. 3 ("CIPA"), to matters relating to classified information that may arise in connection with this case, both before and during trial.

The government also respectfully requests that the Court hold a pretrial conference, pursuant to Section 2 of CIPA, to consider such matters. The date of the next status conference in this matter is November 14, 2023 before this Court. The government respectfully requests that, in addition to the status conference, the Court hold a CIPA Section 2 conference at that time. At that conference, the government will propose a schedule for the filing of the government's anticipated motion pursuant to CIPA Section 4.

2

## FACTUAL AND PROCEDURAL BACKGROUND

The factual background below is set forth in further detail in the Complaint and the government's detention memorandum.   See ECF Nos. 1 (Complaint), 14 (government's detention memorandum).

In short, after joining AQIM in or around 2007, the defendant planned and committed significant terrorist attacks against Western targets on behalf of AQIM and al-Murabitoun.   The defendant personally carried out the March 7, 2015 attack on the La Terrasse restaurant, which was frequented by Westerners in Bamako, Mali.   He was armed with two AK-47 assault rifles, a pistol, and grenades, and killed five individuals in the attack.   That same day, al-Murabitoun issued a public statement claiming responsibility for the attack.

Following the La Terrasse attack, the defendant met with the Malian-based head of operations for al-Murabitoun to discuss carrying out additional terrorist attacks on Western targets in the region.   The defendant subsequently helped to plan and execute the August 7, 2015 attack on the Hotel Byblos in Sevare, Mali.   During that attack, a lone gunman armed with an AK-47 assault rifle and equipped with a suicide vest entered the Hotel Byblos and opened fire.   The attack resulted in the deaths of 13 individuals, including five United Nations workers.   On or about August 10, 2015, al-Murabitoun issued a public statement claiming responsibility for the attack.

The defendant also planned and helped oversee the execution of the November 20, 2015 attack on the Radisson Blu Hotel, which was targeted because of its popularity with Westerners.   For example, approximately ten days before the attack on the Radisson Blu Hotel, the defendant and a co-conspirator met with the two chosen attackers, one from AQIM and one from al-Murabitoun, to discuss the attack; according to a statement by the defendant, the two terrorist

3

groups had decided to conduct the attack jointly against a "common enemy." The defendant and the co-conspirator instructed the attackers to kill as many Westerners as possible, and particularly to prioritize the killing of French citizens. Beginning in the morning of November 20, 2015, the two attackers—armed with AK-47 assault rifles and hand grenades, and carrying the flag of al-Murabitoun—attacked the Radisson Blu Hotel. The attack resulted in the deaths of 20 individuals, including U.S. citizen Anita Ashok Datar. Datar, a 41-year-old public health expert from Takoma Park, Maryland, was in Mali working for an international development firm assisting the United States Agency for International Development. Datar, who was a guest at the Radisson Blu Hotel, was shot multiple times and died at the scene as a result of the gunshot wounds. In addition to the 20 individuals killed, at least seven individuals were wounded.

On December 7, 2015, AQIM issued the following public statement via Twitter, claiming responsibility for the attacks on behalf of AQIM and al-Murabitoun: "Two heroes infiltrating the Radisson Hotel in Mali, may God accept them. #Al-Qa'ida_in_West_Africa #Ansar_al_din #Al_Murabitun." The tweet included photographs of the two attackers holding AK-47s and included each attacker's nom de guerre. The attackers were depicted standing in front of a beige pickup truck parked under a tree. Each photograph was emblazoned with the logo of Al-Ribat Media Foundation, the official media arm of al-Murabitoun.

Following his April 2016 arrest by Malian forces and while in custody in Mali, the defendant made voluntary, Mirandized statements to agents of the Federal Bureau of Investigation's Joint Terrorism Task Force ("JTTF") on two separate occasions. During these interviews, the

4

defendant provided a detailed account of his role in planning and directing the November 2015 attack on the Radisson Blu Hotel, as well as his role in the other violent terrorist attacks.

On November 5, 2020, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with (1) the murder of Datar, in violation of 18 U.S.C. § 2332(a)(1); (2) the unlawful use of firearms in connection with a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 924(c)(1)(B)(ii); (3) causing the death of Datar through the use of a firearm, in violation of 18 U.S.C. § 924(j); (4) conspiracy to provide material support to AQIM and al-Murabitoun, in violation of 18 U.S.C. § 2339B; (5) provision and attempted provision of material support to AQIM and al-Murabitoun, in violation of 18 U.S.C. § 2339B; and (6) unlawful use of explosives, in violation of 18 U.S.C. §§ 844(h)(1) and 844(h)(2).  See ECF No. 3.  On or about December 9, 2022, the defendant was transferred to the custody of U.S. authorities in Mali.  On December 9, 2022, the defendant arrived in the United States in the custody of agents of the JTTF and was arrested pursuant to the charges in the indictment.  The government has since made a number of non-classified discovery productions to the defendant.  See ECF Nos. 26, 28, 52.

## BACKGROUND ON CIPA

When a case may implicate classified information, it is the government's practice to provide the Court with a detailed description of the procedures mandated by CIPA for protecting such classified information.

I.      THE CLASSIFIED INFORMATION PROCEDURES ACT

"CIPA, which establishes certain procedures for the handling of classified information in criminal cases, is designed 'to protect[ ] and restrict[ ] the discovery of classified

information in a way that does not impair the defendant's right to a fair trial.'" United States v. Abu-Jihaad, 630 F.3d 102, 140 (2d Cir. 2010) (quoting United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008)); see also In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 115 (2d Cir. 2008) ("CIPA establishes rules for the management of criminal cases involving classified information."). CIPA defines "[c]lassified information" as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. app. 3, § 1(a).

## II.    PRETRIAL CONFERENCES, PROTECTIVE ORDERS AND DISCOVERY

### A.    Pretrial Conferences

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. app. 3, § 2. After such a motion is filed, Section 2 states that the district court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." Id.

### B.    Protective Orders

Section 3 of CIPA requires the Court, upon the request of the United States, to issue an order "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case. . . ." 18 U.S.C. app. 3, § 3. The key Senate Report on CIPA, issued by the Senate Committee on the Judiciary, provides that the terms of a protective order may include, but need not be limited to, provisions:

6

(1) prohibiting the disclosure of the information except as authorized by the court; (2) requiring storage of material in a manner appropriate for the level of classification assigned to the documents to be disclosed; (3) requiring controlled access to the material during normal business hours and at other times upon reasonable notice; (4) requiring the maintenance of logs recording access by all persons authorized by the court to have access to the classified information in connection with the preparation of the defense; (5) requiring the making and handling of notes taken from material containing classified information; and (6) authorizing the assignment of government security personnel and the provision of government storage facilities.

S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299 (1980).

C.    Discovery of Classified Information by the Defendant

Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove."   18 U.S.C. app. 3, § 4.

Like Rule 16(d)(1) of the Federal Rules of Criminal Procedure, Section 4 of CIPA provides that the United States may demonstrate that the use of such alternatives is warranted through an in camera, ex parte submission to the Court, and the Second Circuit has repeatedly affirmed district court decisions entering protective orders based on such submissions.   See United States v. Al-Farekh, 956 F.3d 99, 107 (2d Cir. 2020) (noting that both CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1) "'authorize ex parte proceedings' and that a 'district court acts well within its discretion in reviewing [CIPA] submissions ex parte and in camera'") (internal citations omitted); Abu-Jihaad, 630 F.3d at 142-143 (recognizing that "a district court's decision to

7

conduct ex parte hearings manifests no abuse of discretion"); Aref, 533 F.3d at 81 ("When the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks omitted)).

District courts within the Second Circuit—including this Court—have universally and uniformly upheld the use of ex parte filings and in camera proceedings in CIPA Section 4 motions. See, e.g., United States v. Wang, No. 22-CR-230, ECF No. 35 (E.D.N.Y. Aug. 25, 2023) (Brodie, J.); United States v. Chudhary, No. 20-CR-135, ECF No. 47 (E.D.N.Y. Apr. 2, 2021) (Amon, J.); United States v. Kandic, No. 17-CR-449, ECF No. 41 (E.D.N.Y. Jan. 17, 2019) (Garaufis, J.); United States v. Guzman Loera, No. 09-CR-466, ECF Nos. 228 and 681 (E.D.N.Y. May 15 and Nov. 5, 2018) (Cogan, J.); United States v. Shahnaz, No. 17-CR-690, ECF No. 24 (E.D.N.Y. Aug. 8, 2018) (Seybert, J.); United States v. Zhong, No. 16-CR-614, ECF No. 70 (E.D.N.Y. Sept. 6, 2017) (Irizarry, J.); United States v. Lin, No. 15-CR-601, ECF No. 71 (E.D.N.Y. Oct. 19, 2016) (Irizarry, J.); United States v. Isa, No. 11-CR-819, ECF No. 64 (E.D.N.Y. Sept. 19, 2016) (Mauskopf, J.); United States v. Al Farekh, No. 15-CR-268, ECF No. 59 (E.D.N.Y. Aug. 23, 2016) (Cogan, J.); United States v. Velentzas, No. 15-CR-213, ECF No. 54 (E.D.N.Y. Aug. 10, 2016) (Johnson, J.); United States v. Harun A Hausa, No. 12-CR-134, ECF No. 90 (E.D.N.Y. Mar. 26, 2016) (Cogan, J.); United States v. Medunjanin, No. 10-CR-019, ECF No. 172 (E.D.N.Y. Feb. 22, 2012) (Dearie, J.); see also United States v. Saipov, No. 17-CR-722, 2019 WL 5558214, at *7 (S.D.N.Y. Oct. 29, 2019) (Broderick, J.); United States v. Schulte, No. 17-CR-548, 2019 WL 3764662, at *7 (S.D.N.Y. July 22, 2019) (Crotty, J.); United States v. Chi Ping Ho, No. 17-CR-779, 2018 WL 6082514, at *4 (S.D.N.Y. Nov. 21, 2018) (Preska, J.); United States v. Ng Lap Seng,

No. 15-CR-706, 2017 WL 2715213, at \*2 (S.D.N.Y. June 22, 2017) (Broderick, J.); United States v. Mostafa, No. 04-CR-356, ECF No. 233 (S.D.N.Y. Jan. 17, 2014) (Forrest, J.); United States v. al Fawwaz, et al., No. 98-CR-1023, ECF No. 1317 (S.D.N.Y. Sep. 24, 2013) (Kaplan, J.); United States v. El-Hanafi et al., No. 10-CR-162, ECF No. 94 (S.D.N.Y. Feb. 24, 2012) (Wood, J.).

"CIPA 'overlays the framework appearing in Fed. R. Crim. P. 16, which itself authorizes district courts to restrict discovery of evidence in the interest of national security.'" Velentzas, 2016 WL 4250304, at \*2 (quoting United States v. Zazi, No. 10-CR-60 (JG), 2011 WL 2532903, at \*1 (E.D.N.Y. Jun. 24, 2011)); see also Aref, 533 F.3d at 78.   Indeed, CIPA's legislative history makes clear that the Court may take national security interests into account in determining whether to permit discovery to be denied, restricted or deferred.   See S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980) (citing "the protection of information vital to the national security" as one consideration justifying limitations on discovery); see also Abu-Jihaad, 630 F.3d at 140 (making clear that district courts have the power under Federal Rule of Criminal Procedure 16(d)(1) "to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security") (quoting United States v. Stewart, 590 F.3d 93, 130 (2d Cir. 2009)); Aref, 533 F.3d at 78 (same).

As the Second Circuit has observed, "CIPA does not itself create a government privilege against the disclosure of classified information; it presupposes one."   Stewart, 590 F.3d at 130.   "The privilege it presupposes has its origins in the common-law privilege against disclosure of state secrets . . . which 'allows the government to withhold information from discovery when disclosure would be inimical to national security.'"   Abu-Jihaad, 630 F.3d at 140-41 (internal citations omitted, quoting Zuckerbraun v. Gen. Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991)).

9

"CIPA's framework for nondisclosure provides a means for applying the state-secrets privilege to classified information which, in ordinary circumstances, would be discoverable.  Proper application of that privilege requires balancing of the government's need to protect national security with the right of a defendant to mount a full defense."  United States v. Boulos, No. 13-CR-612 (ENV), 2015 WL 502170, at *1 (E.D.N.Y. Feb. 3, 2015) (internal citations omitted).

The application of the government's privilege against disclosure of classified information is a multi-step process.  "First, the district court must determine whether the material in dispute is discoverable, and if so, whether the state-secrets privilege applies."  Stewart, 590 F.3d at 131.  If the material in dispute is discoverable, "the state-secrets privilege applies if '(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'"  Abu-Jihaad, 630 F.3d at 141 (quoting Aref, 533 F.3d at 80).  "If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful to counter the government's case or to bolster a defense." Aref, 533 F.3d at 80 (internal quotation marks omitted).

In determining whether deletion or substitution of classified information is appropriate, a court must balance the government's national security interest against the defendant's rights to present his defense.  For example, under CIPA, a court may permit the government to produce exculpatory or helpful information "in a form that will preserve its sensitivity," including summaries that omit classified information that is "not helpful to the defense."  Al Farekh, 2016 WL 4444778, at *2-3; see also United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989) ("a

10

defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'").   The fact that defense counsel possesses a security clearance does not itself entitle counsel to receive classified information in discovery.   Indeed, as the Second Circuit has recognized, "[n]othing in the text of § 4 limits the District Court's authority to review classified information <u>ex</u> <u>parte</u> only where defense counsel lacks a security clearance."   <u>Al-Farekh</u>, 956 at 107; <u>see</u> <u>also</u> <u>United States v. Babafemi</u>, No. 13 CR 109 (JG), 2014 WL 1515277, at *3 (E.D.N.Y. Apr. 18, 2014) ("A person may have access to classified information provided that . . . the person has a need-to-know the information."); <u>Zazi</u>, 2011 WL 2532903, at *3 (same); <u>United States v. Libby</u>, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses.").

III.   NOTICE   OF   DEFENDANT'S   INTENT   TO   DISCLOSE   AND   PRETRIAL EVIDENTIARY RULINGS

There are three critical pretrial steps in the handling of classified information under CIPA after such information has been provided to the defendant through discovery.  First, the defendant must, pursuant to CIPA Section 5(a), specify in detail the precise classified information he reasonably expects to disclose at trial.   Second, the Court, upon motion of the government, shall hold a hearing pursuant to Section 6(a) to determine the use, relevance, and admissibility of the proposed evidence.   Third, following the Section 6(a) hearing and formal findings of admissibility by the Court, the United States may move to substitute an admission of relevant facts or summaries for classified information that the Court rules admissible.

A.   The Requirement to Provide Notice of Disclosure

Section 5(a) requires a defendant who intends to disclose (or cause the disclosure

11

of) classified information to provide timely pretrial written notice of that intention to the Court and the government.    Section 5(a) expressly requires that such notice "include a brief description of the classified information," and case law under Section 5(a) holds that such notice "must be particularized, setting forth specifically the classified information which the defendant reasonably believes to be necessary to his defense."    United States v. Collins, 720 F.2d 1195, 1199 (11th Cir. 1983) (emphasis added); see also United States v. Smith, 780 F.2d 1102, 1105 (4th Cir. 1985) (en banc).    This requirement applies to both documentary exhibits and witness testimony, whether that testimony is anticipated to be elicited on direct or cross-examination.    See United States v. Hitselberger, 991 F. Supp. 2d 91, 95 (D.D.C. 2013) (CIPA's disclosure requirement applies "regardless of the witness or the document through which that information is to be revealed.") (quoting United States v. Poindexter, 725 F. Supp. 13, 33 (D.D.C. 1989)).

If the defendant fails to provide a sufficiently detailed notice far enough in advance of trial to permit the implementation of CIPA procedures, Section 5(b) authorizes the Court to "preclude disclosure of any classified information."    18 U.S.C. app. 3, § 5(b); see also United States v. Badia, 827 F.2d 1458, 1464-66 (11th Cir. 1987) (upholding preclusion of disclosure of classified information at trial because defendant failed to comply with notice requirements of CIPA § 5).    Similarly, if the defendant attempts to disclose at trial classified information that is not described in his Section 5(a) notice, preclusion is the appropriate remedy under Section 5(b) of CIPA.    See United States v. Pappas, 94 F.3d 795, 799 (2d Cir. 1996) ("[A] defendant shall not disclose classified information 'in connection with a trial or pretrial proceeding' until the required notice has been given."); Smith, 780 F.2d at 1105 ("defendant is forbidden from disclosing any

12

such information absent the giving of notice"); see generally United States v. North, 708 F. Supp. 399 (D.D.C. 1988).

B.     The Pretrial Hearing on Disclosure

Prior to trial, pursuant to Section 6(a) of CIPA, upon motion of the government, the Court must hold a hearing "to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. app. 3, § 6(a). The statute expressly provides that if the Section 6(a) motion is filed before trial or the relevant pretrial proceeding, "the court shall rule [on the use, relevance, or admissibility of the classified information at issue] prior to the commencement of the relevant proceeding." Id. (emphasis added).

Section 6(b) of CIPA requires that before any hearing is conducted under Section 6(a), the United States must notify the defendant of the hearing and identify the classified information which will be at issue. If the information was not previously made available to the defendant, the United States may, with the Court's approval, provide a generic description of the material to the defendant. Thus, as Congress recognized in enacting CIPA, "the Government would not have to disclose the identity of an undercover intelligence agent not previously disclosed to the defendant; instead, the Government would describe the information as 'the identity of an undercover intelligence agent' if this meets with court approval." S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4301 (1980).

At the Section 6(a) hearing, the Court hears the defense proffers and the arguments of counsel, then rules whether the classified information identified by the defense is relevant under

13

Rule 401 of the Federal Rules of Evidence.[1]  Smith, 780 F.2d at 1106; see generally Yunis, 867 F.2d at 622.  The Court's inquiry does not end there, however, because under Rule 402 of the Federal Rules of Evidence, "[n]ot all relevant evidence is admissible at trial."  Id.  The Court must also determine whether the evidence is cumulative, "prejudicial, confusing, or misleading," such that it should be excluded under Rule 403 of the Federal Rules of Evidence.  United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984).  At the conclusion of the Section 6(a) hearing, the Court must state in writing the reasons for its determination as to each item of classified information.

      C.      Substitution in Lieu of Disclosure

In the event that the Court rules that one or more items of classified information are admissible, the United States has the option of proposing a "substitution" for the classified information at issue, pursuant to Section 6(c) of CIPA.  18 U.S.C. app. 3, § 6(c).  The United States may move for permission to provide the defense either a substitute statement admitting relevant facts that the classified information would tend to prove, or substitute a summary of the classified information that would otherwise be disclosable.  See In re Terrorist Bombings, 552 F.3d at 116.  The Court must grant the motion for substitution "if it finds that the [substituted] statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."  Id.

---

[1] CIPA does not change the "generally applicable evidentiary rules of admissibility." United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984); accord Babafemi, 2014 WL 1515277, at *1. Rather, CIPA alters the timing of rulings concerning admissibility, so as to require them to be made before trial.  United States v. Poindexter, 698 F. Supp. 316, 318 (D.D.C. 1988); accord Zazi, 2011 WL 2532903, at *1; Smith, 780 F.2d at 1106.

14

If the Court determines that the item of classified information at issue is relevant and admissible and denies the government's motion for substitution, Section 6(e)(1) of CIPA permits the government to object to the classified information's disclosure.   18 U.S.C. app. 3, § 6(e)(1). In such cases, the Court "shall order that the defendant not disclose or cause the disclosure of such information."   Id.   Section 6(e) then sets forth a sliding scale of remedies that the Court may impose in such a case.   Id. at § 6(e).

## IV.    OTHER RELEVANT CIPA PROCEDURES

### A.    Interlocutory Appeal

Section 7(a) of CIPA provides for an interlocutory appeal by the United States from any decision or order of the trial judge "authorizing the disclosure of classified information," imposing sanctions on the United States "for nondisclosure of classified information," or for "refusing a protective order sought by the United States to prevent the disclosure of classified information."   18 U.S.C. app. 3, § 7(a).   The term "disclosure" relates both to information that the court orders the United States to divulge to the defendant as well as to information already possessed by the defendant that he or she intends to make public.   Section 7(b) requires the Court of Appeals to give expedited consideration to any interlocutory appeal filed under Section 7(a).   Id. § 7(b).

### B.    Rules Governing Introduction of Classified Information

To prevent "unnecessary disclosure" of classified information, Section 8(b) permits the Court to order admission into evidence only a part of a writing, recording, or photograph. Alternatively, the Court may order into evidence the entire writing, recording, or photograph with all or part of the classified information contained therein excised.   Excision of such classified

15

information may not be authorized, however, if fairness requires that the whole document, recording, or photograph be considered.

Section 8(c) establishes a procedure for addressing the problems that may emerge during the taking of testimony from a witness who possesses classified information not previously found to be admissible.   If the defendant knows that a question or a line of inquiry would result in disclosure of classified information, CIPA mandates that the defendant give the United States immediate notice under Section 5 of the Act; Section 8(c), in effect, serves as a supplement to the Section 6(a) procedures, addressing circumstances that might not have been anticipated in advance of the taking of testimony.   Thus, upon objection of the United States to a defense question or line of inquiry not covered in a Section 6(a) proceeding, the Court must take suitable action to avoid the improper disclosure of classified information by a witness.

C.      Security Procedures

Section 9 of CIPA required the Chief Justice of the United States to prescribe security procedures for the protection of classified information in the custody of federal courts. Such procedures were originally promulgated in 1981 and have been in place, with revisions, ever since.  See "Revised Security Procedures Established Pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information" (reprinted following 18 U.S.C. app. 3, § 9).

**THE COURT SHOULD HOLD A CIPA PRETRIAL CONFERENCE**

In the instant case, classified material may exist that could be subject to disclosure in advance of trial under applicable rules, statutes, and case law. The disclosure of such material would raise issues of national security that need to be addressed under CIPA. Accordingly, the government has requested a pretrial conference pursuant to Section 2 of CIPA to take place on November 14, 2023, and, at that conference, for the Court to set a schedule for the government to file any motion pursuant to CIPA Section 4.

The government has endeavored to identify the universe of potentially discoverable classified material and determine its potential applicability, nature, and volume. Presently, the government has nearly completed its review of any potentially discoverable classified information. Based on that estimate, the government will request a schedule for the filing of motions, pursuant to Sections 3 and 4 of CIPA, if necessary, relating to the deletion, substitution, or disclosure pursuant to a protective order of classified information otherwise subject to discovery under the Federal Rules of Criminal Procedure and applicable law. 18 U.S.C. app. 3, § 4.

Because of the classified nature of any such information identified by the government, the government will not be able to describe or discuss the information in open court at the Section 2 conference. Accordingly, should the government identify potentially discoverable classified information, pursuant to Section 4 of CIPA, the government will make an in camera, ex parte submission regarding classified materials that the government believes should be subject to deletion, substitution, or disclosure pursuant to a protective order, for reasons the government will further set forth in that submission. See id.; see also supra (courts in this Circuit have consistently

17

held that <u>in camera</u>, <u>ex parte</u> submissions to a district court in matters involving national security are proper, particularly when such submissions involve classified information).

### CONCLUSION

For the foregoing reasons, the government respectfully requests the Court hold a pretrial conference pursuant to Section 2 of CIPA on November 14, 2023, at which the Court should set a schedule for the government to file any motion pursuant to Section 4 of CIPA.

Dated:       Brooklyn, New York
             November 8, 2023

                          BREON PEACE
                          United States Attorney
                          Eastern District of New York

             By:       /s/
                          Sara K. Winik
                          Meredith A. Arfa
                          Assistant U.S. Attorneys
                          (718) 254-7000

18