UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES,

      v.

FAWAZ OULD AHMED OULD AHEMEID,

      Defendant

---------------------------------------------------------X

20 Cr. 502 (BMC)

**DEFENDANT'S EMERGENCY MOTION FOR IMMEDIATE DISCLOSURE OF DISCOVERY RELEVANT TO ATTORNEY GENERAL BONDI'S EVALUATION OF WHETHER TO MAINTAIN OR SEEK TO REVERSE ATTORNEY GENERAL GARLAND'S PRIOR DECISION NOT TO SEEK THE DEATH PENALTY IN THIS CASE, AND FOR RELIEF PURSUANT TO 18 U.S.C. APP. 3 § 2**

MICHAEL K. BACHRACH, ESQ.
224 West 30th Street, Suite 302
New York, New York 10001
(212) 929-0592
michael@mbachlaw.com

ANTHONY CECUTTI, ESQ.
217 Broadway, Suite 707
New York, New York 10007
(917) 741-1837
anthonycecutti@gmail.com

KESTINE THIELE, ESQ.
305 Broadway, Suite 700
New York, New York 10007
(212) 542-3860
kestine@kthielelaw.com

*Attorneys for Defendant Fawaz Ould Ahmed Ould Ahemeid*

**Table of Contents**

Table of Authorities ............................................................................................................. ii

I.       Preliminary Statement................................................................................................1

II.      Background ...............................................................................................................1

III.     Defendant's Specific Requests ..................................................................................5

IV.      Since Attorney General Bondi is considering whether to reverse the prior
         Administration's decision not to seek the death penalty, this case has effectively
         returned to a pre-authorization posture, and as such Mr. Ahemeid is entitled to the
         requested discovery for use in the Authorization Process ........................................8

V.       The Government cannot stand behind CIPA as a shield to its discovery obligations .......14

VI.      Conclusion ...............................................................................................................21

## Table of Authorities

CASES

American-Arab Anti-Discrimination Committee v. Reno,
70 F.3d 1045 (9th Cir. 1995) ........................................................................................15

Ayers v. Belmontes,
549 U.S. 7 (2006)..............................................................................................................3

Brady v. Maryland,
373 U.S. 83 (1963)...........................................................................................7, 8, 9, 10,
16, 18, 20

California v. Ramos,
463 U.S. 992 (1983).......................................................................................................12

Detroit Free Press v. Ashcroft,
303 F.3d 681 (6th Cir. 2002) .......................................................................................14

Giglio v. United States,
405 U.S. 150 (1972) ....................................................................................7, 10, 18, 20

Guenther v. Commissioner of Internal Revenue,
889 F.2d 882 (9th Cir. 1989) .......................................................................................14

INS v Chadha,
462 U.S. 919 (1983)........................................................................................................15

Kyles v. Whitley,
514 U.S. 419, 437 (1995)........................................................................................18, 20

Link v. Wabash R.R. Co.,
370 U.S. 626 (1962).........................................................................................................8

McCleskey v. Kemp,
481 U.S. 279 (1987).........................................................................................................3

Rovario v. United States,
353 U.S. 53 (1975).........................................................................................................16

Tennard v. Dretke,
542 U.S. 274 (2004).........................................................................................................3

Tiktok Inc. v. Garland,
145 S.Ct. 57 (2025).......................................................................................................14

United States v. Aref,
533 F.3d 72 (2d Cir. 2008)...................................................................................15, 16, 19, 20

United States v. Constanza-Goldomez, et al.,
Criminal Case No. SAG-22-409 (D.MD May 12, 2025) (Doc. No. 93) ............................7

United States v. Ablett,
Docket No. 3:09-cr-00749-RS (N.D.Cal. December 29, 2010) (Doc. No. 73) .................11

United States v. Avellino,
136 F.3d 249, 255 (2d Cir. 1998)......................................................................................10

United States v. Avellino,
129 F.Supp.2d 214 (EDNY 2001) .....................................................................................10

United States v. Brooks,
966 F.2d 1500 (D.C. Cir. 1992).....................................................................................18, 20

United States v. Clemente,
Docket No. 11 Cr. 499 (JAF),
2012 U.S. Dist. LEXIS 140728 (D.P.R. Sept. 19, 2012)...................................................12

United States v. Coplon,
185 F.2d 629 (2d Cir. 1950)..........................................................................................14, 15

United States v. Daniel,
Docket No. 2:19-cr-00107-KJM,
2021 WL 2808706 (E.D.Cal. July 6, 2021) ......................................................................11

United States v. Delatorre,
438 F.Supp.2d 892 (N.D.Ill. 2006) ..............................................................................11, 12

United States v. Diaz,
Docket No. 05 Cr. 0167 (WHA) (JL),
2005 WL 1575191 (N.D.Cal. June 30, 2005)....................................................................11

United States v. Dumeisi,
424 F.3d 566 (7th Cir. 2005) ............................................................................................15

United States v. El-Hanafi,
Docket No. 10 CR 162 KMW,
2012 WL 603649 (SDNY Feb. 24, 2012)..........................................................................18

United States v. Ghailani,
687 F.Supp.2d 365 (SDNY 2010)......................................................................................18

iii

United States v. Jackson,
Docket No. 02 CR. 756 (LMM), 2003 U.S. Dist. LEXIS 24877
(SDNY Aug. 27, 2003) ........................................................................................................9

United States v. Liu,
Docket No. 19 Cr. 804 (VEC),
 2021 WL 3374535 (SDNY Aug. 3, 2021) ........................................................................16

United States v. Mahaffy,
693 F.3d 113 (2d Cir. 2012)..............................................................................................8, 9

United States v. Mejia,
448 F.3d 436 (D.C. Cir. 2006) ...........................................................................................16

United States v. Ming He,
94 F.3d 782 (2d Cir. 1996)..................................................................................................9

United States v. Moussaoui,
483 F.3d 220 (4th Cir. 2007) ..............................................................................................8

United States v. Nelson,
Docket No. 3:17-cr-00533-EMC (N.D.Cal. December 19, 2018) (Doc. No. 506)............11

United States v. O'Hara,
301 F.3d 563 (7th Cir. 2002) ..............................................................................................15

United States v. Perez,
222 F.Supp.2d 164 (D.Conn. 2002)....................................................................................9

United States v. Poindexter,
698 F.Supp. 316 (D.D.C. 1988)..........................................................................................14

United States v. Poindexter,
725 F.Supp. 13 (D.D.C. 1989)............................................................................................17

United States v. Reynolds,
345 U.S. 1 (1953)................................................................................................................15

United States v. Rittweger,
524 F.3d 171 (2d Cir. 2008)................................................................................................8

United States v. Rodriguez,
496 F.3d 221 (2d Cir. 2007)................................................................................................8

United States v. Rosen,
557 F.3d 192 (4th Cir. 2009) ..............................................................................................20

United States v. Saa,
859 F.2d 1067 (2d Cir. 1988)........................................................................................16

United States v. Smallwood,
Docket No. 5:08-CR-00038-R, 2009 U.S. Dist. LEXIS 51676
(W.D.Ky. June 18, 2009) ..............................................................................................11

United States v. Spurlock,
Docket No. 3:23-cr-00022-MMD,
2025 WL 1360499 (D.Nev. May 9, 2025).......................................................................7

United States v. Stewart,
590 F.3d 93 (2d Cir. 2009)............................................................................................14

United States v. Yunis,
924 F.2d 1086 (D.C. Cir. 1991)...............................................................................16, 20

United States v. Velissaris,
Docket No. 22 Cr. 105 (DLC),
2022 WL 2392360 (SDNY July 3, 2022) .......................................................................19

United States v. Wilson,
901 F.2d 378 (4th Cir. 1990) ........................................................................................15

United States v. Wilson,
Docket No. 19 Cr. 155 (EAW),
2021 WL 480853 (WDNY February 10, 2021)..............................................................10

Wardius v. Oregon,
412 U.S. 470 (1973).......................................................................................................12

Woodson v. North Carolina,
428 U.S. 280 (1976).......................................................................................................12

## STATUTES AND OTHER AUTHORITIES

18 U.S.C. § 3500.................................................................................................8, 10, 20

18 U.S.C. § 3592.......................................................................................................3, 4

18 U.S.C. § 3593................................................................................................................4

Classified Information Procedures Act, 18 U.S.C. App. 3 .................................3, 6, 14, 15,
16, 17, 20, 21

18 U.S.C. App. 3 § 2.................................................................................................7, 21, 22

18 U.S.C. App. 3 § 4.....................................................................................................6, 15

Fed.R.Crim.P. 16 .................................................................................................7, 11, 18, 20

Executive Order 13526,
*Classified National Security Information* (Dec. 29, 2009) ................................................17

Executive Order 14164,
*Restoring the Death Penalty and Protecting Public Safety* (January 20, 2025)...................3

Justice Manual § 9-10.000, et seq. ........................................................................................2, 9

Justice Manual § 9-10.080 .................................................................................................3, 12, 13

Justice Manual § 9-10.140 .......................................................................................................10

Justice Manual § 2052 .....................................................................................................18, 19, 20

Justice Manual § 2054 ...............................................................................................................17

Attorney General Pam Bondi, Memorandum, *Reviving the Federal Death Penalty
and Lifting the Moratorium on Federal Executions* (Feb. 5, 2025)
(available at https://www.justice.gov/ag/media/1388561/dl) ........................................2, 3

Office of the Director of National Intelligence, "How the IC Works"
(available at https://www.intelligence.gov/how-the-ic-works) (last accessed, May
9, 2025) ........................................................................................................................................2

Guidelines 10.7 and Commentary, ABA Guidelines for the Appointment and
Performance of Defense Counsel in Death Penalty Cases (February 2003),
31 Hofstra L. Rev. 913 (2003)...............................................................................................14

Guidelines 10.8 and Commentary, ABA Guidelines for the Appointment and
Performance of Defense Counsel in Death Penalty Cases (February 2003),
31 Hofstra L. Rev. 913 (2003)...............................................................................................14

## I.    Preliminary Statement

Defendant Fawaz Ould Ahmed Ould Ahemeid (hereinafter, "Defendant" or "Mr. Ahemeid"), by and through counsel, writes to respectfully request immediate production of discovery relevant to Attorney General Bondi's evaluation of whether to maintain or seek to reverse Attorney General Garland's decision not to seek the death penalty against Mr. Ahemeid.

## II.    Background

Stated succinctly, Mr. Ahemeid is charged in a six-count indictment with offenses arising from his alleged membership in al-Qaeda in the Islamic Maghreb ("AQIM") and al-Murabitoun. Mr. Ahemeid is accused of planning and committing three terrorist attacks in Mali: an attack on the La Terrasse restaurant in Bamako, Mali, on March 7, 2015, in which five people were killed; an attack on the Hotel Byblos in Sevare, Mali, on August 7, 2015, in which 13 individuals – including five United Nations workers – were killed; and an attack on the Radisson Blu Hotel in Bamako, Mali, on November 20, 2015, in which 20 victims were killed, including U.S. citizen Anita Ashok Datar.

Upon his capture in April 2016, Mr. Ahemeid was incarcerated at a Malian intelligence facility in Bamako until December 2022 when he was extradited to the United States. At this black site, known as Direction Générale de la Sécurité d'Etat ("DGSE"), Mr. Ahemeid endured years of torture and repeated interrogations by numerous law enforcement agencies, including the FBI. Based upon United States intelligence gathering in prior cases, it is reasonable to assume that other United States intelligence agencies were involved in Mr. Ahemeid's interrogations, but at a minimum the Government has confirmed the FBI's involvement.

During this time, Mr. Ahemeid made various incriminating statements. We intend to argue by way of motion practice and at a hearing that such statements were involuntary and a product of

1

years of torture while detained at DGSE. We also intend to argue that the conditions of his confinement, the torture and/or "enhanced interrogation techniques" that he was subjected to, the involvement therein of the Government, which includes the United States Intelligence Community ("USIC"), as well as the USIC and Attorney General's involvement in the decision regarding when to finally transfer Mr. Ahemeid to United States custody for the instant prosecution, are factors relevant to additional motions to dismiss the Indictment as well.[1]

Most importantly for present purposes, these measures and decisions, and the potential motion-practice that will result, are all relevant to arguments we intend to raise as reasons why the prior Administration's decision not to seek the death penalty should be reaffirmed by the present Administration.

Pursuant to Attorney General Pam Bondi's February 5, 2025, Memorandum, *Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions* (available at https://www.justice.gov/ag/media/1388561/dl) (hereinafter cited as, "Bondi Memo."), "All revisions to Justice Manual § 9-10.000, et seq. [i.e., the DOJ's death penalty protocols], that occurred between January 20, 2021, and January 19, 2025, are suspended" to provide "the Office of Legal Policy, in coordination with additional components as appropriate," an opportunity to "review such revisions and make recommendations to the Deputy Attorney General concerning whether such revisions should be retained, amended, or descended." Bondi Memo. at 3 § IV. As such, until a new version of Section 9-10.000, et seq., of the Justice Manual is released, the last revision under the first Trump Administration is in effect to the extent consistent with Executive

---

[1]    The United States Intelligence Community is comprised of 18 organized agencies that each focus on a different aspect of a common mission. In turn, it is subject to oversight by several governmental groups and also partners with numerous other external groups which include domestic, international, military, law enforcement and private sector partners. See Office of the Director of National Intelligence, "How the IC Works" (available at https://www.intelligence.gov/how-the-ic-works) (last accessed, May 9, 2025).

2

Order 14164.  See Bondi Memo. at 3 § IV, referencing, Executive Order 14164, *Restoring the Death Penalty and Protecting Public Safety* (January 20, 2025).[2]

Under Justice Manual § 9-10.080 (Non-Expedited Decision Submissions), the Attorney General will consider, inter alia, "relevant prosecutorial considerations," which refers to, amongst other things, the likelihood of success at trial and during pretrial motions.  Additional "relevant prosecutorial considerations" also arise in a case, like here, where the case involves classified information and the impact of the Classified Information Procedures Act (18 U.S.C. App. 3) and relevant Executive Orders on the prosecution of the case.  The Attorney General will also consider an assessment of the applicable mitigating factors under 18 U.S.C. § 3592(a), see Justice Manual Section 9-10.080(A)(4), after providing "counsel for the defendant a reasonable opportunity to present information … which may bear on the decision whether to seek the death penalty."

In this instance, the facts and circumstances of Mr. Ahemeid's interrogations, enhanced interrogations, and torture during his detention at DGSE, as well as the seven-year delay between Mr. Ahemeid's apprehension and transfer to the United States for prosecution, will all bear on the arguments presented by the defense in support of a reaffirmation of the prior Administration's decision not to seek the death penalty in this case.  See Ayers v. Belmontes, 549 U.S. 7, 21 (2006) (mitigating factors are "potentially infinite"); McCleskey v. Kemp, 481 U.S. 279, 306 (1987) (the sovereign "cannot limit the sentencer's consideration of any relevant circumstances that could cause it to decline to impose the [death] penalty"); see also Tennard v. Dretke, 542 U.S. 274, 284-85 (2004) (Evidence does not need a nexus to the crime to be mitigating, "[r]elevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which

---

[2]    The undersigned has confirmed directly with the Attorney General's Capital Review Committee that the December 2020 version of the Justice Manual, to the extent consistent with Executive Order 14164, is the version of the Justice Manual referenced in the Bondi Memo expected to be followed until directed otherwise.

3

a fact-finder could reasonably deem to have mitigating value.").

If the death penalty is sought by the Government, for the jury to determine that a sentence of death is the only appropriate sentence, the jury will be required to "consider any mitigating factor," 18 U.S.C. § 3592(a), including, but not limited to, those listed as examples under 18 U.S.C. §§ 3592(a)(1)-(8).  The jury will then be required to "consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e); see also 18 U.S.C. § 3593(c) (explaining that the Government carries the "burden of establishing the existence of any aggravating factor … beyond a reasonable doubt" whereas the defense carries the "burden of establishing the existence of any mitigating factor … by a preponderance of the information").

Here, if the death penalty is sought by the Government, the defense will endeavor to establish, as mitigating factors, some form of the following: (1) that Mr. Ahemeid was held in pretrial conditions that were so harsh that he has already been sufficiently punished so that a sentence of life imprisonment is sufficient further punishment in this case; (2) that Mr. Ahemeid was interrogated in a fashion equivalent to the common understanding of torture; and (3) that the United States government's role in Mr. Ahemeid's interrogations, enhanced interrogations, and/or torture weigh against the need to punish Mr. Ahemeid beyond a further sentence of life imprisonment.  Similarly, in pretrial motions we will argue that the United States government's role and conduct in the above bares relevance to, inter alia, the pretrial motions to suppress his custodial statements and to dismiss the case due to pre-indictment delay.

Of course, if the defense can convince the Attorney General not to authorize the Government to seek the death penalty in the first place, then the entirety of the penalty phase, and

4

all the additional time needed to prepare for it, will be obviated.[3]

We anticipate raising all these points, and others, in Mr. Ahemeid's supplemental submission to the U.S. Attorney for the Eastern District of New York and the DOJ Capital Case Review Committee.

Defendant's supplemental submission is due June 2, 2025, in advance of defense counsels' meeting with the DOJ Capital Review Committee on June 9, 2025. As such, we respectfully request that the instant motion be adjudicated on an expedited basis.[4]

## III.    Defendant's Specific Requests

The defense seeks all information known, or that reasonably should be known, to the Government related to three categories of information: (1) the conditions of confinement under which Mr. Ahemeid was held and subjected to at DGSE; (2) the methods of interrogation, "enhanced interrogation," and/or torture that Mr. Ahemeid was subjected to at DGSE; (3) the United States government's role in Mr. Ahemeid's interrogation, "enhanced interrogation," and/or torture at DGSE, including which USIC agencies were involved, how they were involved, and how long each individual interrogation, enhanced interrogation, and or torture practice took place; and (4) any memorialized basis for why the United States government waited seven years between Mr. Ahemeid's arrest in Mali and subsequent indictment in the United States.

Defendant has also provided the Government with additional specific requests, that cannot

---

[3]    In is worth noting that the budget that has been proposed by the defense in this case is a Stage 1 capital budget, which means that it only relates to the authorization phase of this case. Should the case be authorized, then separate Stage 2 and Stage 3 budgets will be required to cover the additional time and expenses necessary for preparing for trial *after authorization* (Stage 2), as well as then for the months-long multi-phased trial itself that follows (Stage 3). Thus, more than mere time is at stake during the authorization process, which is another reason why the defendant's preauthorization submission to the U.S. Attorney and the DOJ Capital Case Review Committee must be meticulously researched and prepared.

[4]    We emailed the Government yesterday to request a postponement of our mitigation submission deadline and meeting with the Attorney General Capital Review Committee. Based upon how these meetings are presently being scheduled in other cases, we do not anticipate receiving an extension, but we will alert the Court if an extension is granted.

be listed herein, but we hereby incorporate into the instant motion.  Those additional requests were derived from the defense investigation as well as through a review of classified information subject to the requirements of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3.  At least some of Defendant's specific requests are classified.  As such, in the abundance of caution, the undersigned submitted those specific requests to the Government in accordance with CIPA, marking each as "Presumptively Classified."  As such, likewise in an abundance of caution, we will make arrangements to provide copies of those specific requests directly to the Court under similar handling and limitations and not further publicize the contents of them herein.

As an unclassified means of referencing them herein, we will refer to them as Classified Discovery Letter #1, Classified Discovery Letter #2, and Classified Discovery Letter #3.  To date, the Government has responded to Classified Discovery Letter #1 and Classified Discovery Letter #2 but has not yet responded to Classified Discovery Letter #3.  We anticipate, however, that their response to Classified Discovery Letter #3 will be the same and due to the time-sensitivity of the instant request we cannot wait any longer for the Government to reply.

With respect to our first two classified discovery letters, the Government has responded to us, in an unclassified letter, as follows:

> With respect to the requests set forth in those letters, we are aware of and have complied with our discovery obligations.  To the extent any of the requests implicate classified information, we have complied with our discovery obligations consistent with the Classified Information Procedures Act, 18 U.S.C. app. 3.

Gov't Letter, dated, April 18, 2025, at 1.  We take this to mean: (1) the Government interprets its discovery requirements as not requiring further discovery at this time; or (2) the Government has been granted permission by this Court to withhold the requested information subject to 18 U.S.C. App. 3 § 4.

6

With respect to Defendant's discovery requests, and particularly Defendant's classified discovery requests, we respectfully request that this Court order a hearing pursuant to 18 U.S.C. App. 3 § 2, and permit defense counsel to meet with the Court *ex parte* and *in camera* to further explain the basis for our classified requests and, if needed, the reasons we have a good faith basis to believe responses to them exist.

All of the information sought – both classified and unclassified – is sought pursuant to Rule 16 of the Federal Rules of Criminal Procedure, irrespective if sought for use in pretrial motions or in preparation for our DOJ submission. That said, all such information is also sought pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and their progeny, to the extent that evidence relates to Attorney General Bondi's reevaluation of whether to authorize the Government to attempt to seek the death penalty against Mr. Ahemeid.

In bringing this motion we specifically note that are not waiving our right to challenge a reversal of the prior Administration's decision not to seek the death penalty against Mr. Ahemeid, if the present Administration attempts to reverse it. To the contrary, we specifically reserve that right. See United States v. Spurlock, Docket No. 3:23-cr-00022-MMD, 2025 WL 1360499 (D.Nev. May 9, 2025) (striking the Government's Notice of Intent to Seek the Death penalty, which had been issued by Attorney General Bondi as a reversal of Attorney General Biden's prior decision not to seek the death penalty).[5]

---

[5]    Spurlock is the only case thus far where AG Bondi has instructed the Government to seek the death penalty in a case which had previously been no-seeked by AG Garland. Other judges, however, have expressed similar concerns as those found in Spurlock. See, e.g., United States v. Constanza-Goldomez, et al., Criminal Case No. SAG-22-409 (D.MD May 12, 2025) (Doc. No. 93):

> This Court is aware that the Department of Justice's Capital Case Unit re-opened capital review in this case and held a meeting in Washington, D.C. on April 23, 2025.
>
> **Should the government intend to attempt to contravene its representation of April 22, 2024 that it does not intend to seek the death penalty in this case**, ECF 48, it must file the notice required by 18 U.S.C. § 3593(a) no later than

We also note that in bringing this motion we recognize that the Jencks Act may play a role in at least *a portion* of the Government's discovery obligations.  In that respect, we acknowledge that we are not entitled to all Jencks Act material, however, we do request, and believe we are entitled to those witness statements – including cooperating witness statements, if any – that would be "*favorable to an accused …* either to guilt or to punishment." Brady, 373 U.S. at 87; see also United States v. Rittweger, 524 F.3d 171, 181 n.4 (2d Cir. 2008) ("Complying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under Brady—a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500."), citing, United States v. Rodriguez, 496 F.3d 221, 225-26 (2d Cir. 2007) (recognizing independence of obligations under Jencks Act and Brady).

> **IV.     Since Attorney General Bondi is considering whether to reverse the prior Administration's decision not to seek the death penalty, this case has effectively returned to a pre-authorization posture, and as such Mr. Ahemeid is entitled to the requested discovery for use in the <u>Authorization Process</u>**

The defense assumes that this Court does not want a dissertation on the responsibilities and breadth of the Government's obligations under Brady v. Maryland, supra, Giglio v. United States, supra, or their progeny.  However, a short discussion is still warranted since this motion is being brought in a unique phase that is not common to all prosecutions: namely, the death-authorization process and how that process impacts a general understanding of Brady, Giglio, the Jencks Act, United States v. Mahaffy, 693 F.3d 113, 130 (2d Cir. 2012), and this Court's inherent authority to

---

Friday, May 16, 2025 at noon.  **The setting of this deadline does not suggest or imply that the Court believes any such change in position would be legally permissible or timely.**  The deadline is intended only to permit this issue to be litigated (potentially under an expedited briefing schedule) before the fixed trial date of September 2, 2025.  See Link v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962); United States v. Moussaoui, 483 F.3d 220, 236 (4th Cir. 2007).

(Footnote omitted and emphasis added.)

regulate the nature and timing of discovery in criminal cases, see United States v. Ming He, 94 F.3d 782, 792 (2d Cir. 1996).

First and foremost is the often-forgotten fact that Brady itself was a death-penalty case. The evidence in Brady that had been found to have been suppressed in violation of the law related specifically to the penalty phase of the case, namely, the defendant's role in the offense, which the Supreme Court concluded could be considered by the jury as a mitigating factor favoring a sentence other than death. See Brady, 373 U.S. at 84 (affirming reversal of conviction and sentence where prosecution suppressed extrajudicial statement in which severed co-defendant "admitted the actual homicide," thereby corroborating Brady's defense that he "participat[ed]" in the murder but that his co-defendant "did the actual killing"); see also Mahaffy, 693 F.3d at 130 (Second Circuit defining Brady material to include evidence that is "inculpatory as well as exculpatory," when "its exculpatory character harmonize[s] with the theory of the defense case") (internal quotation marks and citation omitted).

Although Brady pre-dates the Government's internal obligations under Justice Manual § 9-10.000, *et seq.*, the Government's disclosure obligations related to the *penalty phase* of the case are equally relevant to its since-recognized obligations during the *authorization phase* of a modern Federal death penalty prosecution. See United States v. Jackson, Docket No. 02 CR. 756 (LMM), 2003 U.S. Dist. LEXIS 24877, *8 (SDNY Aug. 27, 2003) (holding that "penalty determination relevant material within the scope of Brady v. Maryland and its progeny, must be produced in time to be used in defense counsels' argument[s] against pursuit of the death penalty to both the United States Attorney and the Department of Justice"), citing, inter alia, United States v. Perez, 222 F.Supp.2d 164, 167-70 (D.Conn. 2002); see also Perez, 222 F.Supp.2d at 166 (concluding that "inasmuch as this case is currently a capital case because [the death-eligible defendant] is presently

9

subject to a possible sentence of death, ***materials relating to aggravating and mitigating circumstances are within the scope of the Government's obligations*** under Brady v. Maryland," and that "[s]uch materials are thus subject to immediate disclosure," citing the District of Connecticut's Standing Order on Pretrial Discovery, "which is issued pursuant to the Court's inherent authority to manage its docket and supervise the orderly disposition of criminal matters," and is analogous to this Court's Rule 5(f) Order, dated, December 10, 2022 (Doc. No. 12)); United States v. Wilson, Docket No. 19 Cr. 155 (EAW), 2021 WL 480853 (WDNY February 10, 2021) (although finding Brady inapplicable to the authorization phase of trial, instead ordering pre-authorization discovery pursuant to the court's "inherent authority" to regulate the nature and timing of discovery in criminal cases, as well as under Rule 16 to the extent the defendant makes "a *prima facie* showing of materiality"); cf. United States v. Avellino, 129 F.Supp.2d 214, 218 (EDNY 2001) ("Consideration of the dual relevance of [Brady/Giglio and Jencks Act] information to an accused compels the conclusion that due process requires that the government's Brady obligation trumps the statutory time table set forth in 18 U.S.C. § 3500 to the extent a temporal conflict is found to exist.  To conclude otherwise would indicate that Brady information contained in § 3500 material could be withheld from the defense during plea negotiations with impunity, a result at odds with Avellino."), citing, United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998).[6]

Numerous other District Courts outside of the Second Circuit have also ordered pre-

---

[6]    In Avellino, the Second Circuit held, in relevant part, that "[t]he government's obligation to make such disclosures is pertinent not only to an accused's preparation for trial but also to his determination of whether or not to plead guilty.  The defendant is entitled to make that decision with full awareness of favorable material evidence known to the government." Avellino, 136 F.3d at 255.  Such principle is no different here, where a defendant's willingness to pled guilty is likewise a factor relevant to the Attorney General's authorization decision. See Justice Manual § 9-10.140(D)(9) ("In deciding whether it is appropriate to seek the death penalty, the United States Attorney …, the Capital Review Committee, the Deputy Attorney General, and the Attorney General may consider any legitimate law enforcement or prosecutorial reason that weighs for or against seeking the death penalty.  Those considerations may include, but are not limited to … Whether the defendant has accepted responsibility for his conduct as demonstrated by his willingness to plead guilty….").

authorization discovery to assist the defendant in preparing his presentation to the U.S. Attorney and the Department of Justice. See, e.g., United States v. Daniel, Docket No. 2:19-cr-00107-KJM, 2021 WL 2808706 (E.D.Cal. July 6, 2021) (holding that the requirements of Fed.R.Crim.P. 16 includes pre-authorization discovery, assuming the defendant can establish materiality); United States v. Delatorre, 438 F.Supp.2d 892, 900-901, 903 (N.D.Ill. 2006) (ordering pre-authorization discovery, requiring the Government to "produce mitigating and aggravating factors and other Brady material ... so that it may be used in defense counsels' arguments against pursuit of the death penalty to both the United States Attorney and the Department of Justice"); United States v. Diaz, Docket No. 05 Cr. 0167 (WHA) (JL), 2005 WL 1575191, at *10 (N.D.Cal. June 30, 2005) (ordering extensive pre-authorization discovery, expressing the view that "[t]he exigencies of capital litigation compel, as a practical matter, an order to ensure the fair and orderly disposition of the case, prompt disclosure of all information which will affect the choice of penalty"); United States v. Smallwood, Docket No. 5:08-CR-00038-R, 2009 U.S. Dist. LEXIS 51676, at *4 (W.D.Ky. June 18, 2009) (holding that "in the interest of justice … the United States shall disclose Brady exculpatory evidence to the Defendant in time for effective use in her arguments to the United States Attorney and the Capital Review Committee"); United States v. Ablett, Docket No. 3:09-cr-00749-RS (N.D.Cal. December 29, 2010) (Doc. No. 73 at 2) (Magistrate Judge holding that "[t]he pre-authorization phase of a potential capital case is analogous to the penalty phase of a trial, and defense counsel must have access to all relevant discovery, in order to provide effective assistance to Defendant"); see also United States v. Nelson, Docket No. 3:17-cr-00533-EMC (N.D.Cal. December 19, 2018) (Doc. No. 506 at 3) (Minute Entry including Summary and Ruling by Court) (as a compromise to requiring Government to provide early identification of cooperating witnesses, the Court ordered Government to "produce a reasonably detailed narrative

11

of the Government's case and supporting evidence, including aggravating factors," 90 days before parties agreed defense would then submit its preauthorization submission); cf. United States v. Clemente, Docket No. 11 Cr. 499 (JAF), 2012 U.S. Dist. LEXIS 140728 (D.P.R. Sept. 19, 2012) (precluding the Government from seeking the death penalty because the Government's discovery violations prejudiced defendant in the authorization process); but see Delatorre, 438 F. Supp. 2d at 900 & n.7 (collecting cases where district courts have allowed and not allowed discovery before government makes final decision concerning death penalty).

A principal reason each of these cases has held that the defendant is entitled to discovery at earlier stages in a capital trial than would otherwise be expected in a non-capital trial is that "death is different," and that the Eighth Amendment imposes a heightened need to assure reliability of the sentencing determination:

> [T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment.

Woodson v. North Carolina, 428 U.S. 280, 305 (1976); see also California v. Ramos, 463 U.S. 992, 998-999 (1983) (noting "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination"). In turn, because of these heightened obligations, each of the above courts determined that preauthorization discovery serves the Supreme Court's stated goals.

For the same reason, the DOJ Protocols require the U.S. Attorney to "give counsel for the defendant a reasonable opportunity to present information … which may bear on the decision whether to seek the death penalty." Justice Manual § 9-10.080. In this regard, a meaningful opportunity means *before* the United States Attorney reaches any conclusion or forwards any written materials or recommendation to Washington, or, at an absolute minimum, before defense

12

counsel is required to provide our supplemental submission to the Attorney General's Capital Review Committee. Id. Moreover, information "which may bear on the decision whether to seek the death penalty" can include information that addresses mitigation *as well as* the defendant's response to the potential aggravating factors present in the case. Id. Thus, early disclosure by the Government is appropriate since it may impact upon the reliability of the fact-finding process prescribed by the Attorney General's protocols.

There is also a serious question about the need for reciprocity. Defense counsel are expected and often do reveal considerable confidential information to the Government in the process of trying to avoid a capital prosecution. In this light, the Government should be required to provide information in its possession or control that is directly relevant to the issues expected to be addressed by the defense in its preauthorization submission. See Wardius v. Oregon, 412 U.S. 470, 475, 476 (1973) ("[D]iscovery must be a two-way street." "It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State."). This is particularly the case when, as here, the defendant's preauthorization discovery requests are limited and specifically tailored to the issues that we are making known that we intend to address head-on in Defendant's supplemental submission to the Attorney General's Capital Review Committee.

Defendant respectfully submits that the prompt disclosure of each category of information and evidence requested herein, as well as the specific requests for information detailed in defense counsels' three Classified Discovery Demand Letters, are necessary so that we may make informed, accurate, and meaningful presentations to the United States Attorney for the Eastern District of New York and to the Attorney General's Capital Review Committee. The materials

13

and information requested are essential to our ability to make appropriate submissions regarding mitigating factors, the absence of aggravating factors, and the overall death-worthiness of this case. The ABA Guidelines also require us to make every effort to obtain this information or risk running afoul of our Sixth Amendment obligations. See Guidelines 10.7, 10.8, and Commentary, ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (February 2003) (hereinafter, "ABA Guidelines"), 31 Hofstra L. Rev. 913 (2003).

**V.     The Government cannot stand behind CIPA as a shield to its discovery obligations.**

Judge Learned Hand noted long ago, "Few weapons in the arsenal of freedom are more useful than the power to compel a government to disclose the evidence on which it seeks to forfeit the liberty of its citizens." United States v. Coplon, 185 F.2d 629, 638 (2d Cir. 1950). As such, *ex parte* proceedings are exceedingly disfavored. The Sixth Circuit cautioned, "Democracies die behind closed doors," Detroit Free Press v. Ashcroft, 303 F.3d 681, 683 (6th Cir. 2002), and the Ninth Circuit observed, "[E]x parte proceedings are anathema in our system of justice," Guenther v. Commissioner of Internal Revenue, 889 F.2d 882, 884 (9th Cir. 1989); see also Tiktok Inc. v. Garland, 145 S.Ct. 57, 74 (2025) (Gorsuch, J., concurrence) ("Efforts to inject secret evidence into judicial proceedings present obvious constitution concerns.").

In enacting CIPA, therefore, Congress warned that "the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without the Act." S.Rep.No. 96-823 at 9 (1980); see also, e.g., United States v. Poindexter, 698 F.Supp. 316, 320 (D.D.C. 1988). As a result, in cases involving classified information, to balance the need for secrecy with the defendant's right to Due Process, Congress enacted CIPA with the express purpose of protecting sensitive national security information while at the same time not impeding a defendant's rights. See United States v. Stewart, 590 F.3d 93, 130 (2d Cir. 2009); see also

14

American-Arab Anti-Discrimination Committee v. Reno, 70 F.3d 1045, 1069 (9th Cir. 1995) (in a civil case involving classified information, "[T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error."); see also id. at 1070 (noting "enormous risk of error" in use of classified evidence and explaining "the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution."), quoting, INS v Chadha, 462 U.S. 919, 944 (1983).

To that end, courts have held that the Government's privilege under CIPA "must give way" when classified information is "relevant and helpful" to the defense. United States v. Aref, 533 F.3d 72, 79 (2d Cir. 2008). "CIPA's fundamental purpose is to 'protect [] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'  It is essentially a procedural tool that requires a court to rule on the relevance of classified information before it may be introduced," United States v. Dumeisi, 424 F.3d 566, 578 (7th Cir. 2005), quoting, United States v. O'Hara, 301 F.3d 563, 569 (7th Cir. 2002), and citing, United States v. Wilson, 901 F.2d 378, 379 (4th Cir. 1990).

In criminal cases, the Government may not "undertake prosecution and then invoke its governmental privileges to deprive the accused on anything which might be material to his defense." United States v. Reynolds, 345 U.S. 1, 12 & n.27 (1953).  In particular, when the Government decides to exercise its privilege against "state secrets," the privilege is subordinate to a defendant's constitutional right to receive evidence material for his defense.  Aref, 553 F.3d at 79; see also Coplon, 185 F.2d at 638.

Critically, the Government may not withhold classified information under 18 U.S.C. App. 3 § 4, if the information requested is relevant, helpful, and material to the defense.  Indeed, CIPA

15

does not alter the rules of discovery or otherwise modify a defendant's discovery rights made under the Constitution or Federal Rules of Criminal Procedure. See United States v. Yunis, 924 F.2d 1086, 1094 (D.C. Cir. 1991). As mentioned above, when evidence is both discoverable and privileged, the Second Circuit has adopted a "relevant and helpful" standard for determining whether the Government may withhold classified information under CIPA. Aref, 533 F.3d at 79 (adopting Rovario standard for determining when the Government's privilege must give way in a CIPA case), citing, Rovario v. United States, 353 U.S. 53, 60-61 (1975) (in a criminal case, the Government's privilege to withhold the identity of a confidential informant "must give way" when the information is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause").

Under this standard, the Government must disclose privileged and discoverable information that is "relevant and helpful" to the defense. This Circuit has interpreted "relevant and helpful" under Rovario to mean "material to the defense." Aref, 533 F.3d at 79, citing, United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). For evidence to be material, it need not rise to the level that would trigger the Government's obligation under Brady to disclose exculpatory information. See United States v. Liu, Docket No. 19 Cr. 804 (VEC), 2021 WL 3374535, at *2 (SDNY Aug. 3, 2021); see also United States v. Mejia, 448 F.3d 436, 457 (D.C. Cir. 2006) ("[I]nformation can be helpful without being 'favorable' in the Brady sense.").

Here, the Government obtained a Protective Order to control the Classified Discovery in this case and had no objection to the appointment of counsel with sufficient security clearance to review the classified discovery related to Mr. Ahemeid's prosecution and defense. The Government also did not object to providing security clearances to the two defense counsel who did not possess the requisite security clearance prior to the start of this case. In turn, the

16

Government has disclosed a significant volume of classified discovery, though nothing thus far in response to the undersigned's classified requests. Nonetheless, by waiving any objection to the appointment of security-cleared defense counsel and by specifically providing classified discovery to the defense in this case, the Government cannot now dispute that defense counsel in this case possess a "need to know" classified information material and relevant to Mr. Ahemeid's defense. See Executive Order 13526, *Classified National Security Information* (Dec. 29, 2009), § 4.1(a)(3) ("A person may have access to classified information provided that … the person has a need-to-know the information."); see also id. § 6.1(dd) ("Need-to-know" is defined as "a determination within the executive branch … that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function.").

Because the Government has indicated that the Attorney General is considering whether to reverse the prior Administration's decision not to seek the death penalty in this case, the Government cannot claim that the information sought herein is irrelevant or immaterial to the authorization process or to Mr. Ahemeid's defense. As such, the undersigned have a clear need to know the information in question, and an urgent need to know that information without further delay.

As expressly provided by CIPA, the fact that discoverable information may be classified does not relieve the Government of its obligation to disclose the material to the defendant. See United States v. Poindexter, 725 F.Supp. 13, 32 (D.D.C. 1989) ("[T]he protection of the rights of the defendant is paramount under the statutory scheme."). While CIPA is intended as a procedural tool that does not itself modify the defendant's substantive rights or the Government's discovery obligations, see Justice Manual § 2054 (available at https://www.justice.gov/archives/jm/criminal-resource-manual-2054-synopsis-classified-information-procedures-act-cipa) (last accessed, May

9, 2025); see also United States v. El-Hanafi, No. 10 Cr. 162 KMW, 2012 WL 603649, at *2 (SDNY Feb. 24, 2012) ("CIPA does not expand or restrict established principles of discovery."), a wealth of caselaw and the Justice Department's own policy acknowledge that in a case involving classified information the Government's discovery obligations often implicate classified information in possession of the broader USIC and thus directs prosecutors to conduct a prudential search for such information that is relevant and helpful to the defense. See Justice Manual § 2052 (available at https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations.) (last accessed, May 9, 2025).

It is well-settled that the Government has a duty to search the files within the prosecutor's own office for evidence that is material and favorable to the defense. See Brady, 373 U.S. at 87; Giglio, 405 U.S. at 154. In addition, the Government's duty to search for discoverable material extends to other agencies acting on the Government's behalf even if the prosecutor has no personal knowledge of the existence of such material. See Kyles v. Whitley, 514 U.S. 419, 437 (1995); United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992); see also United States v. Ghailani, 687 F.Supp.2d 365, 370-372 (SDNY 2010) (imputing the term "the government" under Rule 16(a)(1)(E) to "include[] individuals at DoJ who participated in advising on or making the decisions regarding [the defendant's] prosecution," even if they were not otherwise " 'intimately involved' with federal prosecution of the charged conduct").[7] In such cases, "[k]nowledge of material information may be imputed to the prosecutor when that information is possessed by

---

[7]    In Ghailani, the parties agreed at oral argument that the term "the government" included, inter alia, "the prosecutors working on Ghailani's prosecution, the Criminal Division of the USAO and any USAO Civil Division personnel who are or were working with the Criminal Division on this case, the Assistant United States Attorneys on [a prior related trial], FBI or other law enforcement agents now or previously assigned to the prosecution team, and members of 'Main Justice' who have been involved with this prosecution." Ghailani, 687 F.Supp.2d at 370. The dispute that remained was regarding whether other members of, inter alia, "Main Justice," who were not "intimately involved" with Ghailani's prosecution, were nevertheless encompassed within the prosecution's discovery obligations. The court held that they were, and additional discovery was therefore ordered to be disclosed.

others on the prosecution team." United States v. Velissaris, Docket No. 22 Cr. 105 (DLC), 2022 WL 2392360, at *1 (SDNY July 3, 2022) (internal quotations omitted).

Here, given the fact that Mr. Ahemeid was arrested and detained in a foreign country where he was interrogated by the FBI and, upon information and belief, others, and where he was also allowed to remain for seven years before being extradited to the United States for prosecution in this country, the Government cannot reasonably deny that the discovery sought herein implicates the equities of multiple USIC agencies. The Government's obligation thus extends to a search of USIC files for discoverable material where, as here, the USIC may be presumed to have been involved in the investigation of a particular matter:

> When an IC component has actively participated in a criminal investigation or prosecution – that is, has served in a capacity that exceeds the role of providing mere tips or leads based on information generated independently of the criminal case – it likely has aligned itself with the prosecution and its files are subject to the same search as would those of an investigative law enforcement agency assigned to the case.

Justice Manual § 2052(B)(1).

Even where the USIC had no active involvement in the criminal investigation, the Government's search "must extend to sources that are readily available to the government and that, because of the known facts and nature of the case, should be searched as a function of fairness to the defendant." Justice Manual § 2052(B)(2). Here, one can reasonably assume that members of the USIC are in possession of information that falls within the four fundamental categories of discoverable information or, as Aref asserts, is relevant and helpful to the preparation of Mr. Ahemeid's defense, see Aref, 533 F.3d at 80, at trial and in relation to these earlier proceedings, see discussion and cases cited above.

19

Courts have held that the Government must conduct a search of its files if the defendant has made an explicit request for files and there is a non-trivial prospect that the examination of those files might yield material exculpatory information. See Brooks, 966 F.2d at 1504. Even absent an explicit request, a prosecutor is nevertheless required to search if there exists any reliable indication suggesting that files contain evidence that meets the Brady standard of materiality. See Justice Manual § 2052(B)(1); see also Kyles, 514 U.S. at 433 ("[R]egardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.") (internal quotations omitted).

Moreover, as previously discussed, courts have adopted a lesser standard than Brady in cases involving classified information in the possession of the USIC, requiring disclosure of information that is "relevant and helpful" to the defense. Aref, 533 F.3d at 80 ("[I]nformation can be helpful without being 'favorable' in the Brady sense.") (brackets in original citation omitted); see also, e.g., Yunis, 867 F.2d at 622 (employing "relevant and helpful" standard for determining whether classified information must be withheld or disclosed under CIPA); United States v. Rosen, 557 F.3d 192, 195 n.4 (4th Cir. 2009) (same). By this motion, and to avoid any later confusion, to the extent not already requested above or in the Defendant's three Classified Discovery Demand Letters, the defense also specifically seeks disclosure of all information "relevant and helpful" to the defense including, but not limited to, all classified Rule 16 material, Brady, Giglio, and, at the appropriate time, Jencks Act material.

In the present case there is a high likelihood – if not certainty – that the USIC possesses information that is relevant and helpful to the preparation of the defense and is beyond that which has already been disclosed. Mr. Ahemeid was held for seven years at DGSE where the statements

20

extracted from him form a significant portion of the Government's case. The nature of such detention and the means in which those statements were extracted, strongly suggest that the USIC, including but not limited to the FBI, the CIA, and other USIC agencies, possess additional classified information that is relevant and helpful to the preparation of the defense, including but not limited to preparation of our supplemental mitigation submission to the Attorney General's Capital Review Committee.[8]   Accordingly, the Government has a duty to search for such information and disclose it to the defense immediately, and to satisfy the Court that it has done so in a manner that is sufficient to discharge its constitutional obligations. Where necessary, we will of course consent to receipt of these materials pursuant to the procedures established by CIPA and will handle the information accordingly.

## VI.    Conclusion

Accordingly, based upon all the above-stated reasons, Defendant Fawaz Ould Ahmed Ould Ahemeid, by and through counsel, respectfully requests immediate disclosure of reports and records: (1) describing the conditions of confinement under which Mr. Ahemeid was held and subjected to at DGSE; (2) describing the methods of interrogation, "enhanced interrogation," and/or torture that Mr. Ahemeid was subjected to at DGSE; (3) describing the United States government's role in Mr. Ahemeid's interrogation, "enhanced interrogation," and/or torture at DGSE, including which USIC agencies were involved, how they were involved, and how long each individual interrogation, enhanced interrogation, and or torture practice took place; and (4) any memorialized basis for why the United States government waited seven years between Mr. Ahemeid's arrest in Mali and indictment in the United States.

---

[8]    The undersigned counsel (Michael K. Bachrach), notes that he has an additional good faith basis to believe this information exists, which, upon information and belief, has not been previously presented to this Court by prior counsel but which he can address with this Court in an *ex parte*, *in camera*, meeting held pursuant to 18 U.S.C. App. 3 § 2.

21

Defendant, through counsel, also requests that this Court direct the Government to provide discovery in response to Defendant's three Classified Discovery Demand Letters, and asks the Court to provide defense counsel an opportunity to meet with the Court *ex parte* and *in camera* pursuant to 18 U.S.C. App. 3 § 2, to further explain the basis for our classified requests and, if needed, the reasons we have a good faith basis to believe responses to them exist and should be disclosed.

Finally, because the Government has imposed a firm June 2, 2025 deadline for the defense to submit a written supplemental mitigation submission in advance of our June 9, 2025 meeting with the Attorney General's Capital Review Committee, we ask that this Court decide this motion on an emergency and expedited basis.[9]

Dated: New York, New York
      May 13, 2025

                        Respectfully submitted,

                        Michael K. Bachrach
                        Anthony Cecutti
                        Kestine Thiele

                        *Attorneys for Defendant*
                        *Fawaz Ould Ahmed Ould Ahemeid*

---

[9] To the extent, however, that this motion cannot be fully adjudicated prior to June 2, 2025, we still urge the Court to attempt to do so as soon as possible. Even were we not to receive the discovery prior to our June 2, 2025 deadline, or June 9, 2025 meeting, we could still request permission to file a second supplemental submission after the material has been received, particularly if the Attorney General's decision on whether to attempt to seek the death penalty in this case remains pending.

22