LAW OFFICE OF

# MICHAEL K. BACHRACH

224 WEST 30TH STREET, SUITE 302
NEW YORK, N.Y. 10001
--------------
TEL. (212) 929-0592 • FAX. (866) 328-1630

MICHAEL K. BACHRACH *
* admitted in N.Y., MN and D.C.

http://www.mbachlaw.com
michael@mbachlaw.com

May 26, 2025

**By ECF**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: United States v. Fawaz Ould Ahmed Ould Ahemeid,
20 Cr. 502 (BMC)(RML)**

Dear Judge Cogan:

I, along with Anthony Cecutti and Kestine Thiele, represent Defendant Fawaz Ould Ahmed Ould Ahemeid in the above-referenced matter and write to briefly reply to the Government's May 23, 2025 letter (Doc. No. 127) (hereinafter cited as, "Gov't letter"), and to provide further support for Defendant's motion for preauthorization discovery and for an *ex parte* CIPA conference with the Court (Doc. No. 120) (hereinafter cited as, "Def Mot.").

The Government states that it "has already complied with its discovery obligations with respect to the first three categories of information the defendant requests in the instant motion, all of which relate to the defendant's conditions of confinement while in Malian custody and interviews by U.S. and foreign authorities," Gov't letter at 2, referring to Defendant's specific request for three categories of information, namely, "(1) the conditions of confinement under which Mr. Ahemeid was held and subjected to at DGSE; (2) the methods of interrogation, 'enhanced interrogation,' and/or torture that Mr. Ahemeid was subjected to at DGSE; [and] (3) the United States government's role in Mr. Ahemeid's interrogation, 'enhanced interrogation,' and/or torture at DGSE, including which USIC agencies were involved, how they were involved, and how long each individual interrogation, enhanced interrogation, and or torture practice took place," Def. Mot. at 5. Stated simply, the Government is wrong; the specific information sought publicly and in Defendant's classified discovery demands have not been provided.

We do not dispute that the defense has received voluminous discovery in this case – both unclassified and classified – but we have not received any discovery addressing the three categories

The Honorable Brian M. Cogan
May 26, 2025
Page 2 of 4

of information listed above, nor responding to the specific requests contained in Defendant's three classified discovery demand letters.[1]

With respect to the fourth category of information that the defense seeks, "any memorialized basis for why the United States government waited seven years between Mr. Ahemeid's arrest in Mali and subsequent indictment in the United States," Def. Mot. at 5, the Government takes the position that the request "seemingly has no bearing on the Attorney General's review of the capital decision in this case." Gov't letter 2. That conclusion is likewise wrong.

While it is correct that such discovery relates to a potential motion to dismiss for pre-indictment delay, the Attorney General's consideration of whether to authorize a death-penalty prosecution includes "relevant prosecutorial considerations," Justice Manual § 9-10.080(A)(3), which include "[t]he strength and nature of the evidence," Justice Manual § 9-10.140(D)(1).[2] Plainly, whether evidence exists that would support a motion to dismiss the case due to pre-indictment delay, *or any other basis*, would be a relevant prosecutorial consideration that the defense would seek to address in its mitigation submission. See also Memorandum of the Attorney General, *Reviving the Federal Death Penalty and Lifting the Moratorium of Federal Executions*, dated, February 5, 2025, at 2 (available at https://www.justice.gov/ag/media/1388561/dl?inline) (explaining, "Pursuant to President Trump's Executive Order, federal prosecutors at the Department, including at U.S. Attorney's Offices, shall seek the death penalty – if that is a penalty proscribed by Congress – for the most serious, *readily provable offenses…*") (emphasis added).

If a case is not "readily provable" due to the insufficiency of evidence, potential suppression of evidence, or dismissal on motions based on any other grounds such as pre-indictment delay, the Attorney General must be informed. As defense counsel, our opportunity to do so is through our mitigation submission due in this case on June 2, 2025, and meeting with the Attorney General's Capital Review Committee scheduled for June 9, 2025.

The Government also argues "information relating to the government's decision-making regarding whether to indict the defendant is not discoverable," Gov't letter at 2, citing, Fed.R.Crim.P. 16(a)(2), United States v. Edelin, 128 F.Supp.2d 23, 39 (D.D.C. 2001). While sometimes this is correct, it is not always the case, and one notable exception is when defendant seeks the information to challenge the timing of his prosecution, assuming, like here, the case likely involved decisionmakers outside the local U.S. Attorney's Office. See United States v.

---

[1] We note that the parties have a conference call scheduled for May 28, 2025, at 5:00 p.m., to discuss in an unclassified fashion the specific requests contained in Defendant's third classified discovery demand letter, dated, April 21, 2025, which was not served on the Government by the Classified Information Security Officer until May 16, 2025. See Def. Letter, dated, May 15, 2025 (Doc. No. 121). If needed, the parties have agreed to follow up that call with a classified conversation held in a SCIF.

[2] Section 9-10.000, et seq., of the Justice Manual is available at https://www.justice.gov/jm/jm-9-10000-capital-crimes.

The Honorable Brian M. Cogan
May 26, 2025
Page 3 of 4

Ghailani, 687 F.Supp.2d 365, 369 (SDNY 2010) (holding, "[A]ny communications among pertinent government agencies and officials tending to indicate that the 'reason for delay' in prosecuting Ghailani on this indictment was other than the interests of national security described in the government's response would be material to the defense because they would undermine the government's speedy trial motion position as to the reason for delaying this prosecution."); see also Ghailani, 687 F.Supp.2d at 370-372 (directing discovery relevant to Defendant's motion to dismiss on Constitutional speedy trial grounds, imputing the term "the government" under Rule 16(a)(1)(E) to "include[] individuals at DoJ who participated in advising on or making the decisions regarding [the defendant's] prosecution," even if they were not otherwise " 'intimately involved' with federal prosecution of the charged conduct").

In terms of preauthorization discovery, the number one consideration for the Attorney General is the "the strength and nature of the evidence." Justice Manual § 9-10.140(D)(1). As such, there is nothing more relevant than evidence tending to show that the strongest evidence against the defendant on the capital counts (i.e., his own statements) was obtained as a result of torture. Second only to that, is evidence that would show that the Government was aware of the existence of Mr. Ahemeid's conditions of confinement and torture, and intentionally delayed indictment to allow his statements to first be fully extracted through such unlawful means.

As this Court is very much aware, death is different, see Woodson v. North Carolina, 428 U.S. 280, 305 (1976) ("Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a correspondence difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."). As a result of that, a heightened standard of reliability applies, see Ford v. Wainwright, 477 U.S. 399, 411 (1986) ("In capital proceedings generally, this Court has determined that fact-finding procedures aspire to a heightened standard of reliability."). To meet this heightened standard, the Government must be required to produce the evidence sought in Defendant's motion and unclassified and classified discovery demands.

Finally, the Government argues that "the Court should deny the defendant's request for an ex parte and in camera hearing pursuant to Section 2 of CIPA," claiming that "the defendant has offered no new information or other basis for revisiting that decision [i.e., the Court's decision to permit the Government to provide a summary substitute for certain classified information]." Gov't letter at 2. Of course, the very reason that the defense has requested an ex parte and in camera hearing is to provide the basis for revisiting the Court's prior decision. The Government is being permitted an opportunity to meet with the Court in an ex parte classified hearing on May 29, 2025. Id. The defense should be afforded that same opportunity.

Accordingly, for all the reasons stated above and previously had herein, Defendant's Emergency Motion for Immediate Disclosure of Preauthorization Discovery Relevant to Attorney General Bondi's Evaluation of Whether to Maintain or Seek to Reverse Attorney General Garland's Prior Decision Not to Seek the Death Penalty in this Case, and for Relief pursuant to 18 U.S.C. App. 3 § 2, dated, May 13, 2025 (Doc. No. 120), should be granted in its entirety.

The Honorable Brian M. Cogan
May 26, 2025
Page 4 of 4

Respectfully submitted,

Michael K. Bachrach
Anthony Cecutti
Kestine Thiele

*Attorneys for Defendant*
*Fawaz Ould Ahmed Ould Ahemeid*

cc:   All parties of record (by ECF)