UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES,

      v.                                             20 Cr. 502 (BMC)

FAWAZ OULD AHMED OULD AHEMEID,

          Defendant
--------------------------------------------------------X

## MOTION TO DISMISS COUNTS TWO AND THREE
## FOR FAILURE TO STATE AN OFFENSE

MICHAEL K. BACHRACH, ESQ.
224 West 30th Street, Suite 302
New York, New York 10001
(212) 929-0592
michael@mbachlaw.com

ANTHONY CECUTTI, ESQ.
217 Broadway, Suite 707
New York, New York 10007
(917) 741-1837
anthonycecutti@gmail.com

KESTINE THIELE, ESQ.
305 Broadway, Suite 700
New York, New York 10007
(212) 542-3860
kestine@kthielelaw.com

*Attorneys for Defendant Fawaz Ould Ahmed Ould Ahemeid*

## Table of Contents

Table of Authorities.................................................................................................................. ii

Preliminary Statement...............................................................................................................1

Motion to Dismiss Counts Two and Three for Failure to State an Offense ....................................2

      A.      Introduction...................................................................................................2

      B.      The required elements of Counts Two and Three .......................................3

      C.      Federal first-degree murder is a single indivisible offense .......................4

            1.      Federal first-degree murder does not require a choice between elements, it lists different means of establishing its elements .....................5

            2.      The common law approach supports the conclusion that Federal first-degree murder is indivisible .................................................................9

      D.      Applying the categorical approach to 18 U.S.C. § 1111(a), Federal first-degree murder is not a "crime of violence" under the force clause of 18 U.S.C. § 924(c)(3)(A) ...........................................................................................15

Conclusion ...............................................................................................................................18

## Table of Authorities

CASES

Borden v. United States,
141 S.Ct. 1817 (2021)..................................................................................2, 15, 16, 17

Dean v. United States,
556 U.S. 568 (2009)..............................................................................................16

Descamps v. United States,
570 U.S. 254 (2013)..................................................................................4, 5, 6, 8, 15, 16

Gonzales v. Duenas-Alvarez,
549 U.S. 183 (2007)................................................................................................9

Leocal v. Ashcroft,
543 U.S. 1 (2004)...................................................................................................16

Mathis v. United States,
579 U.S. 500 (2016)............................................................................................5, 15

Medunjanin v. United States,
99 F.4th 129 (2d Cir. 2024).......................................................................................7

People v. Sullivan,
173 N.Y. 122 (N.Y. 1903) ....................................................................................10, 12

Rendon v. Holder,
764 F.3d 1077 (9th Cir. 2014)....................................................................................13

Sammantar v. Yousuf,
560 U.S. 305 (2010)..............................................................................................10

Schad v. Arizona,
501 U.S. 624 (1991).................................................................................7, 9, 10, 11, 12, 13, 14, 15

Sekhar v. United States,
570 U.S. 729 (2013) ..............................................................................................10

Shepard v. United States,
544 U.S. 13 (2005)...................................................................................................5

ii

Stokeling v. United States,
139 S. Ct. 544 (2019) ...............................................................................................10

United States v. Beardsley,
691 F.3d 252 (2d Cir. 2012) ......................................................................................6

United States v. Bowers,
Docket No. 18 Cr. 292 (RJC),
2022 WL 17718686 (W.D.PA Dec. 15, 2022)...........................................................8

United States v. Brown,
514 F.3d 256 (2d Cir. 2008).....................................................................................16

United States v. Capers,
20 F.4th 105 (2d Cir. 2021).......................................................................................8

United States v. Castleman,
572 U.S. 157 (2014) .................................................................................................10

United States v. Culbert,
453 F.Supp.3d 595 (EDNY 2020).................................................................4, 8, 9, 16

United States v. Constanza-Galdomez,
Criminal Case No. SAG-22-409,
2025 WL 1712436 (D.MD June 18, 2025) .................................................................1

United States v. Davis,
139 S.Ct. 2319 (2019).............................................................................................3, 4

United States v. Davis,
74 F.4th 50 (2d Cir. 2023)..........................................................................................8

United States v. Fuertes,
805 F.3d 485 (4th Cir. 2015)...............................................................................12, 13

United States v. Hamilton,
889 F.3d 688 (10th Cir. 2018)...................................................................................13

United States v. Hill,
890 F.3d 51 (2d Cir. 2018).................................................................................4, 9, 16

United States v. Jackson,
32 F.4th 278 (4th Cir. 2022).................................................................................13, 17

United States v. Jones,
878 F.3d 10 (2d Cir. 2017).........................................................................................8

United States v. Martinez,
991 F.3d 347 (2d Cir. 2021) ...............................................................................8

United States v. Martinez,
16 F.3d 202 (7th Cir. 1994) ..............................................................................16

United States v. Mathis,
932 F.3d 242 (4th Cir. 2019) ............................................................................12

United States v. Medunjanin,
99 F.4th 129 (2d Cir. 2024) ................................................................................4

United States v. Nguyen,
155 F.3d 1219 (10th Cir. 1998) ........................................................................13

United States v. Pastore,
83 F.4th 113 (2d Cir. 2023) ................................................................................7

United States v. Pereira-Gomez,
903 F.3d 155 (2d Cir. 2018) .............................................................................16

United States v. Rodriguez-Moreno,
526 U.S. 275 (1999)............................................................................................3

United States v. Royal,
731 F.3d 333 (4th Cir. 2013) ..............................................................................5

United States v. Spurlock,
Case No. 3:23-cr-00022-MMD-CLB-1,
2025 WL 1360499 (D.Nev. May 9, 2025) ..........................................................1

United States v. Taylor,
596 U.S. 845 (2022)............................................................................................8

United States v. Thomas,
34 F.3d 44 (2d Cir. 1994) ........................................................................7, 13, 14

United States v. Torres-Miguel,
701 F.3d 165 (4th Cir. 2012)..........................................................................4, 16

United States v. Tucker,
Docket No. 18 Cr. 119 (SJ),
2020 WL 93951 (EDNY Jan. 8, 2020)................................................................8

iv

STATUTES AND OTHER AUTHORITIES

18 U.S.C. § 2..................................................................................................2, 11

18 U.S.C. § 249.....................................................................................................9

18 U.S.C. § 924.......................................................................................... *passim*

18 U.S.C. § 1111 ........................................................................................ *passim*

18 U.S.C. § 1591...................................................................................................12

18 U.S.C. § 2332.............................................................................................1, 2, 9

18 U.S.C. § 3593....................................................................................................1

Fed.R.Crim.P. 12...................................................................................................2

Stephen, J., 3 HISTORY OF THE CRIMINAL LAW OF ENGLAND, 21–22 (1883) .......................9

Special Joint Comm. on the Revision of the Laws, Revision and Codification of the Laws, Etc., H.R. REP. No. 2, 60th Cong., 1st Sess. 1-5 (1908) .........................................11

2 W.LaFave, SUBSTANTIVE CRIMINAL LAW § 14.4, pp. 436-437 (2d ed. 2003) ................17

Supplemental Brief for the United States, United States v. King, Docket Nos. 18-2800, 18-2877 (8th Cir. March 30, 2022) ................................................................................18

**Preliminary Statement**

Defendant Fawaz Ould Ahmed Ould Ahemeid (hereinafter, "Fawaz Ahemeid" or "Mr. Ahemeid"), is charged in a six-count Indictment with: extraterritorial murder (Count One); brandishing and discharging a firearm during a crime of violence (Count Two); causing death through use of a firearm (Count Three); conspiracy to provide material support to a foreign terrorist organization (Count Four); provision and attempted provision of material support to a foreign terrorist organization (Count Five); and use of explosives (Count Six).  See Indictment, filed, November 5, 2020 (Doc. No. 3).

Counts One and Three carry a potential sentence of death if the Attorney General directs the Government to seek death in this case.  See 18 U.S.C. § 3593(a); see also 18 U.S.C. §§ 2332(a)(1) (Count One), 924(j) (Count Three).  As of this writing, although the prior Administration determined not to seek death against Mr. Ahemeid, the present Administration has indicated that it is reevaluating that decision, and the reevaluation remains pending.[1]

Pursuant to this Court's Scheduling Order, dated, April 7, 2025 (Doc. No. 116), the defense hereby moves to dismiss Counts Two and Three of Mr. Ahemeid's Indictment.

---

[1]    If the present Attorney General (AG Pam Bondi) attempts to reverse the prior Attorney General (AG Merrick Garland)'s decision not to seek the death penalty and directs the Government to file a Notice of Intent to seek the death penalty in this case, the defense will seek leave to file a motion to strike such notice.  See United States v. Spurlock, Case No. 3:23-cr-00022-MMD-CLB-1, 2025 WL 1360499 (D.Nev. May 9, 2025) (striking Notice of Intent to seek the death penalty after reversal of prior Notice of decision *not* to seek the death penalty); United States v. Constanza-Galdomez, Criminal Case No. SAG-22-409, 2025 WL 1712436 (D.MD June 18, 2025) (same). We note also that in both Spurlock and Constanza-Galdomez, the Government elected not to appeal the District Courts' decisions.  Here, we do not presume how this Court will rule if the issue becomes ripe in this case.  As such, we specifically reserve our right to object and move to challenge a Notice of Intent to seek the death penalty, if one is filed in this case.

## Motion to Dismiss Counts Two and Three
## for Failure to State an Offense

### A.     Introduction

Defendant Fawaz Ahemeid, by and through counsel, hereby moves to dismiss Counts Two and Three, pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, due to Count Two and Count Three's failure to state an offense.

Count Two charges Mr. Ahemeid with use of a firearm in relation to the crime charged in Count One, in violation of 18 U.S.C. §§ 924(c)(3)(A)(i),(ii),(iii), 924(c)(1)(B)(ii), and 2.  Similarly, Count Three charges Mr. Ahemeid with causing the death of Anita Ashok Datar through the use of the firearm charged in Count Two, in violation of 18 U.S.C. §§ 924(j)(1) and 2.  At base, Counts Two and Three rely upon the conduct charged in Count One to define the "crime of violence" alleged to have been committed in support of each count.  Therefore, to determine whether Counts Two and Three state an offense, the question before the Court is whether Count One is a "crime of violence" under 18 U.S.C. § 924(c)(3).

Count One charges Mr. Ahemeid with the murder of Anita Ashok Datar in violation of 18 U.S.C. §§ 2332(a)(1) and 2.  This unique statute provides extraterritorial jurisdiction to the United States for murders occurring abroad, and in doing so relies upon the Federal definition of first-degree murder under 18 U.S.C. § 1111(a) to establish whether the "killing is murder" for purposes of this statute.  See 18 U.S.C. § 2332(a)(1); see also 18 U.S.C. § 1111(a).  Thus, it is 18 U.S.C. § 1111(a) that forms the focus of analysis.

As will be discussed below, the Federal first-degree murder statute, 18 U.S.C. § 1111(a), is a single indivisible offense that includes felony-murder, which does not require an intent to kill and can, crucially, be committed with a *mens rea* of less than recklessness.  As a result, and in light of the Supreme Court's holding in Borden v. United States, 141 S.Ct. 1817, 1821-22 (2021),

Federal first-degree murder can never qualify as a crime of violence under 18 U.S.C. §§ 924(c)(3)(A) or 924(j). In turn, Count Two, which relies on Count One as the underlying "crime of violence," must be dismissed for failure to state an offense; so too must Count Three, which is inextricably intertwined with Counts One and Two.

To counsel's knowledge, the question whether the Federal definition of first-degree murder under 18 U.S.C. § 1111(a) is a crime of violence, is an issue of first impression within this District, this Circuit, and the Supreme Court.

### B.    The required elements of Counts Two and Three

As stated, Count Two charges Mr. Ahemeid with violating 18 U.S.C. §§ 924(c)(1)(A)(i),(ii),(iii), 924(c)(1)(B)(ii), and 2, and Count Three charges Mr. Ahemeid with violating 18 U.S.C. §§ 924(j)(1) and 2. To be convicted of any Section 924(c)(1)(A) offense, the Government must establish, inter alia: (1) the defendant used a firearm through its possession, brandishing, or discharge; and (2) did so during and in relation to either a "crime of violence" or a "drug trafficking offense." See United States v. Rodriguez-Moreno, 526 U.S. 275, 280 (1999). Similarly, to be convicted of a Section 924(j) offense, the Government must establish, inter alia: (1) the defendant used a firearm; (2) during and in relation to a "crime of violence" as defined under 18 U.S.C. § 924(c); and that (3) death resulted due to this conduct. The only element at issue in the instant case is whether Counts Two and Three were committed in support of a "crime of violence."

As this Court is aware, in United States v. Davis, 139 S.Ct. 2319 (2019), the Supreme Court voided the residual clause contained in 18 U.S.C. § 924(c)(3)(B). As such, an offense can only qualify as a "crime of violence" under 18 U.S.C. §§ 924(c)(1)(A) and 924(j) if it satisfies the

3

requirements of the force clause, 18 U.S.C. § 924(c)(3)(A), namely, that offense "has an element the use, attempted use, or threatened use of physical force against the person or property of another."

**C.        Federal first-degree murder is a single indivisible offense**

We recognize at the outset this Court's extensive familiarity with the "categorical approach." See, e.g., United States v. Culbert, 453 F.Supp.3d 595 (EDNY 2020) (holding that attempted Hobbs Act robbery is not a crime of violence). Nonetheless, to properly preserve and outline the issue, we begin with the basics.

In determining whether an offense is a "crime of violence" under the force clause of 18 U.S.C. § 924(c)(3)(A), a court must employ the categorical approach, looking only to the statutory definition of an offense (i.e., it's elements), not to the particular facts underlying the indictment. See Descamps v. United States, 570 U.S. 254, 261 (2013); see also Davis, 139 S.Ct. at 2336 (applying the categorical approach to Section 924(c)'s "crime of violence" definition and concluding that 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague); United States v. Medunjanin, 99 F.4th 129, 134 (2d Cir. 2024) ("Post-Davis, a § 924(c) conviction may only be premised on a crime of violence as defined under § 924(c)(3)(A)'s elements clause.").

Under the categorical approach, an offense only qualifies as a "crime of violence" if all the criminal conduct covered by the statute – including the most minimal conduct – matches or is narrower than the "crime of violence" definition. See Culbert, 453 F.Supp.3d at 597 (courts "are instructed to judge whether the underlying conduct amounts to a *categorical* crime of violence under the elements clause – that is, one where the 'minimum conduct necessary for a conviction' involves violence.") (emphasis in original), quoting, United States v. Hill, 890 F.3d 51, 55-56 (2d Cir. 2018); see also United States v. Torres-Miguel, 701 F.3d 165, 167 (4th Cir. 2012).

For the limited purpose of "help[ing] to implement the categorical approach," in a "narrow range of cases" not applicable to the present motion, a Federal court may look beyond the legal definition of the offense to a small list of judicial documents (known as Shepard-documents) to determine whether the defendant was necessarily charged with a "crime of violence" for purposes of this analysis. Descamps, 570 U.S. at 261; see Shepard v. United States, 544 U.S. 13, 20, 26 (2005).[2]  This approach, known as the "modified categorical approach," is also driven by the elements, but as stated, is inapplicable here.  Indeed, it is important to recognize the distinction between "means" and "elements" as understood in Descamps and Mathis, as that distinction goes to the heart of whether an offense is "indivisible" or "divisible," and thus whether the "categorical" or "modified categorical" approach applies.

>
> **1.    Federal first-degree murder does not require a choice between elements, it lists different means of establishing its elements**

As stated, the modified categorical approach only applies when a statute is divisible — meaning it has alternative elements rather than alternative means. See Descamps, 570 U.S. at 278. By "elements," the Supreme Court in Mathis and Descamps meant statutory phrases that a jury must find "unanimously and beyond a reasonable doubt" to convict the defendant. See Descamps, 570 U.S. at 278; Mathis v. United States, 579 U.S. 500, 504 (2016). "Means," by contrast, are statutory phrases that a jury need not unanimously find.  Id.  Thus, when a statute has two disjunctive statutory phrases, they are alternative "means" if under the statute, "it is enough that each juror agree only that one of the two occurred without settling on which." United States v. Royal, 731 F.3d 333, 341 (4th Cir. 2013).  Such is the case with 18 U.S.C. § 1111(a).  In other

---

[2]    In Shepard, documents include the charging document, the terms of the plea agreement or transcript of the plea colloquy, a judge's factual findings in a bench trial, and jury instructions.  See Shepard, 544 U.S. at 20, 26.

words, since 18 U.S.C. § 1111(a) does not require the jury to select one statutory phrase to the exclusion of the other in order to find guilt for the crime of first-degree murder, its terms are therefore alternative *means* rather than elements.

In Descamps, the Supreme Court clarified that a "divisible statute" is a statute that "sets out one or more *elements* of the offense in the alternative." Descamps, 570 U.S. at 257 (emphasis added); see also United States v. Beardsley, 691 F.3d 252, 268-274 (2d Cir. 2012) (holding that the modified categorical approach applies only to divisible statutes). An offense is divisible if it defines separate crimes, with separate elements upon which the jury must agree upon unanimously, whereas a statute is indivisible when it is "one not containing alternate elements," i.e., one "that criminalizes a broader swath of conduct than the relevant generic offense." Descamps, 570 U.S. at 258 (also noting that "courts may not apply the modified categorical approach when the crime of which the defendant was convicted[, or in this case charged,] has a single, indivisible set of elements") (emphasis).

Applying these principles here, federal first-degree murder is clearly an indivisible offense and as such the "categorical approach" applies.

To find that a defendant has violated the Federal first-degree murder statute, the jury must determine that "the unlawful killing of a human being" was committed "with malice aforethought," 18 U.S.C. § 1111(a), and that the murder was "perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a

6

premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed[.]"

In this Circuit, these two requirements merge as one, because the first requirement (i.e., whether the unlawful killing was committed with malice aforethought) is subsumed by the second requirement (i.e., that the killing was perpetrated through any of the various means then listed). See United States v. Thomas, 34 F.3d 44, 49 (2d Cir. 1994). And, as most important to the present analysis, regardless of whether the killing is a "premeditated murder" or "some form of felony murder," these are both "alternative ***means*** of satisfying the mental state that first degree murder presupposes." Thomas, 34 F.3d at 49 (emphasis added), quoting, Schad v. Arizona, 501 U.S. 624, 639-40 (1991).[3] As a result and as stated, 18 U.S.C. § 1111(a) is an indivisible offense and the categorical approach must be applied.

"Under [the categorical] approach, [the Court] do[es] not consider the particular facts before [it]; rather, [the Court] identif[ies] the minimum criminal conduct necessary for conviction under a particular statute by looking only to the statutory definitions—i.e., the elements of the offense." Medunjanin v. United States, 99 F.4th 129, 134 (2d Cir. 2024), quoting, United States v. Pastore, 83 F.4th 113, 118 (2d Cir. 2023). The categorical approach "does not require – in fact, it precludes – an inquiry into how any particular defendant may commit the crime. The only relevant question is whether the federal felony at issue always requires the government to prove – beyond

---

[3]    Stated plainly, in order to convict a defendant of a crime the jury must determine, beyond a reasonable doubt, that all "elements" have been established, whereas "means" merely list the manners in which an individual element can be reached. Thus, to convict someone of Federal first-degree murder, a jury must find that a killing occurred through one of several means, which could be premeditated murder or felony-murder, but it need not be both because they are alternate means not alternate elements.

7

a reasonable doubt, as an element of its case – the use, attempted use, or threatened us of force." United States v. Taylor, 596 U.S. 845, 850 (2022).

"In other words, it is not enough that the evidence in the case shows that the defendant committed the charged predicate crime in a way that involved the use of force…. Instead, the predicate crime must be one whose elements are defined in such a way that the crime must, 'in every instance, by its very definition, involve the use of force'" against the person or property of another. United States v. Capers, 20 F.4th 105, 117 (2d Cir. 2021) (internal brackets omitted), quoting, United States v. Martinez, 991 F.3d 347, 353 (2d Cir. 2021). If the statute defining the predicate offense "'criminalizes any conduct that would not fall within the scope of … the [elements] clause'" then the statute "'is not categorically a crime of violence and cannot serve as a predicate offense' for purposes of § 924(c)." United States v. Davis, 74 F.4th 50, 53 (2d Cir. 2023), quoting, United States v. Jones, 878 F.3d 10, 16 (2d Cir. 2017). "[A] statute that 'sweeps more broadly than' the [elements] clause is not a categorical match and cannot count as a § 924(c) predicate." Davis, 74 F.4th at 53, quoting, Descamps, 570 U.S. at 261.

Whether an offense satisfies the elements clause of 18 U.S.C. § 924(c)(3)(A) is a pure question of law. See Davis, 74 F.4th at 52. When a Section 924(c) count alleges as a predicate a crime that does not meet the statutory definition of a "crime of violence," pretrial dismissal of that count for failure to state an offense is the proper remedy. See, e.g., Culbert, 453 F.Supp.3d at 596-97, 601 (dismissing Section 924(c) count predicated on attempted Hobbs Act robbery); United States v. Tucker, Docket No. 18 Cr. 119 (SJ), 2020 WL 93951, *1 (EDNY Jan. 8, 2020) (dismissing § 924(c) count predicated on attempted Hobbs Act robbery and conspiracy to commit Hobbs Act robbery); United States v. Bowers, Docket No. 18 Cr. 292 (RJC), 2022 WL 17718686, *5-*9

8

(W.D.PA Dec. 15, 2022) (dismissing Section 924(c) and 924(j) counts to the extent predicated on 18 U.S.C. § 249(a)(1)).

As Your Honor further explained in Culbert:

> To be sure, the categorical approach does not humor "the application of legal imagination" to conjure up highly unlikely scenarios in the name of logical purity. See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007). Yet a predicate crime will not support a conviction under the elements clause of § 924(c) if there is "'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not" involve violence. Hill, 890 F.3d at 56 (quoting Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815).

Culbert, 453 F.Supp.3d at 597. Such is the case here, since the predicate offense, 18 U.S.C. § 2332(a)(1), relies upon 18 U.S.C. § 1111(a) for its definition of murder, see 18 U.S.C. § 2332(a)(1) ("Whoever kills a national of the United States, while such national is outside the United States, shall … *if the killing is murder (as defined in section 1111(a))* be fined under this title, punished by death or imprisonment for any term of years or for life, or both[.]") (emphasis added), and, as discussed, 18 U.S.C. § 1111(a) includes felony murder as a means of committing the offense, see, ante, at 6-7. Thus, it is Section 1111(a) that must be closely scrutinized and, as will be discussed below, the Federal first-degree murder statute cannot survive the categorical approach and as such Counts Two and Three must be dismissed for failure to state an offense.

**2.    The common law approach supports the conclusion that Federal first-degree murder is indivisible**

At common law, murder was defined as the unlawful killing of another human being with "malice aforethought." The intent to kill and the intent to commit a felony were alternative aspects of the single concept of "malice aforethought." See Stephen, J., 3 HISTORY OF THE CRIMINAL LAW OF ENGLAND, 21–22 (1883). In Schad v. Arizona, supra, 501 U.S. 624 (1991), the Supreme Court recognized this common law definition and noted that most State statutes, like the Federal statute,

9

"retained premeditated murder and some form of felony murder … as alternative means of satisfying the mental state that first-degree murder presupposes." Schad, 501 U.S. at 640-41.

Under this common law approach, "it was not necessary that all the jurors should agree" on whether there was a premeditated or felony murder; "it was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first-degree as that offense is defined by the statute." Schad, 501 U.S. at 641, quoting, People v. Sullivan, 173 N.Y. 122, 127, 65 N.E. 989, 989-90 (N.Y. 1903). Schad recognized that, at common law, "neither premeditation nor the commission of a felony is formally an *independent element* of first-degree murder; they are treated as mere means of satisfying a mens rea element of high culpability." Schad, 501 U.S. at 639 (emphasis added). Thus, at common law, first-degree murder was a single indivisible offense.

The Supreme Court's focus in Schad on the common law was consistent with the Court's approach to statutory interpretation. Congress is understood to legislate against the background of the common law. See Sammantar v. Yousuf, 560 U.S. 305, 320 n.13 (2010). When a statute covers an issue previously covered by the common law, the Court presumes that Congress intended to retain the substance of the common law. Id. Moreover, absent contrary indications, courts are to presume that Congress intended to incorporate the "well settled meaning" of common law terms into the words it chose. See Sekhar v. United States, 570 U.S. 729, 732 (2013); see also Stokeling v. United States, 139 S. Ct. 544, 561-63 (2019) (relying on common law to define term used in statute); United States v. Castleman, 572 U.S. 157, 162-63 (2014) (looking to the common law to determine meaning of statute).

The legislative history of the Federal murder statute shows Congress's intent to follow the common law. The law's drafters explicitly stated that the Federal murder statute is based on "the

10

common law definition [of murder], and is similar in terms to the statutes defining murder in a large majority of the States." Special Joint Comm. on the Revision of the Laws, Revision and Codification of the Laws, Etc., H.R. Rep. No. 2, 60th Cong., 1st Sess. 1-5 (1908).

To that end, consider the following hypothetical. Two masked armed robbers commit a bank robbery during which a bank teller is shot and killed. Defendant claims that he never intended for anyone to be killed and blames his co-defendant for shooting and killing the teller. Six jurors believe defendant's claims regarding a lack of intent and that his co-defendant was the shooter, while six jurors believe that defendant was the shooter and intended to commit the murder all along.

Under common law, the defendant would be guilty of first-degree murder regardless of these differences because first-degree murder is a single indivisible crime. The same is true under 18 U.S.C. § 1111(a), see also 18 U.S.C. § 2 (holding principals and accomplices to the same standard). To conclude otherwise, the defendant in that hypothetical would be acquitted because the jury could not unanimously agree whether he was guilty of premeditated murder or felony murder.

In Schad, the Supreme Court recognized that premeditated murder and felony murder are two separate means of committing the same crime of first-degree murder. In Schad, the Court upheld an Arizona first-degree murder conviction based on a "general verdict predicated on the possibility of combining findings of what can best be described as alternative mental states, the one being premeditation, the other the intent required for murder combined with the commission of an independently culpable felony." Schad, 501 U.S. at 632. The Court noted that the statute was consistent with the common law and that many states "have in most cases retained premeditated murder and some form of felony murder … as alternative *means* of satisfying the

11

mental state that first-degree murder presupposes." Id. at 641.

The Court then listed eleven State court decisions that agreed (and only one that disagreed) with this common law definition of murder and the principle that "it was not necessary that all the jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one; it was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute." Schad, 501 U.S. at 641, quoting, Sullivan, 173 N.Y. at 127, 65 N.E. at 989-90; see also Schad, 501 U.S. at 641-42 (collecting cases). The Court noted that "Arizona's equation of the mental states of premeditated murder and felony murder as species of the blameworthy state of mind required to prove a *single offense* of first-degree murder finds substantial historical and contemporary echoes." Id. at 640 (emphasis added).

Thus, under common law and the law of most States, "neither premeditation nor the commission of a felony is formally an *independent element* of first-degree murder; they are treated as mere means of satisfying a mens rea element of high culpability." Schad, 501 U.S. at 639 (emphasis added). As discussed above, because, premeditation and felony murder are different means of proving the single offense of first-degree murder, Federal first-degree murder is a single indivisible offense. See, e.g., United States v. Mathis, 932 F.3d 242, 267 (4th Cir. 2019) ("Although the statute describes various ways that an individual may commit the act of kidnapping, namely, by force, intimidation, or deception, these alternatives represent various means of committing the crime, not alternative elements of the crime."); United States v. Fuertes, 805 F.3d 485, 498 (4th Cir. 2015) ("Accordingly, although § 1591(a) refers to alternative *means* of commission, it contains a single, indivisible set of *elements*, and the categorical approach applies.") (emphasis in

12

original). Likewise, a "statute is indivisible when 'the jury need not agree on anything past the fact that the statute was violated.'" Fuertes, 805 F.3d at 498, quoting, Rendon v. Holder, 764 F.3d 1077, 1085 (9th Cir. 2014); see also Rendon, 764 F.3d at 1086 ("Thus, when a court encounters a statute that is written in the disjunctive (that is, with an 'or'), that fact alone cannot end the divisibility inquiry. Only when state law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative *elements* and not alternative *means*."); United States v. Hamilton, 889 F.3d 688, 692-93 (10th Cir. 2018) (concluding disjunctively listed locational alternatives in Oklahoma second-degree burglary statute must be regarded as means rather than elements, and thus statute was indivisible).

Moreover, as Justice Scalia recognized in his concurring opinion in Schad, the Federal first-degree murder statute is the same type of statute, with the same type of common law origin, as the Arizona first-degree murder statute. See Schad, 501 U.S. at 649 (Scalia, J., concurring). Notably, the Second Circuit, when previously pressed with this question, agrees, as has at least one other Circuit. See Thomas, 34 F.3d at 49 (applying Schad to Federal first-degree murder); see also United States v. Nguyen, 155 F.3d 1219, 1229 (10th Cir. 1998) (same); but see United States v. Jackson, 32 F.4th 278, 285 n.7 (4th Cir. 2022) (declining to apply Schad to Federal first-degree murder).

In Thomas, the Second Circuit affirmed the correctness of a jury instruction that a "killing is done with malice aforethought … if it results from the perpetration of … a robbery." Thomas, 34 F.3d at 49. In doing so the Court rejected the contention that 18 U.S.C. § 1111(a) contained multiple elements – malice aforethought as one and the type of killing (e.g., premeditated murder or felony murder) as another – and instead concluded that it contained a single element that could be established through alternate means:

13

> At common law, murder was defined as the unlawful killing of another human being with "malice aforethought." **The intent to kill and the intent to commit a felony were alternative aspects of the single concept of "malice aforethought."** ... **[S]tatutes have in most cases retained premeditated murder and some form of felony murder** (invariably including murder committed in perpetrating or attempting to perpetrate a robbery) *as alternative means* of satisfying the mental state that first degree murder presupposes.

Thomas, 34 F.3d at 49 (emphasis added), quoting with approval, Schad, 501 U.S. at 639-40.

Furthermore, Justice Scalia, concurring in Schad, made clear that murder statutes such as 18 U.S.C. § 1111(a) were indivisible statutes identifying alternative means of committing a single crime. He observed, "the United States and most States have a single crime of first-degree murder that can be committed by killing in the course of a robbery as well as premeditated killing." Schad, 501 U.S. at 649 (Scalia, J., concurring), citing, inter alia, 18 U.S.C. § 1111. In his view, "the dissenting Justices would in effect have us abolish the crime of first-degree murder and declare that the Due Process Clause of the Fourteenth Amendment requires the subdivision of that crime into (at least) premeditated murder and felony murder." Id. Justice Scalia rejected that view: "[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission." Id.

Justice Scalia offered a hypothetical to explain the purpose and importance of this reasoning:

> That rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict. When a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her to death (and caused the fire accidentally in his hasty escape), while six others believe he left her unconscious and set the fire to kill her.

Id. at 649-50.

14

Whatever differences there are between felony-murder and premeditated murder, such did not stop the Supreme Court in <u>Schad</u> from treating them as different *means* of committing the *single offense* of first-degree murder.  In other circumstances too, the Supreme Court has deemed statutes indivisible even though they include significantly different types of conduct.  For example, in <u>Mathis</u>, the Court found that the Iowa burglary statute was indivisible even though it covered entry into "any building, structure, *[or] land, water, or air vehicle*."  <u>Mathis</u>, 579 U.S. at 501 (emphasis added); <u>accord</u> <u>Descamps</u>, 570 U.S. at 279-80 (Thomas, J. concurring).  Indeed, the Court noted that the statute at issue there "concern[ed] a different kind of alternatively phrased law: not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element," and then cited <u>Schad</u> as an example of such a disjunctive listing of alternative means rather than elements. <u>Mathis</u>, 579 U.S. at 506.

In any rate, the underlying conduct of premeditated murder and felony murder do not differ significantly.  Rather, from the common law to the present, those differences were regularly viewed as alternative means of providing the necessary *mens rea* for the single crime of murder.  As Justice Scalia's example from <u>Schad</u> illustrates, there is in fact significant overlap between the two means of commission.  All of this is to say, again: Federal first-degree murder is an indivisible offense.

 **D.**  **Applying the categorical approach to 18 U.S.C. § 1111(a), Federal first-degree murder is not a "crime of violence" under the force clause of 18 U.S.C. § 924(c)(3)(A)**

In <u>Borden v. United States</u>, <u>supra</u>, 141 S.Ct. 1817, 1821-22 (2021), the Supreme Court held that a criminal offense cannot "count as a 'violent felony' if it requires only a *mens rea* of recklessness—a less culpable mental state than purpose or knowledge."  Following <u>Borden</u>, therefore, Federal first-degree murder is not a "crime of violence" because felony-murder can be committed recklessly or accidentally as a means of violating 18 U.S.C. § 1111(a).

Under the categorical approach, the Court looks "only to the statutory definition of the [offense] rather than to the underlying facts of the offense." United States v. Brown, 514 F.3d 256, 265 (2d Cir. 2008). By the statutory definition, the Court means "the elements [] of a defendant's … offenses, and *not* … the particular facts underlying those convictions." United States v. Pereira-Gomez, 903 F.3d 155, 161 (2d Cir. 2018), quoting, Descamps, 570 U.S. at 261.

Thus, as previously discussed, an offense only qualifies as a "crime of violence" if all the criminal conduct covered by the statute – including the most minimal conduct – matches or is narrower than the "crime of violence" definition. See Hill, 890 F.3d at 55-56; Torres-Miguel, 701 F.3d at 167; Culbert, 453 F.Supp.3d at 597. Here, that is clearly not the case since Federal first-degree murder incorporates – as a means of committing the offense – felony-murder, which requires even less than reckless force, as it can be committed by purely accidental death. See, e.g., United States v. Martinez, 16 F.3d 202, 208 (7th Cir. 1994) ("felony murder is often found in situations of accidental death"); see also Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) (stating that "use … of physical force" against another person suggests a higher degree of intent than negligence or accidental conduct). As such, felony-murder cannot be deemed to be a "crime of violence" for these purposes. See Borden, 141 S.Ct. at 1821-22.

Under Federal law, felony-murder is a killing during the commission of one of the offenses enumerated in 18 U.S.C. § 1111(a), which includes death occurring in the course of escape, arson of one's own property, treason, espionage, sabotage, and other conduct wherein the death was unintentional and could occur entirely by accident. See Dean v. United States, 556 U.S. 568, 575 (2009) ("It is unusual to impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts. The felony-murder rule is a familiar example: If a defendant commits an unintended

16

homicide while committing another felony, the defendant can be convicted of murder."), citing, 2 W.LaFave, SUBSTANTIVE CRIMINAL LAW § 14.4, pp. 436-437 (2d ed. 2003) and 18 U.S.C. § 1111.

Therefore, applying Borden, the incorporation of felony-murder into the definition – and means of violating – 18 U.S.C. § 1111(a), categorically disqualifies Federal first-degree murder as a crime of violence. Indeed, the application of the categorical approach to exclude felony-murder as a crime of violence, is completely non-controversial in light of Borden, which specifically answered the question regarding "whether the element's clause's definition of 'violent felony' – an offense requiring the 'use of physical force against the person of another – includes offenses criminalizing reckless conduct;" the Court held "***that it does not***." Borden, 141 S.Ct. at 1825 (interpreting analogous language in 18 U.S.C. § 924(e)(2)(B)(i)).

Because 18 U.S.C. § 924(c)(3)(A) is materially identical to 18 U.S.C. § 924(e)(2)(B)(i), Borden applies here. As a result, post-Borden, felony-murder categorically fails to qualify as a "crime of violence" because it requires even less than reckless force, as it can be committed by purely accidental death. See United States v. Jackson, supra, 32 F.4th 278, 285 (4th Cir. 2022) (affirming conviction on other grounds but also concluding, "Felony murder cannot qualify as a 'crime of violence' because it requires only the *mens rea* necessary to attempt or complete the underlying felony (i.e., arson, escape, etc.). That *mens rea* is not more than recklessness and thus, does not satisfy Borden.") (footnote omitted).

Indeed, the Department of Justice conceded this point. For example, in United States v. King, Docket Nos. 18-2800, 18-2877 (8th Cir.), the Government conceded that Appellants' "convictions for violating 18 U.S.C. § 924(c) by possessing a firearm during and in relation to kidnapping resulting in death were required to be vacated in light of Borden, because 'kidnapping resulting in death' could no longer be considered 'a crime of violence' under the force clause of §

17

924(c)(3)(A)." <u>King</u>, Supplemental Brief for the United States, dated, March 30, 2022, at 18 & 19; <u>see also id.</u> at 18 ("The Government's position here … acknowledges the consequence that some forms of federal first-degree murder, namely first-degree felony murders predicated on felonies that do not require the use of force against a person, are not crimes of violence. That position is not taken lightly, but after <u>Borden</u>, it is what the categorical approach requires.").

Stated simply, because Federal first-degree murder is an indivisible offense, the inclusion of felony-murder as a means of violating 18 U.S.C. § 1111(a) renders Federal first-degree murder overbroad for purposes of the categorical approach and therefore disqualifies the statute from being considered a crime of violence under 18 U.S.C. § 924(c)(1)(A), and by extension 18 U.S.C. § 924(j). Indeed, because Federal first-degree murder is both indivisible and overbroad, it can never qualify as a "crime of violence" under the categorical approach.

## <u>Conclusion</u>

Accordingly, Defendant Fawaz Ould Ahmed Ould Ahemeid, by and through counsel, respectfully submits that Counts Two and Three of the Indictment must be dismissed for failure to state an offense under Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure.

Dated: New York, New York
       July 21, 2025

Respectfully submitted,

Michael K. Bachrach
Anthony Cecutti
Kestine Thiele

*Attorneys for Defendant*
*Fawaz Ould Ahmed Ould Ahemeid*

18