AB/NJM:SKW/MAA
F. #2015R02002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                         20-CR-502 (BMC)

FAWAZ OULD AHMED OULD AHEMEID,
    also known as "Ibrahim Idress" and
    "Ibrahim Dix,"
                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

Sara K. Winik
Meredith A. Arfa
Assistant United States Attorneys
(Of Counsel)

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...............................................................3

LEGAL STANDARD .............................................................................................................5

ARGUMENT ..........................................................................................................................7

    I.    Pre-Meditated Murder Under Section 1111(a) Qualifies as a Crime of Violence
        Under the Modified Categorical Approach...............................................................8

        A.    Section 1111(a) Is Divisible.................................................................................8

        B.    First-Degree Premeditated Murder Under Section 1111(a) Qualifies as a
            Crime of Violence.............................................................................................17

    II.    Alternatively, Even if the Modified Categorical Approach Does Not Apply,
        Section 1111(a) Qualifies as a Crime of Violence Under the Categorical Approach .........21

CONCLUSION ........................................................................................................22

**TABLE OF AUTHORITIES**

**Cases**

*Borden v. United States*,
593 U.S. 420 (2021)................................................................................................passim

*Boykin v. United States*,
No. 16-CV-4185 (CM), 2020 WL 774293 (S.D.N.Y. Feb. 18, 2020)......................................6, 7

*Delligatti v. United States*,
145 S. Ct. 797 (2025)................................................................................................19, 21

*Gray v. United States*,
980 F.3d 264 (2d Cir. 2020).........................................................................................7, 17

*Janis v. United States*,
73 F.4th 628 (8th Cir. 2023)..............................................................................................21

*Mathis v. United States*,
579 U.S. 500 (2016)................................................................................................passim

*Pannell v. United States*,
115 F.4th 154 (2d Cir. 2024).....................................................................................9, 10, 11

*Santana-Felix v. Barr*,
924 F.3d 51 (2d Cir. 2019).................................................................................................8

*Schad v. Arizona*,
501 U.S. 624 (1991)...................................................................................................14, 15

*Shepard v. United States*,
544 U.S. 13 (2005)...........................................................................................................7

*Stokeling v. United States*,
586 U.S. 73 (2019)......................................................................................................18, 19

*United States v. Antelope*,
430 U.S. 641 (1977)........................................................................................................11

*United States v. Bankhead*,
746 F.3d 323 (8th Cir. 2014)...........................................................................................11

*United States v. Bedonie*,
913 F.2d 782 (10th Cir. 1990).........................................................................................11

ii

*United States v. Begay*,
33 F.4th 1081 (9th Cir. 2022)................................................................................20

*United States v. Begay*,
673 F.3d 1038 (9th Cir. 2011)..............................................................................12

*United States v. Bell*,
819 F.3d 310 (7th Cir. 2016)................................................................................12

*United States v. Bonilla-Romero*,
984 F.3d 414 (5th Cir. 2020)................................................................................12

*United States v. Catalan-Roman*,
585 F.3d 453 (1st Cir. 2009) ................................................................................11

*United States v. Davis*
588 U.S. 445 (2019)..............................................................................................6

*United States v. Garcia-Meza*,
403 F.3d 364 (6th Cir. 2005)................................................................................12

*United States v. Herron*,
762 F. App'x 25 (2d Cir. 2019).............................................................................20

*United States v. Hill*,
890 F.3d 51 (2d Cir. 2018) .....................................................................................7

*United States v. Jackson*,
32 F.4th 278 (4th Cir. 2022)..........................................................................passim

*United States v. Kepler*,
74 F.4th 1292 (10th Cir. 2023)........................................................................20, 22

*United States v. Looking Cloud*,
419 F.3d 781 (8th Cir. 2005)................................................................................12

*United States v. Mathis*,
932 F.3d 242 (4th Cir.) (2019) .......................................................................18, 19

*United States v. McCoy*,
995 F.3d 32 (2d Cir. 2021)...................................................................................6, 7

*United States v. Medina-Garcia*,
226 F. App'x 281 (4th Cir. 2007)..........................................................................12

iii

*United States v. Moore*,
   916 F.3d 231 (2d Cir. 2019) ........................................................................................7

*United States v. Russell*,
   Nos. 05-CR-401, 16-CV-3642, 2018 WL 3213274 (E.D.N.Y. June 29, 2018) ..........................18

*United States v. Scott*,
   990 F.3d 94 (2d Cir. 2021) .....................................................................................8, 21

*United States v. Slader*,
   791 F.2d 655 (8th Cir. 1986).....................................................................................12

*United States v. States*,
   72 F.4th 778 (7th Cir. 2023)........................................................................................8

*United States v. Thomas*,
   34 F.3d 44 (2d Cir. 1994).....................................................................................passim

*United States v. Varona*,
   Nos. 95-CR-1027 (PAC), 16-CV-4664 (PAC), 2021 WL 2873793 (S.D.N.Y. July 8, 2021) .......8

**Statutes**

18 U.S.C. § 1111(a)...............................................................................................passim

18 U.S.C. § 924(c) .................................................................................................passim

18 U.S.C. § 924(j) .....................................................................................................5, 6

**Other Authorities**

Sand *et al.*, 2 Modern Federal Jury Instructions-Criminal P 41.01 (2025)..............................12, 13

## PRELIMINARY STATEMENT

The defendant, Fawaz Ould Ahmed Ould Ahemeid, also known as "Ibrahim Idress" and "Ibrahim Dix," is charged in a six-count indictment with offenses arising from his activities on behalf of the foreign terrorist organizations al-Qaeda in the Islamic Maghreb ("AQIM") and al-Murabitoun, both of which operate under al-Qaeda's umbrella. *See* ECF No. 3. The defendant planned and was involved in significant terrorist attacks against Western targets, including: (1) an attack on the La Terrasse restaurant in Bamako, Mali, on March 7, 2015, in which five individuals were killed; (2) an attack on the Hotel Byblos in Sevare, Mali, on August 7, 2015, in which 13 individuals—including five United Nations workers—were killed; and (3) an attack on the Radisson Blu Hotel in Bamako, Mali, on November 20, 2015, in which 20 individuals were killed, including U.S. citizen Anita Ashok Datar. *See* ECF Nos. 1, 14, 53.

The indictment charges the defendant with (1) the murder of Anita Ashok Datar, as murder is defined in 18 U.S.C. § 1111(a), in violation of 18 U.S.C. § 2332(a)(1) (Count One); (2) the unlawful use of firearms in connection with a crime of violence, specifically, the crime charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 924(c)(1)(B)(ii) (Count Two); (3) causing the death of Datar through the use of a firearm, specifically, the crime charged in Count Two, in violation of 18 U.S.C. § 924(j) (Count Three); (4) conspiracy to provide material support to AQIM and al-Murabitoun, in violation of 18 U.S.C. § 2339B(a)(1) (Count Four); (5) provision and attempted provision of material support to AQIM and al-Murabitoun, in violation of 18 U.S.C. § 2339B(a)(1) (Count Five); and (6) unlawful use of explosives, in violation of 18 U.S.C. §§ 844(h)(1) and 844(h)(2) (Count Six). *See* ECF No. 3.

1

The defendant seeks dismissal of Counts Two and Three, arguing that the offense charged in Count One does not constitute a crime of violence following *Borden v. United States*, 593 U.S. 420 (2021), such that Counts Two and Three, which rely on Count One, fail to state an offense. *See* ECF No. 135. Specifically, the defendant argues that the offense charged in Count One, 18 U.S.C. § 2332(a)(1), relies upon 18 U.S.C. § 1111(a) for its definition of murder, but that Section 1111(a)—the federal murder statute—does not qualify as a crime of violence, such that Count One in turn does not qualify as a crime of violence. *See id.* at 2-3. The defendant argues that, to the extent Count One does not qualify as a crime of violence, Count Two does not state a claim because it charges the defendant with the unlawful use of firearms in connection with the crime of violence charged in Count One. *See id.* at 3. To the extent Count One does not qualify as a crime of violence, Count Three similarly would not state a claim because it charges the defendant with causing death through the use of a firearm in the course of committing the crime of violence charged in Count Two, *i.e.*, the same crime of violence charged in Count One. *See id.*

With respect to the applicable legal analysis, the defendant argues that this Court must apply a categorical approach to determine whether the Section 1111(a) offense qualifies as a crime of violence because Section 1111(a) is not divisible, and that under such approach, the offense is not a crime of violence. *See* ECF No. 135 at 4-18. The defendant's argument fails. Section 1111(a) is divisible—as numerous courts have held—such that a modified categorical analysis applies in determining whether the offense at issue qualifies as a crime of violence. Under the modified categorical analysis, there can be no serious dispute that the charged offense—federal first-degree *premeditated* murder—qualifies as a crime of violence under Supreme Court precedent, including *Borden*. However, even assuming, *arguendo*, the Court finds that Section 1111(a) is not divisible

2

and therefore the categorical approach applies, even under that approach, first-degree murder under Section 1111(a) qualifies as a crime of violence under Supreme Court precedent, including *Borden*.

Accordingly, the Court should deny the defendant's motion in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

The defendant joined AQIM in or around 2007, following which he planned and committed significant terrorist attacks against Western targets on behalf of AQIM and al-Murabitoun. *See* ECF No. 53 at 3. The defendant personally carried out the March 7, 2015 attack on the La Terrasse restaurant, which was frequented by Westerners in Bamako, Mali. *See id.* He was armed with two AK-47 assault rifles, a pistol, and grenades, and killed five people in the attack. *See id.* That same day, al-Murabitoun issued a public statement claiming responsibility for the attack. *See id.*

Following the La Terrasse attack, the defendant met with the Mali-based head of operations for al-Murabitoun to discuss carrying out additional terrorist attacks on Western targets in the region. *See* ECF No. 53 at 3. The defendant subsequently helped to plan and execute the August 7, 2015 attack on the Hotel Byblos in Sevare, Mali. *See id.* During that attack, a lone gunman armed with an AK-47 assault rifle and equipped with a suicide vest entered the Hotel Byblos and opened fire. *See id.* The attack resulted in the deaths of 13 people, including five United Nations workers. *See id.* On or about August 10, 2015, al-Murabitoun issued a public statement claiming responsibility for the attack. *See id.*

The defendant also planned and helped oversee the execution of the November 20, 2015 attack on the Radisson Blu Hotel, which the defendant targeted because of its popularity with Westerners. *See* ECF No. 53 at 3. Approximately ten days before the attack on the Radisson Blu

3

Hotel, the defendant and a co-conspirator met with the two chosen attackers, one from AQIM and one from al-Murabitoun, to discuss the attack; according to a statement by the defendant, the two terrorist groups had decided to conduct the attack jointly against a "common enemy." *See id.* at 3-4. The defendant and the co-conspirator instructed the attackers to kill as many Westerners as possible, and particularly to prioritize the killing of French citizens. *See id.* at 4. Beginning in the morning of November 20, 2015, the two attackers—armed with AK-47 assault rifles and hand grenades, and carrying the flag of al-Murabitoun—attacked the Radisson Blu Hotel. *See id.* The attack resulted in the deaths of 20 people, including U.S. citizen Anita Ashok Datar. *See id.* Datar, a 41-year-old public health expert from Takoma Park, Maryland, was in Mali working for an international development firm assisting the United States Agency for International Development. *See id.* Datar, who was a guest at the Radisson Blu Hotel, was shot multiple times and died at the scene as a result of the gunshot wounds. *See id.* In addition to the 20 people killed, at least seven more were wounded. *See id.*

On December 7, 2015, AQIM issued the following public statement via Twitter, claiming responsibility for the attacks on behalf of AQIM and al-Murabitoun: "Two heroes infiltrating the Radisson Hotel in Mali, may God accept them. #Al-Qa'ida_in_West_Africa #Ansar_al_din #Al_Murabitun." *See* ECF No. 53 at 4. The tweet included photographs of the two attackers holding AK-47s and included each attacker's nom de guerre. *See id.* The attackers were depicted standing in front of a beige pickup truck parked under a tree. *See id.* Each photograph was emblazoned with the logo of Al-Ribat Media Foundation, the official media arm of al-Murabitoun. *See id.*

4

Following his April 2016 arrest by Malian forces and while in custody in Mali, the defendant made voluntary, Mirandized statements to agents of the Federal Bureau of Investigation's Joint Terrorism Task Force ("JTTF") on two separate occasions. *See* ECF No. 53 at 4. During these interviews, the defendant provided a detailed account of his role in planning and directing the November 2015 attack on the Radisson Blu Hotel, as well as his role in the other violent terrorist attacks. *See id.* at 4-5.

On November 5, 2020, a grand jury sitting in the Eastern District of New York returned the indictment described above. *See* ECF No. 3. On or about December 9, 2022, the defendant was transferred to the custody of U.S. authorities in Mali. *See* ECF No. 53 at 5. On December 9, 2022, the defendant arrived in the United States in the custody of agents of the JTTF and was arrested pursuant to the charges in the indictment. *See id.*

## LEGAL STANDARD

Section 924(c) imposes a mandatory consecutive term of imprisonment when a defendant uses or carries a firearm during, or possesses a firearm in furtherance of, *inter alia*, a "crime of violence." 18 U.S.C. § 924(c)(1)(A). The statute defines a "crime of violence" as an offense that is a federal felony and:

> (A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another [the "Elements Clause"], or

> (B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [the "Residual Clause"].

*Id.* § 924(c)(3)(A)-(B). Section 924(j)(1), which cross references Section 924(c), provides that "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the

5

use of a firearm, shall . . . if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life." 18 U.S.C. § 924(j)(1). That is, to apply in this case, Section 924(j) requires that the firearm was used during or in relation to a crime of violence as defined in Section 924(c).

In *United States v. Davis*, the Supreme Court held that Section 924(c)'s Residual Clause, 18 U.S.C. § 924(c)(3)(B), was unconstitutionally vague. 588 U.S. 445 (2019). Accordingly, following *Davis*, a predicate crime qualifies as a crime of violence under Section 924(c) only if it qualifies under the statute's Elements Clause. That is, the offense must "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). In *Borden v. United States*, the Supreme Court held that an offense that may be committed recklessly lacks a *mens rea* element sufficient to satisfy the definition of a "violent felony" under the Elements Clause of the Armed Career Criminal Act. 593 U.S. 420. The Court, however, expressly declined to address whether offenses, such as murder, that can involve a *mens rea* between recklessness and knowledge, often referred to as a "depraved heart" or "extreme recklessness," fall within the Elements Clause. *Id.* at 429 n.4.

To determine whether a particular felony is a crime of violence under the Elements Clause, courts employ one of two analytical approaches: (i) the "categorical approach"; or (ii) the "modified categorical approach." *Boykin v. United States*, No. 16-CV-4185 (CM), 2020 WL 774293, at *5 (S.D.N.Y. Feb. 18, 2020) (citing *Mathis v. United States*, 579 U.S. 500, 504 (2016)). Under the categorical approach, the court "must determine whether a given offense is a crime of violence by focusing categorically on the offense's statutory definition, *i.e.*, the intrinsic elements of the offense, rather than on the defendant's particular underlying conduct." *United States v.*

6

*McCoy*, 995 F.3d 32, 54 (2d Cir. 2021).  In doing so, the court compares the legal elements of the predicate offense to the Elements Clause.  *See United States v. Hill*, 890 F.3d 51, 55-56.  The analysis under the categorial approach "must be grounded in reality, logic and precedent, not flights of fancy."  *Id.* at 56 (citing *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013)).  Courts may employ the modified categorical approach when a criminal statute is "divisible," meaning that it "criminalizes multiple acts in the alternative, thereby defining multiple crimes."  *United States v. Moore*, 916 F.3d 231, 238 (2d Cir. 2019); *Gray v. United States*, 980 F.3d 264, 266 (2d Cir. 2020).  Under the modified categorical approach, the court may look beyond the statute and examine a limited set of record documents (frequently described as "*Shepard* documents"), including the indictment, to "determine what crime, with what elements, a defendant was [charged with or] convicted of.'"  *Gray*, 980 F.3d at 266 (quoting *Mathis*, 579 U.S. at 500); *Shepard v. United States*, 544 U.S. 13, 26 (2005).  Under either approach, "courts identify the minimum criminal conduct necessary for conviction under a particular statute," examining only the statutory definitions of the offense, and not the defendant's conduct in committing the offense.  *Hill*, 890 F.3d at 55 (quotations and citation omitted); *Boykin*, 2020 WL 774293, at *6.

## **ARGUMENT**

For the reasons below, as charged in this case, federal first-degree murder under Section 1111(a) qualifies as a crime of violence, such that the murder charged in Count One qualifies as a crime of violence predicating Counts Two and Three.  Accordingly, the defendant's motion to dismiss Counts Two and Three should be denied.

I.   **Pre-Meditated Murder Under Section 1111(a) Qualifies as a Crime of Violence Under the Modified Categorical Approach**

Section 1111(a) is divisible, and accordingly, the modified categorical analysis applies. Under the modified categorical analysis, the charged crime—federal first-degree premeditated murder—indisputably qualifies as a crime of violence under Section 924(c)'s Elements Clause and Supreme Court precedent, including *Borden*'s *mens rea* requirement.

A.   **Section 1111(a) Is Divisible**

The Second Circuit has not decided whether Section 1111(a) is divisible, but numerous other courts—including the Fourth and Seventh Circuits—have found that the statute is divisible. *See, e.g.*, *United States v. States*, 72 F.4th 778, 791 n.11 (7th Cir. 2023) ("The definition of felony murder is immaterial here, however, because § 1111(a) is a divisible statute that criminalizes both murder and felony murder, different crimes with different elements."); *United States v. Jackson*, 32 F.4th 278, 285-87 (4th Cir. 2022) (holding § 1111(a) is divisible, following detailed analysis); *United States v. Varona*, Nos. 95-CR-1027 (PAC), 16-CV-4664 (PAC), 2021 WL 2873793, at *4 n.6 (S.D.N.Y. July 8, 2021) ("Whether this murder was chargeable under 18 U.S.C. § 1111 or New York Penal Law § 125.25(1) is immaterial, as both of those statutes are themselves divisible."); *cf. Santana-Felix v. Barr*, 924 F.3d 51, 56, 56 n.1 (2d Cir. 2019) (discussing similarities between § 1111 and N.Y.P.L. § 125.25, which the Second Circuit has observed is divisible, *see United States v. Scott*, 990 F.3d 94, 99 n.1 (2d Cir. 2021) ("New York's first-degree manslaughter statute, *id.* § 125.20, is divisible into its enumerated parts.")). For the reasons below, this Court should find the same.

8

Section 1111(a) provides:

> Murder is the unlawful killing of a human being with malice aforethought.  Every murder [1] perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or [2] committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or [3] perpetrated as part of a pattern or practice of assault or torture against a child or children; or [4] perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.  Any other murder is murder in the second degree.

18 U.S.C. § 1111(a) (enumeration added).  That is, the statute defines four versions of first-degree murder offenses and a separate second-degree murder offense.  *See Pannell v. United States*, 115 F.4th 154, 160 (2d Cir. 2024) ("[A] single statute may list elements in the alternative, and thereby define multiple crimes." (quotations and citation omitted)).  With respect to first-degree murder offenses, the statute defines first-degree murder as "the unlawful killing of a human being with malice aforethought," and then sets out four types of murder.

Section 1111(a) is divisible with respect to first-degree murder because, contrary to the defendant's contention, *see* ECF 135 at 5-9, the four types of first-degree murder set out in the statute are alternative elements creating multiple versions of the crime, rather than alternative means.  As the Second Circuit has explained, "[a] statute will be considered divisible when it 'lists multiple elements disjunctively' but not when it simply 'enumerates various factual means of [] committing a single element.'"  *Pannell*, 115 F.4th at 160 (quoting *Mathis*, 579 U.S. at 506).  As the Supreme Court has explained, "[e]lements are the constituent parts of a crime's legal definition," meaning "what the jury must find beyond a reasonable doubt to convict the defendant."  *Mathis*, 579 U.S. at 504 (quotations and citations omitted).  In contrast, facts are "extraneous to the crime's

9

legal requirements"; "[t]hey are circumstances or events having no legal effect or consequence," and, importantly, "need neither be found by a jury nor admitted by a defendant." *Id.* (cleaned up; quotations and citations omitted). Moreover, where "a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* at 518 (citations omitted). In illustrating the difference between elements and means, the Supreme Court cited a hypothetical statute that requires use of a "deadly weapon" as an element of a crime and provides that the use of a "knife, gun, bat, or similar weapon" all would qualify. *Id.* at 506. As the Court explained, "that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item." *Id.* Indeed, "[a] jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a deadly weapon." *Id.* (cleaned up; quotations and citation omitted).

Here, in contrast, Section 1111(a) lists alternative elements creating multiple versions of the first-degree murder offense, rather than alternative means of committing a single element. Specifically, the statute creates distinct offenses for first-degree premeditated murder and first-degree felony murder, and accordingly, the statute is divisible. Several considerations support this conclusion.

*First*, Section 1111(a)'s text and grammatical structure describe alternative versions of the first-degree murder offense, which renders the first-degree murder statute divisible. The statute's use of the disjunctive "or," with each type of first-degree murder separated by a semicolon (and first-degree murder separated from second-degree murder by a period) signals that the statute

is divisible. *Pannell*, 115 F.4th at 160; *see also Jackson*, 32 F.4th at 286 ("While not dispositive, when a criminal statute is phrased disjunctively it serves as a signal that it may well be divisible." (cleaned up; quotations and citations omitted)); *United States v. Bankhead*, 746 F.3d 323, 326 (8th Cir. 2014) ("The hallmark of divisibility is the enumeration of alternative bases for conviction separated by the disjunctive 'or.'"). This construction "lists multiple elements disjunctively," which creates alternative offenses for premeditated murder and felony murder. *See Pannell*, 115 F.4th at 160 (quotations and citation omitted). Moreover, Section 1111(a) clearly "enumerates various factual means of [] committing a single element," *within* the disjunctive elements that defendant tries to characterize, themselves, as means. *See id.* For example, the statute describes premeditated murder as "murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing." 18 U.S.C. § 1111(a). The reference to "or any other kind of . . . premeditated killing" reflects that "murder perpetrated by poison" and "murder perpetrated by . . . lying in wait," are "illustrative examples" and therefore alternative "means" of committing premeditated murder. *See Mathis*, 579 U.S. at 518. In contrast, no language in the statute suggests that premeditation and felony murder are alternative means of committing the same element.

*Second*, the Supreme Court and at least two circuit courts have recognized that premeditation is a separate "element[]" of premeditated murder but not of the "felony-murder component of 18 U.S.C. § 1111." *United States v. Antelope*, 430 U.S. 641, 644 (1977); *see also United States v. Catalan-Roman*, 585 F.3d 453, 467 n.18, 474 (1st Cir. 2009) (distinguishing premeditated murder and felony murder under § 1111(a) based on premeditation element); *United States v. Bedonie*, 913 F.2d 782, 787 n.3-4, 802 (10th Cir. 1990) (affirming defendants' convictions where jury instruction described premeditation as element of § 1111(a) offense and instructed that

11

premeditation was not element of felony murder charge).   Other circuit courts similarly have described premeditation as an "element" of premeditated murder under Section 1111(a), reinforcing that it defines an offense distinct from felony murder.  *See, e.g.*, *United States v. Begay*, 673 F.3d 1038, 1042 (9th Cir. 2011) ("Premeditation is not required for all forms of first-degree murder, but it is undisputed that premeditation is a required element of first-degree murder as charged.").[1] Likewise, federal jury instructions for Section 1111(a) reflect that premeditated murder and felony murder require different elements.  *Compare* Sand *et al.*, 2 Modern Federal Jury Instructions-Criminal P 41.01 (2025), Instruction 41-2 (defining elements of premeditated murder under § 1111(a)), *with id.*, Instruction 41-8 (defining elements for felony murder under § 1111(a)).  For example, for premeditated murder, the Modern Federal Jury Instruction—which, in this regard, has been adopted by every circuit's pattern instructions that discuss this offense—lists premeditation as its own element, which the jury must find unanimously and beyond a reasonable doubt.  *Id.*, Instruction 41-2.  In contrast, the jury instruction for felony murder under Section 1111(a) does not include premeditation as one of the elements.  *Id.*, Instruction 41-8.

Indeed, for a felony murder charge, the jury instruction specifically provides that "[t]he government is not required to prove that the defendant had any premeditated design or intent

---

[1]    *See also United States v. Bonilla-Romero*, 984 F.3d 414, 419 n.2 (5th Cir. 2020) ("First-degree murder [under the first prong of § 1111(a)] is a murder *plus* the heightened state-of-mind element (willfulness, deliberateness, maliciousness, or premeditation)." (emphasis in original)); *United States v. Bell*, 819 F.3d 310, 319 (7th Cir. 2016) (describing premeditation as element of charged offense); *United States v. Medina-Garcia*, 226 F. App'x 281, 285-86 (4th Cir. 2007) (same); *United States v. Looking Cloud*, 419 F.3d 781, 789 (8th Cir. 2005) (same); *United States v. Slader*, 791 F.2d 655, 657 (8th Cir. 1986) (same); *United States v. Garcia-Meza*, 403 F.3d 364, 372 (6th Cir. 2005) (finding no reasonable juror would have been confused by jury instruction as to whether premeditation and malice aforethought were separate and distinct elements to be proven for § 1111(a) offense).

to kill the victim." *Id.*, Instruction 41-10. The jury instruction for felony murder does, however, include as a required element that the victim's death occurred during the commission of a specified felony, and that such felony was committed with the requisite *mens rea*, both of which the jury must find unanimously and beyond a reasonable doubt. *Id.* That is, premeditated murder requires premeditated intent but no particular conduct apart from the killing, whereas felony murder does not require premeditated specific intent to kill but does require proof of a killing during a specific kind of criminal conduct, *i.e.*, the specified felony, accompanied by the *mens rea* applicable to that felony. Premeditated murder and felony murder thus involve different types of conduct and are distinct offenses under Section 1111(a).

The Fourth Circuit's analysis in *United States v. Jackson* analyzing these factors and finding Section 1111(a) divisible is instructive. The Fourth Circuit found that because the statute is phrased alternatively by using the disjunctive, it contains four "alternative versions of first-degree murder, which makes the statute divisible." 32 F.4th at 285. The Fourth Circuit also found that each of the four types of first-degree murder "requires the Government to prove a unique element that the jury must find unanimously; the first component requires proof of premeditation, and the second requires proof of the accomplishment (or attempted accomplishment) of a listed felony." *Id.* Accordingly, "these two components list alternative versions of first-degree murder, which makes the statute divisible." *Id.* The Fourth Circuit further found that "the underlying conduct for premeditated murder differs significantly from the underlying conduct for felony murder." *Id.* at 286. The Circuit reasoned that premeditated murder requires proof that a person intended to kill the victim, whereas proof of felony murder does not require proof of intent but rather proof of the (attempted) perpetration of a listed crime. *Id.* As such, "the two rest on different formulations and

13

each formulation of the crime involves a different type of conduct." *Id.* (quotations and citation omitted). The Circuit therefore concluded "[t]hat the kind of conduct proscribed by the different formulations . . . differs quite significantly suggests that . . . the different formulations should be treated as separate crimes warranting the use of the modified categorical approach." *Id.* (quotations and citation omitted).

In addition to these statutory considerations, "peek[ing]" at the "record" of the case for the "limited purpose of determining whether the listed items" in the statute "are elements of the offense"—as this Court is permitted to do—further establishes that Section 1111(a) is divisible. *See Mathis*, 579 U.S. at 518 (cleaned up; quotations and citation omitted). The indictment makes clear that the defendant is charged with premeditated first-degree murder, rather than first-degree murder generally. Specifically, Count One charges that the defendant "did knowingly and intentionally kill Anita Ashok Datar." ECF No. 3 ¶ 1. "[B]y referencing one alternative term to the exclusion of all others"—*i.e.*, first-degree premeditated murder rather than first-degree murder generally—the indictment thereby indicates "that the statute contains a list of elements, each one of which goes toward a separate crime." *See Mathis*, 579 U.S. at 519.

It thus is clear that first-degree murder is a different offense with different elements from felony murder, such that Section 1111(a) is divisible. The defendant's arguments to the contrary are unavailing.

*First*, notwithstanding the defendant's heavy reliance on it, *Schad v. Arizona*, 501 U.S. 624 (1991), is inapposite. *See* ECF No. 135 at 9-15. In *Schad*, the Supreme Court held that the U.S. Constitution permitted the Supreme Court of Arizona to uphold a state conviction of first-degree murder based on a general verdict that combined findings of premeditation and felony

14

murder.  501 U.S. 624.  As the defendant notes, in evaluating the constitutionality of Arizona's statute, the Supreme Court considered, *inter alia*, common law and various state laws.  *See id.* at 641-42.  Here, however, the question is not whether it would be *constitutional* to combine premeditated and felony murder—as the Supreme Court found in *Schad* was—but rather whether Congress in fact has done so in Section 1111(a).  *Accord. Jackson*, 32 F.4th at 285 n.7.  For the reasons above, it has not.

*Second*, the defendant's reliance on *United States v. Thomas*, 34 F.3d 44 (2d Cir. 1994), is misplaced.  *See* ECF No. 135 at 7, 13-14.  As a threshold matter, *Thomas* did not apply *Schad* to Section 1111(a), as the defendant contends, *id.* at 13.  Rather, *Thomas* cited *Schad*'s discussion of murder at common law, observing that *Schad* had construed a murder statute similar to Section 1111(a).  *See* 34 F.3d at 49.  As described above, the discussion in *Schad* occurred in the context of analyzing the constitutionality of the state statute at issue, which was concededly not divisible, and has no bearing on the question here of whether Section 1111(a) is divisible.  Indeed, in *Schad*, the Supreme Court expressly observed that where "a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, [the Supreme Court] simply [is] not at liberty to ignore that determination."  501 U.S. at 636.  That is, the Supreme Court did not reach any holding as to whether the statute at issue—or Section 1111(a)—stated alternative elements of a crime or means to commit a single element.

Critically, in *Schad*, Arizona's statute "equat[ed] . . . the mental states of premeditated murder and felony murder as species of the blameworthy state of mind required to prove a single offense of first-degree murder," which had "substantial historical and contemporary

15

echoes," because either could be a means of establishing "malice aforethought." 501 U.S. at 640. But under Section 1111(a), *all* murders—the four varieties of first-degree murder, and even the separately punishable crime of second-degree murder—require malice aforethought. Certain different aggravating factors—premeditated intent, its commission during an enumerated murder, or "torture against a child"—requiring proof of different *mens rea* and *actus reus*, constitute the separate first-degree murder crimes. That characteristic distinguishes Section 1111(a) from the Arizona state statute interpreted by the Arizona courts to define felony and premeditated murder as separate theories of liability.

Moreover, the defendant incorrectly asserts that the Second Circuit in *Thomas* "rejected the contention that 18 U.S.C. § 1111(a) contained multiple elements." *See* ECF 135 at 13. That argument misstates the case's holding. In *Thomas*, the Second Circuit upheld the district court's jury instruction, which simply instructed the jury as to the relevant state of mind required under the felony-murder crime delineated in the statute. 34 F.3d at 48. There was no discussion of premeditation. The government charged "the traditional common law felony murder rule" based on the defendant's committing a murder during a robbery. *Id.* Thus, when the Second Circuit wrote that "[o]ne way the government can demonstrate malice aforethought is by showing that the killing was committed in the commission of a robbery," *id.*, it was explaining how the jury instruction for felony murder applied to the facts of the trial.

Notably, "malice aforethought" alone would *not* trigger the application of the first-degree murder penalties. *See* 18 U.S.C. § 1111(a) (stating *all* murder requires "malice aforethought," but noting that, absent one of the four species of defined first-degree murders, "[a]ny other murder is murder in the second degree"). Accordingly, it would be nonsensical to contend

16

that the listed species of killings defined in the second sentence of Section 1111(a) constitute different "means" of proving "malice aforethought," because those four different crimes each define the elements of *first*-degree murder, and "malice aforethought" is required even for second-degree murder.

Jackson's core reasoning in finding Section 1111(a) divisible—that each of the four types of first-degree murder "requires the Government to prove a unique element that the jury must find unanimously; the first component requires proof of premeditation, and the second requires proof of the accomplishment (or attempted accomplishment) of a listed felony," *see* 32 F.4th at 285—is not in tension with *Thomas*, which simply held that the "malice aforethought" requirement of the felony-murder species of first-degree murder is inherent in the felony's *mens rea* requirement, *see* 34 F.3d at 48-49.

Thus, Section 1111(a)'s first-degree murder statute is divisible, and accordingly, the modified categorical approach applies. The Court therefore need not reach whether, under a categorical approach, first-degree murder would constitute a crime of violence. The government nevertheless addresses that argument in Part II, *infra*.

### B.    First-Degree Premeditated Murder Under Section 1111(a) Qualifies as a Crime of Violence

Under the modified categorical approach, to determine which version of the first-degree murder is at issue, the Court may consult the above-defined category of "*Shepard* documents." *See Gray*, 980 F.3d at 266. As detailed above, the indictment in this case makes clear that the first-degree murder at issue is premeditated murder. *See* ECF No. 3 ¶ 1. Indeed, Count One charges that the defendant "did knowingly and intentionally kill Anita Ashok Datar," *i.e.*, first-degree premeditated murder. *Id.* Tellingly, the defendant does not appear to dispute that it is the

17

first-degree premeditated murder version of the Section 1111(a) statute at issue in the case, instead disputing only whether the Court may look to the indictment to consider that.  The defendant similarly does not appear to dispute that the first-degree premeditated murder statute qualifies as a crime of violence.

Nor could he.  There can be no serious dispute that first-degree premeditated murder is a crime of violence.  Indeed, the *Borden* plurality confirmed that "[t]he quintessential violent crimes, like murder . . . , involve the intentional use of force."  593 U.S. at 438 (plurality opinion) (quotation and citation omitted); *see also United States v. Mathis*, 932 F.3d 242, 265 (4th Cir.) (2019) (holding first-degree murder under Virginia law satisfies Elements Clause).  Designed to distinguish core violent crimes "like murder" from offenses that "do not fit within the ordinary meaning of the term 'violent' crime," the principles describing the kind of conduct and *mens rea* the Elements Clause ordinarily requires place first-degree premeditated murder firmly within the definition of crime of violence.  *See Borden*, 593 U.S. at 438 (plurality opinion) (cleaned up).

First-degree premeditated murder under Section 1111(a) requires at least the force necessary to satisfy Section 924(c)'s Elements Clause.  As Judge Glasser explained, "murder, no matter the degree, entails a 'use . . . of physical force' sufficient to trigger the elements clause of § 924(c); this conclusion is compelled because the Supreme Court has defined 'physical force,' in this context, as '*violent* force—that is, force capable of causing physical pain or injury to another person'—and '[m]urder necessarily entails enough force to cause injury since there can be no greater injury than death.'"  *United States v. Russell*, Nos. 05-CR-401, 16-CV-3642, 2018 WL 3213274, at *3 (E.D.N.Y. June 29, 2018) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).  Notably, the force requirement "does not require any particular degree of likelihood or

18

probability that the force used will cause physical pain or injury; only potentiality." *Stokeling v. United States*, 586 U.S. 73, 84 (2019). Nor does the offender need "directly" to touch the victim to exert "physical force." *Mathis*, 932 F.3d at 265 (quoting *United States v. Castleman*, 572 U.S. 157, 170-71 (2014)). Accordingly, provided the "offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent." *Id.* (citations omitted). As the Supreme Court has recognized, "[m]urder requires the use of force capable of causing physical pain or injury to another person irrespective whether that force is exerted directly or indirectly by a defendant." *Id.* (quotations and citation omitted). First-degree premeditated murder—which Section 1111(a) defines as the unlawful killing of a human being with malice aforethought and premeditation—thus unambiguously satisfies Section 924(c)'s Elements Clause.

First-degree premeditated murder under Section 1111(a) similarly requires at least the *mens rea* required by the Elements Clause. As set forth in the statute, it requires both a showing of malice aforethought and a showing of premeditation. The premeditation element itself satisfies the *mens rea* requirement of the Elements Clause. Conduct that is "purposeful" or "knowing"— *i.e.*, intentional—satisfies that *mens rea* requirement. *See Borden*, 593 U.S. at 432 (plurality opinion). First-degree premeditated murder, therefore, more than satisfies it. Indeed, the Supreme Court has held that New York's second-degree intentional murder statute is a crime of violence under Section 924(c)'s Elements Clause. *See Delligatti v. United States*, 145 S. Ct. 797, 807 (2025) ("Under New York law, second-degree murder requires proof that the defendant intentionally 'cause[d] the death of another person.' . . . And, it should go without saying, intentionally causing death counts as deliberately causing injury. Thus, second-degree murder in New York . . . is a crime

19

of violence under § 924(c)'s elements clause."); *see also, e.g.*, *United States v. Herron*, 762 F. App'x 25, 32 n.5 (2d Cir. 2019) (summary order) (collecting cases).

The Fourth Circuit's decision in *Jackson* is again instructive. There, after finding that Section 1111(a) was divisible such that the modified categorical approach applied, the Fourth Circuit held that "premeditated murder in violation of § 1111(a) is categorically a crime of violence," which "constitutes a valid underlying crime sufficient to support Jackson's conviction of violating §§ 924(c) and (j)." 32 F.4th at 287 (quotations omitted). So too here.

Tellingly, at least two circuit courts have held that even second-degree murder—a lesser-included offense of first-degree premeditated murder—under Section 1111(a) qualifies as a crime of violence under Section 924(c)'s Elements Clause and *Borden*. *See United States v. Kepler*, 74 F.4th 1292, 1303-07 (10th Cir. 2023) (holding depraved-heart second-degree murder—which requires a more culpable *mens rea* than recklessness—qualifies as a crime of violence where the use of force with depraved-heart recklessness is aimed at or "against" another," though the force need not be targeted at a specific person); *United States v. Begay*, 33 F.4th 1081, 1093 (9th Cir. 2022) (holding "second-degree murder pursuant to § 1111(a) constitutes a crime of violence because murder is the unlawful killing of a human being with malice aforethought," which means killing "either deliberately or recklessly with extreme disregard for human life" (emphasis omitted)).

Thus, under the modified categorical approach, first-degree premeditated murder under Section 1111(a) qualifies as a crime of violence. Accordingly, Counts Two and Three state a claim.

20

## II.    Alternatively, Even if the Modified Categorical Approach Does Not Apply, Section 1111(a) Qualifies as a Crime of Violence Under the Categorical Approach

For the reasons stated in Part I.A *supra,* the Court need not analyze whether all of the crimes of first-degree murder under Section 1111(a) constitute crimes of violence, because it is a divisible statute and only premeditated murder is charged in this case.  Even assuming, however, that the Court finds that Section 1111(a) is not divisible and therefore the categorical approach applies, first-degree murder under Section 1111(a) would constitute a crime of violence that satisfies the requirements of both the Elements Clause and *Borden*.  Indeed, as the Supreme Court recently observed in a post-*Borden* decision, "[t]he elements clause is . . . the natural home for murder and other prototypical violent crimes," such that it would be "unreasonable[] . . . [to] exclud[e] such crimes from the elements clause."  *Delligatti*, 145 S. Ct. at 809; *see also Janis v. United States,* 73 F.4th 628, 631 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 1019 (2024) (holding second-degree murder pursuant to § 1111(a) qualifies as a crime of violence because it requires malice aforethought and, accordingly, always involves "consciously directed" force).

The force necessary to satisfy the Elements Clause derives from the murder, which is itself a forceful act, no matter how it is committed, whether by action or omission.  *See Delligatti*, 145 S. Ct. at 810 ("The knowing or intentional causation of injury or death, whether by act or omission, necessarily involves the use of physical force against another person."); *Scott*, 990 F.3d at 107 ("[A]ny death amounting to first-degree manslaughter [under New York law] necessarily results from violent force.").

Moreover, all murder under Section 1111(a) requires malice aforethought.  *Cf. Janis*, 73 F.4th at 631-32 (discussing history and significance of the "malice aforethought" requirement and noting it requires either specific intent to take a life, "or an intent willfully to act in callous and

21

wanton disregard of the consequences to human life" (emphasis and quotations omitted)).  In the first-degree felony-murder context only, courts infer malice aforethought from the commission of a murder during the underlying felony. *Cf. Thomas*, 34 F.3d at 48-49; *Kepler*, 74 F.4th at 1311 n.20. The defendant is arguing, in effect, that the malice attendant to the killing may be inferred in one context (whether the killing is committed with malice aforethought so as to constitute a murder), but not another (*Borden*'s "against" requirement).  That argument lacks persuasive force.

Thus, even the crime of first-degree felony murder under Section 1111(a) qualifies as a crime of violence, such that, even under the inapplicable categorical approach, Section 1111(a) would qualify as a crime of violence.  Accordingly, Counts Two and Three state a claim.

## CONCLUSION

For the reasons above, the government respectfully submits the Court should deny the defendant's motion to dismiss in its entirety.

Dated:      Brooklyn, New York
            September 5, 2025

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By:      ____/s/_____
Sara K. Winik
Meredith A. Arfa
Assistant U.S. Attorneys
(718) 254-7000

22