UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
   UNITED STATES OF AMERICA,      :
                                      :
             v.                      :    **MEMORANDUM DECISION AND**
                                        :    **ORDER**
   FAWAZ OULD AHMED OULD       :
   AHEMEID, *also known as* "Ibrahim  :
   Idress" and "Ibrahim Dix,"         :    20-cr-0502 (BMC)
                                        :
                        Defendant.   :
-------------------------------------------------------- X

**COGAN**, District Judge.

In 2020, a federal grand jury indicted defendant Fawaz Ould Ahmed Ould Ahemeid on six counts: First-Degree Murder, 18 U.S.C. §§ 2, 1111(a), 2332(a)(1), 3551 *et seq.* (Count One); Brandishing and Discharging a Firearm During a Crime of Violence, 18 U.S.C. §§ 2, 924(c)(1)(A)(i)-(iii), 924(c)(1)(B)(ii), 3551 *et seq.* (Count Two); Causing Death by Firearm During a Crime of Violence, 18 U.S.C. §§ 2, 924(j)(1), 3551 *et seq.* (Count Three); Conspiracy to Provide Material Support to a Foreign Terrorist Organization, 18 U.S.C. §§ 2339B(a)(1), 3551 *et seq.* (Count Four); Provision and Attempted Provision of Material Support to a Foreign Terrorist Organization, 18 U.S.C. §§ 2, 2339B(a)(1), 3551 *et seq.* (Count Five); and Use of Explosives, 18 U.S.C. §§ 2, 844(h)(1)-(2), 3551 *et seq.* (Count Six). The "crime of violence" related to Counts Two and Three is the murder charged in Count One.

Defendant moves to dismiss Counts Two and Three. His theory is that first-degree murder under 18 U.S.C. § 1111(a) is not a categorical crime of violence under 18 U.S.C. § 924(c) and thus cannot, as a matter of law, be the predicate offense for Counts Two and Three. For the reasons below, the Court holds that first-degree murder under Section 1111(a) is not a crime of violence under Section 924(c), and therefore grants defendant's motion to dismiss.

## INTRODUCTION

The question before the Court is whether *first-degree murder* is a crime of violence under 18 U.S.C. § 924(c).  The "absurdity of the inquiry, " United States v. Mangione, No. 25-cr-0176, 2026 WL 251490, at *1-2 (S.D.N.Y. Jan. 30, 2026), is not lost on the Court.  Defendant is an alleged agent of al-Qaeda who executed a plan to "kill as many Westerners as possible" with AK-47s and hand grenades in a hotel in Bamako, Mali, during which a U.S. citizen was killed.  It will be no comfort to the family or friends of the victim when they learn that this was somehow not a "crime of violence" because, as a legal technicality, the Supreme Court's "categorical approach" governs the issue.

The judiciary's "emphatic[] duty . . . to say what the law is," Marbury v. Madison, 5 U.S. 137, 177 (1803), is stymied when precedent binds it to render a decision that runs contrary, not only to "our intuitions about the criminal law", see Mangione, 2026 WL 251490, at *2, but also plain common sense.  See United States v. Taylor, 596 U.S. 845, 868-70, 873 (2022) (Thomas, J., dissenting) (collecting cases); see also United States v. Begay, 33 F.4th 1081, 1099 (9th Cir. 2022) (Wardlaw, J., dissenting) ("[A] faithful application of . . . Supreme Court precedent leads to the counter-intuitive conclusion that . . . murder is not a crime of violence").

"Were this Court writing on a blank slate or not bound by [Supreme Court] precedent," see United States v. Diaz, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), it would apply the "modified categorical approach."  Doing so would not denigrate the Sixth Amendment, see Sessions v. Dimaya, 584 U.S. 148, 225 (2018) (Thomas, J., dissenting), and the illogic in doing otherwise does not overcome this Court's obligation to faithfully apply precedent.  Perhaps it is necessary for this case, Mangione, and others in a similar vein to demonstrate this counter-intuitive reasoning in order to signal that a different approach is warranted.

## LEGAL STANDARD

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him." United States v. Pirro, 212 F.3d 86, 91 (2d Cir. 2000). "[A]n indictment is sufficient if it . . . contains the elements of the offense charged and . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). On the other hand, an indictment cannot stand if the allegations "do not constitute an offense as a matter of law." See United States v. Heicklen, 858 F. Supp. 2d 256, 262 (S.D.N.Y. 2012); see also United States v. Aleynikov, 676 F.3d 71, 75-76 (2d Cir. 2012) ("[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute"). In other words, if the allegations could not possibly form the basis of liability of the offenses charged in an indictment, the charge must be dismissed.

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. Bustos de la Pava, 268 F.3d 157, 165 (2d Cir. 2001) (citing United States v. Nai Fook Li, 206 F.3d 56, 62 (1st Cir. 2000) (en banc)). Dismissal is an "extreme sanction," United States v. Fields, 592 F.2d 638, 647 (2d Cir. 1978), warranted "only in very limited and extreme circumstances." United States v. Broward, 594 F.2d 345, 351 (2d Cir. 1979).

Typically, these motions turn on the facts alleged in the indictment, and are frequently denied because "the court must take the allegations of the indictment as true." See United States v. Sun, No. 24-cr-0346, 2025 WL 2857987, at *1 (E.D.N.Y. Oct. 8, 2025) (citing Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952). Here, however, "[d]efendant's motion to dismiss raises a . . . purely legal issue of statutory interpretation," see United States v. George, 223 F. Supp. 3d 159, 163, 167 (S.D.N.Y. 2016), and the facts alleged in the indictment are not relevant to resolving it.

## DISCUSSION

The law defines a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).[1]  According to the Supreme Court, "[i]ntentional murder is *the* prototypical 'crime of violence,'" Delligatti v. United States, 604 U.S. 423, 435 (2025), and, to a lay reader, that might appear to resolve the question.

It is true, generally speaking, that intentional killings are considered "murder" while unintentional killings are considered "manslaughter."  See, e.g., Stone v. United States, 37 F.4th 825, 833 (2d Cir. 2022) (Under New York law, "the elements of first-degree manslaughter and second-degree murder differ only with respect to the intent element").  If that were the end of it, Delligatti might be dispositive.  But by jurisprudence and legislation, murder has become a less than simple matter.

Relevant here is the felony murder rule, which "traditionally attributes death caused in the course of a felony to all participants who intended to commit the felony, regardless of whether they killed or intended to kill."  Miller v. Alabama, 567 U.S. 460, 491 (2012) (Breyer and Sotomayor, JJ., concurring); Dean v. United States, 556 U.S. 568, 575 (2009) (same, citing 18 U.S.C. § 1111).[2]  Because of the felony murder rule, an unintentional or accidental killing can

---

[1] The Supreme Court has held that the statute's "catch-all" residual clause under subsection (B) is unconstitutionally vague.  United States v. Davis, 588 U.S. 445, 470 (2019).

[2] The Supreme Court tightened the felony murder rule in Enmund v. Florida, 458 U.S. 782, 801 (1982), by limiting the death penalty in felony murder cases to defendants who intended to kill or participated in the killing act. Nonetheless, defendants who had no intent to kill, and were far removed from the killing act, are routinely convicted of murder, which has led to myriad scholarly controversy.  See, e.g., Binder & Harrington, Racially Disparate and Disproportionate Punishment of Felony Murder: Evidence from New York, 110 IOWA L. REV. 1055, 1139 (2025) (Studying about one thousand felony murder convictions in New York from 2008-2021, finding that "half of those convicted and punished for felony murder were not proven to have killed anyone"); Moriearty, Albrecht & Glass, Race, Racial Bias, and Imputed Liability Murder, 51 FORDHAM URB. L.J. 675, 721 (2024) (Studying ten years' worth of murder prosecutions in Minnesota, finding 70% of convictions based on felony murder or accomplice liability).  In any event, most legislatures have incorporated the felony murder rule expressly into statute, and thus its propriety is a matter of policy that is unnecessary to resolving this motion.

still be deemed "murder" regardless of the defendant's state of mind.  See United States v. Gyamfi, 357 F. Supp. 3d 355, 357 (S.D.N.Y. 2019) ("The felony murder rule . . . imposes strict liability for even accidental killings").

This creates tension with the Supreme Court's holdings that if an offense "requires only a *mens rea* of recklessness", then it *per se* falls outside the "crime of violence" definition.  Borden v. United States, 593 U.S. 420, 423 (2021); see Taylor, 596 U.S. at 869; see also Contrera v. United States, No. 14-cr-3343, 2023 WL 11981053, at *3-4, 6 (E.D.N.Y. Apr. 17, 2023) ("Felony Murder by Arson is no longer a valid predicate offense in the wake of [Borden]" because the "Second Circuit has held [that it] requires a *mens rea* of recklessness.") (citing Bethea v. Scully, 834 F.2d 257, 260 (2d Cir. 1987)).

At issue here is the crime of first-degree murder under 18 U.S.C. § 1111(a), which can be prosecuted as intentional murder or felony murder.  Although "[c]ommon sense dictates that murder is categorically a crime of violence," see In re Irby, 858 F.3d 231, 237 (4th Cir. 2017), "we are not dealing with common sense here, but with the law, and with a conclusion that is 'better explained by history than by logic.'"  Begay, 33 F.4th at 1100 (Ikuta and VanDyke, JJ., dissenting in part) (quotations omitted).

## I.    The History of Murder

Murder as we know it finds its roots in English common law, where "every killing of one man by another" was "called [m]urder."  See William Lambarle, Eirenarcha: Or, Of the Office of the Justice of the Peace 233 (1581).  The interpretation of that short definition quickly outgrew its intended reach.  For example, in Lord Dacres' Case, 72 Eng. Rep. 458 (K.B. 1541),[3] two men

---

[3] Lord Dacres' Case is commonly cited as decided in 1535, see, e.g., People v. Cancemi, 7 Abb. Pr. 271 (N.Y. 1858) ("Lord Dacres, in . . . 1535 [was] indicted for treason"), but was actually decided in 1541.  See Binder & Harrington, *supra* at 1066 n.55 (providing contemporary sources confirming that crime and trial occurred in 1541).

trespassed on land to hunt, eventually getting separated "a great way off."  While separated, and unbeknownst to Lord Dacres, the other man was arrested for the trespass and, in resisting that arrest, killed someone.  Both were convicted of murder.  Lord Dacres' culpability was attributed to his unlawful trespass, despite not being involved in (or even knowing about) the killing act.  Lord Dacres' conviction was later held unlawful, but by then he had already been executed.

Around that time, the definition of murder started to take its modern form: "Murder is now construed to be, where one man of malice prepense[] kill[s] another feloniously."  See Lambarle, Eirenarcha at 233-34.  The phrase "malice prepense" is an antiquated version of the (antiquated) phrase "malice aforethought" that appears in most murder statutes.  See William Dawkins, 1 A Treatise of the Pleas of the Crown 78 (1716) (defining and describing murder, using "malice prepense" and "malice fore-thought" interchangeably).  Etymologically, "prepense" is a combination of the Anglo-French "*pur*" (thoroughly) and "*penser*" (to think); in today's dictionaries, it is synonymous with "premeditation."[4]

As the concept of murder continued evolving organically, the law began to develop the principles underlying the felony murder rule.  For example, in Mansell & Herbert's Case, 73 Eng. Rep. 279 (K.B. 1558), a group of robbers were all properly convicted of murder when, during the robbery, one of the robbers inadvertently killed a woman by throwing a stone.  Sir Edward Coke sought to capture this common law development into words, first styling it as an "unlawful act" rule.  See Edward Coke, The Third Part of the Institutes of the Laws of England 56-57 (1644) (A person who, even accidentally, caused the death of another, had committed murder if the person was engaged in an unlawful act, such as trespass, at the time of the killing).

---

[4] Prepense, MERRIAM-WEBSTER (last visited Feb. 4, 2026), https://www.merriam-webster.com/dictionary/prepense. "A lay reader might think that the 'malice aforethought' element of the definition of murder is largely a synonym for 'premeditated.' But that natural reading is absolutely precluded by history."  United States v. Capers, 20 F.4th 105, 129 (2d Cir. 2021).

But Coke's rendition of the rule was rejected for a similar reason Lord Dacres' conviction was deemed unlawful: it overextended murder's intended reach, by obviating the "malice" that made murder, murder.

The King's Bench reigned in the ever-expanding interpretation of murder in <u>Sir Charles Stanley's Case</u>, 84 Eng. Rep. 1094 (K.B. 1663). In that case, Stanley was resisting arrest and fired a pistol at the bailiff, ultimately missing. Having heard the commotion, however, Stanley's servants rushed to his rescue and ended up killing one of the bailiff's servants.

The facts of <u>Stanley's Case</u> are at least somewhat similar to <u>Lord Dacres</u>: both cases involved a death occurring during the resistance of an arrest; neither Dacres nor Stanley actually killed anyone; and both were convicted of murder. But unlike in <u>Lord Dacres</u>, Stanley's murder conviction was affirmed. Perhaps seeking to reconcile the two, the King's Bench effectively wrote one of the first renditions of the felony murder rule:

> [I]f two men go upon malice prepense[] to fight a duel, and while they are fighting, a man who is acquainted with one of them join[s] and take[s] part and kill[s] the other[,] this is murder in the party who came with malice prepense[] to fight; but it is [only] manslaughter in him who came to his aid, because in him there was no malice, [and] to him it was a sudden thing. And here the law do[es] not imply malice, as it do[es] in every one who resist[s] the execution of justice.

<u>Stanley's Case</u>, 84 Eng. Rep. at 1094. This idea of "implied malice" is the core of the felony murder rule. That is, the intent to commit a felony implies, or satisfies, the element of malice necessary for a killing to be considered "murder." Dawkins' 1716 treaty described murder, and the newly configured rule as:

> Murder [is] the wilful killing of any subject whatsoever, through malice forethought, whether the person slain shall be an Englishman or foreigner . . .
> [W]herever a [m]an happens to kill another in the [e]xecution of a deliberate [p]urpose to commit any [f]elony, he is guilty of murder; as where a person shooting a tame [f]owl, with an [i]ntent to steal them, accidentally kills a [m]an; or where one sets upon a [m]an to rob him, and kills him in making [r]esistance;

> or where a person shooting at, or fighting with one [m]an, with a [d]esign to murder him, misses and kills another . . . And not only in such [c]ases where the very [a]ct of a [p]erson having such a felonious [i]ntent, is the immediate [c]ause of a third [p]erson's [d]eath, but also where it any [w]ay occasionally causes such a [m]isfortune, it makes him guilty of [m]urder.

Dawkins, 1 A Treatise of the Pleas of the Crown at 78, 83-84.

Later that century, the United States claimed victory in the Revolutionary War, and the budding country's states adopted many legal principles from England.  Pennsylvania shortly changed course, however, redefining murder on the heels of the Whiskey Rebellion:

> [T]he several offenses, which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness, that it is unjust to involve them in the same punishment: *Be it further enacted* . . .
> That all murder, which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder in the second degree[.]

1794 Pa. Laws, ch. 1766, § 2.  That eighteenth century definition was adopted by other states and the federal government, and largely remains intact today.  See Schad v. Arizona 501 U.S. 648-49 (1991) (Scalia, J., concurring) ("That statute was widely copied . . . down to the present time[,] the United States and most States have [some] variant of the 1794 Pennsylvania statute").

On its face, this new statute appears to do away with the element of "malice," a legislative decision that persists today.  See 18 Pa. Cons. Stat. § 2502(a)-(c).  But what happened was that the term "murder" now assumed the element of "malice" (*i.e.*, for a killing to be "murder" at all, it must have been done with malice).  The Pennsylvania Supreme Court still recognizes that "malice" is what makes, and has always made, a killing a murder, even if the word is omitted from the statute.  See Commonwealth v. Packer, 641 Pa. 391, 402-03, 168 A.3d 161, 168 (2017) ("Pennsylvania retains the common law definition of murder, which is a killing

conducted 'with malice aforethought' . . . Third-degree murder is defined as 'all other kinds of murder,' *i.e.*, those committed with malice that are not intentional (first-degree) or committed during the perpetration of a felony (second-degree).").

In other words, although Pennsylvania split the offense of murder into degrees based on "the degree of atrociousness," 1794 Pa. Laws, ch. 1766, § 2, murder still kept a baseline level of atrociousness – malice – that separated it from other killings, such as manslaughter.  See 18 Pa. Cons. Stat. § 2503-07; see also Lambarle, Eirenarcha at 233-34 ("[T]he words 'of malice prepense[]' make the true difference between [murder] and [m]anslaughter").  Most states and the federal government followed Pennsylvania's lead by segregating murder into degrees, although most legislatures kept the word "malice" intact.  See Schad, 501 U.S. at 648-49 (Scalia, J., concurring).

* * *

History teaches that malice is the baseline for all murder, and the difference between first- and second-degree murder is the atrocity of the underlying conduct.  At the origin of first-degree murder, that requisite atrocity was satisfied by (1) killings by poison or lying in wait; (2) willful, deliberate or premeditated killings; and (3) killings in the course of arson, rape, robbery, or burglary.  See 1794 Pa. Laws, ch. 1766, § 2.

With that backdrop, the Court proceeds to the questions presented by defendant's motion.

## II.    Framework for Determining Whether a Crime is a "Crime of Violence"

There are two questions necessary to resolve this motion.  The first question is whether the offense at issue is divisible.  This matters because there are two analytical frameworks to determine the second question – whether the offense is a crime of violence.  Indivisible offenses are analyzed under "categorical approach" while divisible offenses are subject to the "modified categorical approach."  See Descamps v. United States, 570 U.S. 254, 257 (2013).

A.      **Divisibility**

An offense is divisible if the "statute sets out one or more elements of the offense in the alternative[.]"  Id.; Pannell v. United States, 115 F.4th 154, 160 (2d Cir. 2024) ("A statute will be considered divisible when it 'lists multiple elements disjunctively' but not when it simply 'enumerates various factual means of committing a single element.'" quoting Mathis v. United States, 579 U.S. 500, 506 (2016)).

In Pannell, 115 F.4th at 160-61, the Second Circuit discussed the divisibility of 18 U.S.C. § 2114(a), describing how it contained three base offenses (assault with intent to rob, attempted robbery, and robbery) which could be heightened by the addition of one of three aggravating factors (use of a dangerous weapon, wounding a person, and a prior conviction under that statute), for a total of twelve independent crimes.  Each of those twelve crimes has a mutually exclusive set of elements, and this matters because "[n]o one could know, just from looking at the statute, which version of the offense [a defendant] was convicted of."  Descamps, 570 U.S. at 262.

This affects the "crime of violence" analysis because some of the twelve crimes might be a crime of violence while others are not.  Compare Pannell, 115 F.4th at 157 ("the base offense of § 2114(a) robbery is a crime of violence") with United States v. Barrett, 102 F.4th 60, 71 (2d Cir. 2024) ("attempted robbery is not a categorical crime of violence"), vacated on other grounds, 607 U.S. at __ (2026).  This quagmire gave rise to the "modified categorical approach" that allows a court to look at case-specific documents to determine which of the divisible offenses was charged, and thereafter apply the categorical approach to the elements of that offense.

In contrast, an indivisible statute is normally basic, offering no alternatives.  For example, N.Y. PL § 220.31 contains two elements: (1) a mental state of knowingly, and (2) an act of

unlawfully selling a controlled substance. There are no "other versions" of the offense. If a prosecutor wants to secure a conviction under Section 220.31, there's only one – indivisible – way of doing so. See Harbin v. Sessions, 860 F.3d 58, 61 (2d Cir. 2017) (Section 220.31 "defines a single crime and is therefore an 'indivisible' statute.").

It is not always that simple. Sometimes, a statute will reflect an indivisible set of elements, often without stating one of the elements, by describing the different factual means of satisfying that unstated element. For example, California's burglary statute, Cal. Pen. Code § 459, has a litany of variations in the statute, including where the crime was committed (*e.g.*, house, railroad car, subterranean mine, *etc.*) and the defendant's intent (*e.g.*, to commit petit larceny, grand larceny, or a felony). Nonetheless, the Supreme Court held that this statute was indivisible. See Descamps, 570 U.S. at 277.

The difference, said the Supreme Court, "is elements, not facts." Id. at 261. The elements of California's burglary statute are (1) "entering a location (even if lawfully)" and (2) "the intent to steal." Mathis, 579 U.S. at 505 (citing Descamps, 570 U.S. at 260-61). Although neither element is written in the statute explicitly, there is no alternative interpretation. The variations described by the statute are "extraneous to the crime's legal requirements" and "need neither be found by a jury nor admitted by a defendant." Id. at 504.

### B.    Crime of Violence

Section 924(c) defines a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Because Section 924(c) "parallels the elements clause defining 'violent felony' in the [Armed Career Criminal Act ("ACCA")]," the Second Circuit has "looked to cases analyzing [the] ACCA's elements clause to interpret [Section] 924(c)(3)(A)." See Pannell, 115 F.4th at 161. If an offense "requires only a *mens rea* of recklessness", then it

"can[not] count as a 'violent felony'" under Section 924(e), Borden, 593 U.S. at 423, or as a "crime of violence" under Section 924(c).  See Taylor, 596 U.S. at 869.

The question is whether the "minimum conduct necessary for a conviction" involves violence.  See United States v. Hill, 890 F.3d 51, 55-56 (2d Cir. 2018); see also Contrera, 2023 WL 11981053, at *3 ("Whether a predicate offense is a crime of violence . . . depends on the intrinsic nature of the offense, not on the circumstances of the underlying act in question.").  The Court must "look only to the statutory definitions – i.e., the elements – of the offense" to resolve whether commission of the crime requires violence.  See Hill, 890 F.3d at 55 (internal marks omitted).

The "application of legal imagination" to "conjure up highly unlikely scenarios in the name of logical purity" has no place in this analysis.  See United States v. Culbert, 453 F. Supp. 3d 595, 601 (E.D.N.Y. 2020) (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).  If there is "a realistic probability, not a theoretical possibility" that "the statute at issue could be applied to conduct that does not" involve violence, then the offense is categorically not a crime of violence.  Id. (quotations omitted).  "To show that a particular reading of the statute is realistic, [a] defendant 'must at least point to . . . other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues.'"  Hill, 890 F.3d at 56.

### III.    Application to Federal First-Degree Murder

The parties agree that whether first-degree murder under 18 U.S.C. § 1111(a) is divisible is a question of first impression in this Circuit.  Again, the divisibility analysis asks whether the offense "lists multiple elements disjunctively" or if it "enumerates [multiple] factual means of committing a single element" of first-degree murder.  See Pannell, 115 F.4th at 160 (quotations omitted).  If the former, the statute is divisible and subject to the modified categorical approach; if the latter, the statute is indivisible and subject to the categorical approach.

### A. Divisibility Analysis

Divisibility is a question of statutory interpretation and "[a]s always, we start with the text." United States v. Chaires, 88 F.4th 172, 181 (2d Cir. 2023); see United States v. Balde, 943 F.3d 73, 81 (2d Cir. 2019) ("Statutory analysis necessarily begins with . . . the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme.") (quotations omitted).  Congress chose to define murder as "the unlawful killing of a human being with malice aforethought."  18 U.S.C. § 1111(a).  Congress's definition includes two degrees of murder:

> Every murder [1] perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or [2] committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or [3] perpetrated as part of a pattern or practice of assault or torture against a child or children; or [4] perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

> Any other murder is murder in the second degree.

18 U.S.C. § 1111(a).

Of course, murder is not rendered "divisible" merely because Section 1111(a) can be "divided" into two degrees of murder.  The divisibility analysis concerns the offense, and this statute is "bifurcated into two offenses."  See United States v. Torres, 629 F. Supp. 3d 86, 96 (S.D.N.Y. 2022).  As shown by the bracketed ordinals above, first-degree murder is cordoned into four parts by three semicolons.  The divisibility question asks whether these are mutually exclusive elements, or various factual means of satisfying the same element.

Defendant first argues that the statute describes four different means of satisfying the element of "malice aforethought."  The Government counters by pointing out that, before defining either degree of murder, the statute first defines murder, without reference to degree, as

"the unlawful killing of a human being with malice aforethought."  So, says the Government, malice aforethought is also an element of second-degree murder.  The Government is correct, as has long been recognized.  See, e.g., United States v. Velazquez, 246 F.3d 204, 214 (2d Cir. 2001) (Under 18 U.S.C. § 1111(a), defendants "could not be punished for second-degree murder unless the evidence established that they acted 'with malice aforethought.'"); United States v. Guerrero, 52 F. Supp. 3d 643, 652 (S.D.N.Y. 2014) ("The malice aforethought requirement of 18 U.S.C. § 1111 . . . applies to both murder in the first and second degree").  But that does not end the inquiry.

Although the Second Circuit has not taken up the question expressly, cases involving the federal murder statute tend to describe the four variances in the first-degree murder clause as "means" instead of "elements," suggesting an interpretation that the offense is indivisible.  See, e.g., United States v. Scott, No. 22-2705, 2025 WL 3537339, at *2 (2d Cir. Dec. 10, 2025) ("Certain types of murder, such as a 'premeditated killing,' are classified as first degree murder, while any other murder not defined as first degree murder is 'murder in the second degree.'") (quoting 18 U.S.C. § 1111(a)); United States v. Reid, No. 22-1279, 2023 WL 8469353, at *2 (2d Cir. Dec. 7, 2023) ("First-degree murder is murder that is . . . committed by certain means . . . whereas '[a]ny other murder is murder in the second degree.'"); United States v. Capers, 20 F.4th 105, 129 (2d Cir. 2021) ("First-degree murder includes . . . murders committed by certain means or in the course of certain felonies").

Likewise, the Supreme Court has not addressed the federal murder statute expressly, but its discussion of a substantially similar Arizona statute is helpful.  See Schad, 501 U.S. at 628 n.1

(quoting Ariz. Rev. Stat. Ann. § 13-452 (1973)).[5]  In Schad, the Supreme Court affirmed the propriety of a first-degree murder conviction following jury instructions that did not distinguish between "whether the defendant was guilty of premeditated murder or felony murder."  Id. at 627.  The Second Circuit recently answered a similar question in the same way.  See United States v. Samuels, No. 22-1011, 2024 WL 177720, at *3 (2d Cir. Jan. 17, 2024) (Finding that "jury instructions regarding felony murder [stating] '[t]he government is not required to prove . . . any premeditated design or intent to kill the victim' . . . was a straightforward application of the felony murder rule") (citing 18 U.S.C. § 1111(a)).

The plurality in Schad deferred to Arizona's interpretation of its own statute, but recognized that the statute was hardly unique, and was practically a carbon copy of every first-degree murder statute.  See 501 U.S. at 640-41.  The interpretation of Arizona's ubiquitously worded statute was that "neither premeditation nor the commission of a felony is formally an independent element of first-degree murder; they are treated as mere means of satisfying a *mens rea* element of high culpability."  Id. at 639.

Although the plurality in Schad said nothing of the federal murder statute, Justice Scalia did not pass on the opportunity to identify the common root of the Arizona and federal statutes, recognizing how both "have a single crime of first-degree murder that can be committed by" various factual means.  Id. at 649 (Scalia, J., concurring); see also United States v. Thomas, 34 F.3d 44, 48 (2d Cir. 1994) (describing Schad as "construing a murder statute similar to § 1111").

---

[5] Schad is a plurality opinion without any binding effect, and Justice Scalia's concurring opinion fares no better as precedent.  The fact that everything in Schad may be *dicta* does not render the opinions useless or ignorable.  The Second Circuit has described *dicta* as "a comment on how the court would decide some other, different case."  E.g., Öztürk v. Hyde, 155 F.4th 187, 209 n.3 (2d Cir. 2025) (Nathan, J., concurring) (quoting United States v. Johnson, 143 F.4th 184, 189 (2d Cir. 2025) (Menashi, J., concurring)).  As applied to this case, Schad is complimentary to the Court's discussion of the history of murder.  See section I, *supra*.

And the "single crime" of first-degree murder had its own unique element that distinguished it from second-degree murder: "high culpability." Schad, 501 U.S. at 639.

This Court's review of precedent corroborates the Justices' discussion of murder in Schad. See section I, *supra*. In other words, distinguishing the degrees of murder by the level of "culpability" or "atrocity" associated with the underlying conduct is not a novel interpretation. Indeed, "dividing murder into degrees" is "the common-law . . . practice," Capers, 20 F.4th at 130, and the "salient distinction between first- and second-degree murder 'is the requisite *mens rea*.'" Torres, 629 F. Supp. 3d at 93 (quoting United States v. Cespedes, 2015 WL 4597539, at *3 (S.D.N.Y. July 30, 2015), and United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)); see also United States v. Bonilla-Romero, 984 F.3d 414, 419 n.2 (5th Cir. 2020) (Section 1111(a) first-degree murder is "murder plus the heightened state-of-mind element"); Nakai v. United States, No. 16-cr-8310, 2021 WL 3560940, at *4 (D. Ariz. Aug. 11, 2021) ("first-degree murder requires a higher standard of intent").

In sum, the elements of second-degree murder under 18 U.S.C. § 1111(a) are: (1) an unlawful killing and (2) malice aforethought. The elements of first-degree murder are the same,[6] with the additional element of (3) requisite atrocity.[7] Because the four variances described in the statute serve only as different factual means to show the third element, first-degree murder under 18 U.S.C. § 1111(a) is indivisible.

---

[6] This rendition of the elements deems second-degree murder a lesser-included offense of first-degree murder. Although no cases appear to address that question as applied to the federal murder statute directly, the answer seems obvious from the text of 18 U.S.C. § 1111(a). First-degree murder is essentially defined as "murder plus X" whereas second-degree murder is defined as just "murder." Cf. United States v. Green, 355 U.S. 184 (1957) (Subsequent conviction of first-degree murder following reversal of original conviction for second-degree murder violated Double Jeopardy Clause because original conviction of second-degree murder constituted acquittal of first-degree murder).

[7] The specific verbiage of this unwritten element does not matter. Requisite "atrociousness," see 1794 Pa. Laws, ch. 1766, § 2, may be favored by textualists, while "high culpability", see Schad, 501 U.S. at 639, may be favored by pragmatists. See generally Breyer, Pragmatism or Textualism, 138 Harv. L. Rev. 717 (2025).

\* \* \*

Relying heavily on United States v. Jackson, 32 F.4th 278 (4th Cir. 2022), the Government rejects this interpretation. In Jackson, the Fourth Circuit took up this question, concluding that the federal murder statute was divisible. Id. at 285-86. Other courts have reached the same conclusion, mostly adopting the reasoning in Jackson. See, e.g., United States v. States, 72 F.4th 778, 791 n.11 (7th Cir. 2023); United States v. Candelario-Santana, 675 F. Supp. 3d 226, 242 (D.P.R. 2023).

This Court respectfully cannot agree. Jackson suffers from two compounding flaws. The first problem is the Fourth Circuit's interpretation that the felony murder rule applies only to first-degree murder. See Jackson, 32 F.4th at 285 ("[T]he second component [of § 1111(a)] sets out felony murder as a type of first-degree murder"); cf. United States v. Barber, 119 F.3d 276, 283 (4th Cir. 1997) ("Indeed, by statutory definition, a second-degree murder is one that is committed without premeditation and is not committed in connection with an aggravating felony such as robbery."). According to the Fourth Circuit, this "type of first-degree murder . . . requires the Government to prove a unique element[.]" Jackson, 32 F.4th at 285. The unique element, according to Jackson, is the intent to commit a felony. Id.

That is not the rule in the Second Circuit. See, e.g., United States v. Bryant, 592 F. Supp. 3d 48, 60 (E.D.N.Y. 2022) ("The second-degree murder provision in 18 U.S.C. § 1111 encompasses felony murder"); see also United States v. Regnier, 44 F. App'x 524, 528 (2d Cir. 2002) ("[O]ne other Circuit has expressly (and correctly, in our view) held that 18 U.S.C. § 1111's second-degree murder provision encompasses felony murder") (citing United States v. Pearson, 159 F.3d 480, 486 (10th Cir. 1998)).

The felony murder rule has never been more than one of the "several ways in which the element of malice aforethought can be satisfied." See Thomas, 34 F.3d at 48 ("One way the government can demonstrate malice aforethought is by showing that the killing was committed in the commission of a robbery; under the traditional common law felony murder rule, the malice of the robbery satisfies murder's malice requirement").[8]

On its contrary (faulty) premise, the Fourth Circuit found that the differences between premeditated murder and felony murder were elements, rendering the statute divisible. See Jackson, 32 F.4th at 286 ("[Premeditated murder] requires proof of premeditation, and [felony murder] requires proof of the accomplishment (or attempted accomplishment) of a listed felony.").

But even if the Fourth Circuit was right (and the Second Circuit was wrong) about the limitation of felony murder to first-degree murder, Jackson's conclusion that first-degree felony murder and premeditated murder are different crimes with different elements would still be wrong. That this is not the case becomes apparent by distinguishing first-degree felony murder and second-degree felony murder, which the Fourth Circuit had no reason to do.

The only difference between first-degree felony murder and second-degree felony murder under Section 1111(a) is whether the felony is enumerated or unenumerated. This cannot be arbitrary, otherwise there would be no salient difference between convictions for first- and second-degree felony murder. And indeed, Congress' decision to enumerate certain felonies for

---

[8] Some cases from the Fourth Circuit suggest that "malice" is only an element of first-degree murder, which is also at odds with Second Circuit law. Compare, e.g., United States v. Ellis, 130 F.4th 442, 447 (4th Cir. 2025) ("The federal first degree murder statute defines murder as 'the unlawful killing of a human being with malice aforethought,' and '[a]ny other murder' as second degree murder"), with Santana-Felix v. Barr, 924 F.3d 51, 56 (2d Cir. 2019) ("Under federal law, '[m]urder is the unlawful killing of a human being with malice aforethought,' 18 U.S.C. § 1111(a), and includes both (1) first-degree murder . . . and (2) second-degree murder[.]") (citing United States v. Velazquez, 246 F.3d 204, 215 (2d Cir. 2001)); but see United States v. Rogers, 457 F. App'x 268, 270 (4th Cir. 2011) ("Malice aforethought is a necessary component of first or second degree murder; it may be inferred from the whole facts and circumstances surrounding the killing.").

first-degree murder reflects the congressional determination that killings which occur in the course of those felonies deserved the highest punishment, meaning that those felonies satisfy the requisite atrocity (or "high culpability") of first-degree murder.  See, e.g., H.R. Conf. Rep. 108-66, 2003 U.S.C.C.A.N. 683, 685 (Apr. 9, 2003) (Adding "child abuse" to the list of enumerated felonies because "[a]cts of child abuse with lethal consequences are as deserving of such treatment as killings occurring in the course of such offenses as burglary or robbery"); see also Thomas, 34 F.3d at 49 ("the federal statute elevat[es] the seriousness of murder committed in the course of certain felonies.") (citing Schad, 501 U.S. at 624).

For these reasons, first-degree murder under 18 U.S.C. § 1111(a) is indivisible, and the Court is bound to the categorical approach.

**B.      Crime of Violence Analysis**

Under the categorical approach, if an offense "requires only a *mens rea* of recklessness" then it categorically falls outside the "crime of violence" definition under 18 U.S.C. § 924(c). Borden, 593 U.S. at 423; Taylor, 596 U.S. at 869.  However, "crimes involving mental states between ordinary recklessness and knowledge qualify as crimes of violence."  United States v. Delgado, 149 F.4th 244, 253 (2d Cir. 2025) (citing Janis v. United States, 73 F.4th 628, 629 (8th Cir. 2023)).[9]

---

[9] A defendant convicted of attempting to commit a crime of violence has not necessarily been convicted of a crime of violence; but a defendant convicted of aiding-or-abetting a crime of violence has.  Compare Culbert, 435 F. Supp. 3d at 601 (Hobbs Act Robbery is a crime of violence but attempted Hobbs Act Robbery is not), with Medunjanin v. United States, 99 F.4th 129, 135 (2d Cir. 2024) (aiding or abetting Hobbs Act Robbery is still a crime of violence because "[u]nlike attempt . . . aiding and abetting merely assigns criminal liability; it does not define the crime.").

Felony murder is cut from a similar cloth as an aider-abettor theory of liability – it "assigns" liability for murder even if the defendant only "aided" or "abetted" the underlying felony.  But for the "crime of violence" analysis, this similarity is irrelevant because "in an aiding and abetting prosecution, the Government must still prove that 'the underlying crime was committed by someone other than the defendant.'" Medunjanin, 99 F.4th at 135 (quoting United States v. Pipola, 83 F.3d 556, 562 (2d Cir. 1996)).  In a felony murder prosecution, the Government need not prove that the murder "was committed by someone else" because the felony murder rule simply deems any death that occurs in the course of a felony to be a murder.  In fact, a defendant can be charged with "aiding and abetting

As even the Fourth Circuit recognized in <u>Jackson</u>, 32 F.4th at 285, "[f]elony murder cannot qualify as a 'crime of violence' because it requires only the *mens rea* necessary to attempt or complete the underlying felony . . . That *mens rea* is not more than recklessness and thus, does not satisfy <u>Borden</u>." But <u>see</u> <u>Janis</u>, 73 F.4th at 629 ("Because [murder] requires malice aforethought, the crime always involves 'consciously directed' force and thus constitutes a 'crime of violence' under §924(c)'s force clause.").

The Second Circuit cited <u>Janis</u> when finding that "[e]very circuit that has considered the question post-<u>Borden</u> has concluded that crimes involving mental states between ordinary recklessness and knowledge qualify as crimes of violence." <u>See</u> <u>Delgado</u>, 149 F.4th at 253 (Analyzing Florida's murder statutes).  This passing reference could be interpreted as the Second Circuit agreeing with <u>Janis</u> that "malice" is *per se* a mental state between ordinary recklessness and knowledge.

But that cannot be the case because the Second Circuit has likewise stated that "malice aforethought is . . . an arbitrary symbol used by judges to signify any of a number of mental states deemed sufficient to support liability for murder."  <u>See</u> <u>Capers</u>, 20 F.4th at 129 (quoting Amer. L. Inst., <u>Model Penal Code and Commentaries</u>, § 210.2 cmt. 1 at 13-14));[10] <u>Samuels</u>, 2024 WL 177720, at *3 (Under "the felony murder rule . . . the government need not prove [] that the defendant had any particular *mens rea* as to the killing itself.").

---

felony murder," <u>see</u>, <u>e.g.</u>, <u>United States v. Smith</u>, 489 F. Supp. 3d 167, 172 (E.D.N.Y. 2020), so the question remains whether felony murder is by itself a crime of violence.

[10] Relevant here, the Model Penal Code states that a killing is a murder when "committed . . . recklessly under circumstances manifesting extreme indifference to the value of human life" and that such recklessness is "presumed" when the killing happens in the course of an enumerated felony.  MPC § 210.2(1).  Because the MPC generally reflects the common law, this might suggest that the recklessness standard for felony murder would be "between ordinary recklessness and knowledge" and therefore a crime of violence under <u>Delgado</u>, 149 F.4th at 253. That conclusion would be error, however, as the MPC recognizes that it "depart[s] from the traditional rule of felony murder [by] abandoning the strict liability aspects of the traditional felony-murder doctrine[.]"  <u>See</u> <u>Explanatory Note</u>, MPC §§ 210.0-10.6.

The Second Circuit has always viewed "malice" as an amorphous mental state, recognizing that "the law has long punished reckless conduct as murder," and has no issue with "predicating a felony murder conviction on a felony requiring only a reckless *mens rea*."  See Bethea, 834 F.2d at 259-60 (Felony murder conviction proper even though defendant "was not charged with being reckless with regard to life").  Indeed, one of the enumerated felonies in the current federal first-degree murder statute is arson, an offense that only "requires a *mens rea* of recklessness."  Contrera, 2023 WL 11981053, at *4, 6 ("Felony Murder by Arson charge does not meet the elements clause [under] § 924(c)").

In other words, it is not speculative or the "application of legal imagination," Gonzales, 549 U.S. at 193, that a defendant could commit first-degree murder under 18 U.S.C. § 1111(a) with at most a *mens rea* of recklessness.  See, e.g., United States v. Ferranti, 928 F. Supp. 206, 214 (E.D.N.Y. 1996) (Defendant convicted of "first degree murder [under § 1111(a) may receive] a discretionary downward departure based on reduced culpability [and the] extent of the departure should be based upon the defendant's state of mind (e.g., recklessness or negligence).") (quotations omitted); United States v. Johnson, 273 F. App'x 95, 96 (2d Cir. 2008) (same); United States v. Ling, No. 18-cr-0092, 2024 WL 4389460, at *3 (E.D.N.Y. Oct. 1, 2024) (same).

Accordingly, first-degree murder under 18 U.S.C. § 1111(a) is not a categorical crime of violence, and the indictment therefore "fails to allege a crime within the terms of the applicable statute."  See Aleynikov, 676 F.3d at 75-76.

## CONCLUSION

Defendant's motion is granted, and Counts Two and Three are dismissed.


**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       February 5, 2026