UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.

ANTWAN HUE,

Defendant.

Criminal No. 2:24cr38-01

### ORDER

Pending before the Court is a Motion to Strike the Government's Notice of Intent to Seek the Death Penalty (the "Motion") filed by Defendant Antwan Hue ("Defendant" or "Mr. Hue"). Mot., ECF No. 235. The Court has determined that a hearing on the Motion is unnecessary, as the issues for decision are adequately presented in the briefs. *See* E.D. Va. Local Crim. R. 47(J). Accordingly, the hearing scheduled for April 21, 2026 is **STRICKEN** from the Court's calendar. For the following reasons, the Motion (ECF No. 235) is **GRANTED**.

I.    **BACKGROUND**

A.    **Alleged Offense Conduct**

This case arises from an alleged murder-for-hire scheme. Mr. Hue is charged with trafficking cocaine and hiring two of his co-defendants, Deshawn Mercer and Zquan Steeps, to kill Charlene Ryals, the mother of one of Mr. Hue's children. Indictment, ECF No. 3. Mr. Hue was responsible for paying child support to Ms. Ryals, and the Government alleges that he arranged her murder in an effort to end his child support obligation after an arrearage prevented him from renewing his United States

**Exhibit A**

passport. *Id.* ¶ 10. Specifically, in November 2016, Mr. Hue allegedly offered Mr. Mercer a contract to kill Ms. Ryals in exchange for money. *Id.* ¶ 15.

### B. The Initial Criminal Prosecution: May 2024 – January 2025

On May 8, 2024, a grand jury returned an indictment against Mr. Hue and four co-defendants. *See generally id.* The indictment charges Mr. Hue with Conspiracy to Commit Murder for Hire, in violation of 18 U.S.C. §§ 1958(a) and 2 (Count 1), Murder for Hire, in violation of 18 U.S.C. §§ 1958(a) and 2 (Count 2), Murder While Engaged in a Drug Trafficking Offense, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 848(e)(1)(A) and 18 U.S.C. § 2 (Count 3), and Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Count 4). *Id.* The indictment included a Notice of Special Findings under 18 U.S.C. §§ 3591 and 8592, indicating that Counts 1, 2, and 3 are death-eligible offenses. *Id.* at 40–41.

On June 4, 2024, Mr. Hue was arrested in Boston, Massachusetts. Arrest Warrant, ECF No. 70. That same day, the Office of the Federal Public Defender ("FPD")[1] and Criminal Justice Act ("CJA") Attorney Shawn Cline were appointed to represent Mr. Hue. On July 10, 2024, Mr. Hue appeared before Magistrate Judge Miller for his initial appearance and arraignment hearing. Min. Entry, ECF No. 71. Mr. Hue waived his right to formal arraignment and an immediate detention hearing, was ordered detained, entered a plea of not guilty, and demanded a trial by jury. *Id.*; Order, ECF No. 72. A status conference was scheduled for October 23, 2024. Min. Entry,

---

[1] Assistant Federal Public Defender Amy Austin assumed the role of "learned counsel" under 18 U.S.C. § 3005. Mot. Ex. A ¶ 7, ECF No. 235-1.

**Exhibit A**

ECF No. 71. On August 20, 2024, Magistrate Judge Krask issued an Order setting a pretrial motions deadline of September 30, 2024, with a response deadline of October 18, 2024. Order, ECF No. 79.

On September 29 and 30, 2024, Mr. Hue filed multiple motions. *See generally* Mots., ECF Nos. 105, 106, 107, 108, 109, 110, 111. Among those motions was an unopposed motion to extend the pretrial motions deadline to a date to be set at the October 23, 2024 status conference. Mot., ECF No. 105. On October 2, 2024, the Court granted that motion and indicated that it would set a new pretrial motions deadline after the October 23, 2024 status conference. Order, ECF No. 113.

Mr. Hue also filed a motion to set a schedule for resolution of whether the Government will seek the death penalty (the "Scheduling Motion"). Mot., ECF No. 106. Therein, Mr. Hue moved this Court—pursuant to its inherent authority to manage its docket and § 670 of the CJA Guidelines[2]—to "set a schedule for resolution of whether the government will seek or not seek the death penalty against him," including deadlines for: "(1) The submission by the defendant to the U.S. Attorney of any reasons why the government should not seek the death penalty; (2) The submission by the U.S. Attorney to the appropriate officials of the DOJ of a recommendation and any supporting documentation concerning whether the death penalty should be sought; and (3) Filing of a notice under 18 U.S.C. § 3593(a) that the government will

---

[2] Adm. Office of Courts, *Guide to Judiciary Policy*, Vol. 7, Chap. 6, § 670 ("Scheduling of Federal Death Penalty Case Authorization to Control Costs"), *available at* https://www.uscourts.gov/administration-policies/judiciary-policies/guidelines-administering-cja-and-related-statutes-25.

**Exhibit A**

seek the death penalty, or notification to the court and the defendant that it will not." *Id.* at 1–2. On October 7, 2024, Mr. Hue submitted an eighteen-page letter to the United States Attorney presenting certain mitigating information and requesting expedited authorization from the Department of Justice to prosecute this case as a non-capital case. *See* Gov't Resp. at 3–4, ECF No. 133; Gov't Resp. Opp'n at 6, ECF No. 239.

On October 11, 2024, the Court issued an Order extending the deadline for the Government to respond to several of Mr. Hue's pretrial motions, including the Scheduling Motion. Order, ECF No. 125. To aid its preparation for the October 23, 2024 status conference, the Court also *sua sponte* ordered the Government to address the following in its response to Mr. Hue's Scheduling Motion: "(1) the progress of the death-penalty authorization process to this point; (2) any delays in this process and the reasons therefor; (3) the anticipated date by which the Government will conclude handover of its primary discovery in this case (if that has not yet occurred); (4) the anticipated date by which the defendant will submit to the Government reasons why the Government should not seek the death penalty; (5) the anticipated date by which the Government will submit to appropriate officials at the Department of Justice its recommendation and any supporting documentation concerning whether the death penalty should be sought; and (6) the anticipated date by which the Government will file either a notice under 18 U.S.C. § 3593(a) that it will seek the death penalty or notification to the Court and the Defendant that it will not do so." *Id.* at 7.

**Exhibit A**

Separately, on October 8, 2024, Mr. Cline filed an unopposed motion to withdraw as counsel for Mr. Hue, ECF No. 119, and on October 15, 2024, the Court granted that request, ECF No. 132. That same day, CJA Attorney Douglas Ramseur was appointed in his place.

On October 18, 2024, the Government filed a response to Mr. Hue's Scheduling Motion, wherein it did "not oppose the setting of a deadline for filing a notice of intent to seek the death penalty,"[3] but did "oppose[] any request to establish a schedule governing the Department of Justice's administration of the Justice Manual review protocol." Gov't Resp. at 1, ECF No. 133. The Government further indicated that it was in the process of reviewing Mr. Hue's October 7, 2024 submission and preparing a memorandum for the United States Attorney's review, and that it anticipated being able to provide this recommendation to the Department of Justice "within the next few weeks." *Id.* at 9–10. The Government additionally stated that it was "not able to provide a timeline for DOJ's decision-making process" and would "provide any deadline the Court sets to DOJ for its consideration." *Id.* at 10. Accordingly, the Government requested that any "filing notice deadline" be set "no earlier than 120 days from the October 23, 2024 status hearing."[4] *Id.*

On October 21, 2024, Mr. Hue replied, specifically asking the Court to set a deadline of "15 days from the status conference" for the submission by the United

---

[3] The Government further agreed that the Court has the ability to set a deadline for filing a notice of intent to seek the death penalty pursuant to the Court's inherent authority to control its docket. Gov't Resp. at 7, ECF No. 133.

[4] 120 days from the October 23, 2024 status conference was February 20, 2025.

**Exhibit A**

States Attorney to the appropriate officials of the Department of Justice, and "75 days from the status conference"[5] for the notification of the Attorney General's decision. Reply at 1, ECF No. 135. Mr. Hue also acknowledged the upcoming presidential election:

> Finally, it is necessary to acknowledge the elephant in the room: no matter who wins the presidential election next month, a new administration will enter office on January 21, 2025. Even setting aside the likelihood that a new president or attorney general will have a different philosophy about capital punishment, creating a potential for the arbitrary infliction of the death penalty, there is no small risk that an incoming administration could pause pending capital case reviews during that transition and take still more time to get up to speed before making a final decision, creating *unpredictable and unwarranted delays*. The Court can head that possibility off by setting a deadline that will ensure review by officials who are currently in office and have the experience necessary to make a fair and just decision in a timely fashion.

*Id.* at 5–6 (emphasis added). In other words, Mr. Hue asked the Court to set a deadline that was prior to the transition in administration to avoid any unnecessary delay in receiving a final decision on the Government's intent to seek the death penalty against Mr. Hue.

On October 23, 2024, the Court took up the Scheduling Motion at a status conference.[6] Min. Entry, ECF No. 143. As it pertained to the upcoming change in

---

[5] 75 days from the October 23, 2024 status conference was January 6, 2025.

[6] By this date, Mr. Hue's four co-defendants had each pled guilty. Specifically, on August 29, 2024, Regina Chen pled guilty to Count 4 of the indictment. Min. Entry, ECF No. 84; Plea Agreement, ECF No. 85. On August 29, 2024, Kayla Bedessie pled guilty to Count 1 of the criminal information (ECF No. 82). Min. Entry, ECF No. 92; Plea Agreement, ECF No. 93. On October 10, 2024, the Government filed a notice indicating that it would not seek the death penalty against Zquan Steeps. Notice, ECF No. 123. On October 11, 2024, Zquan Steeps pled guilty to Count 1 of the indictment. Min. Entry, ECF No. 127; Plea Agreement, ECF No. 128. On October 21, 2024, the Government filed a notice indicating that it would not seek the death penalty

**Exhibit A**

administration, Assistant Federal Public Defender ("AFPD") Keith Kimball again

emphasized the possibility of *delay*:

> MR. KIMBALL: I think our main point is, Judge – obviously, we can't control what happens with the coming election, right. I mean it's going to happen. There's going to be a change in administration. Whether former President Trump wins or Vice President Harris wins, there's going to be a new administration. That is going to happen. So I think our proposal, Judge, really reduces the likelihood that there will be further delays, right. The government's request for 120 days takes us to a new administration. But I think there, you're still going to have a new administration that may well want more time.

Hr'g Tr. at 8:14–24, ECF No. 165. In response, Assistant United States Attorney

("AUSA") Joseph DePadilla and the Court stated as follows:

> MR. DEPADILLA: I also think, Your Honor, we should be very careful here when we're talking about the election and what is going to happen, right. From our perspective and the recommendations that we're making from this table, we don't care who is in power, right. It's the executive branch. But as the defense pointed out in their filing to our U.S. Attorney, when a new administration comes in, even in these decisions that are before the courts – let's say it's a seek or a non-seek – the new group can come in and review them and change them, right. That can happen here. So I don't want the Court to be surprised that even if we get through this protocol now, and we set a trial date out – which I'm sure the defense – and I've had multiple meetings with Mr. Kimball, we've been very open with each other – they're going to want time to look at this stuff. You could have a situation here where the executive branch is going to come back at a later point anyway, right. The only way for certainty in this –
>
> THE COURT: Your point being that if death is recommended, and they come back – if death is not recommended, and they come back and say we want death on the table?
>
> MR. DEPADILLA: It could happen with the next administration. I think we should all be honest about that, putting that out there, right. And it

against Deshawn Mercer. Notice, ECF No. 134. On October 22, 2024, Deshawn Mercer pled guilty to Count 1 of the indictment. Min. Entry, ECF No. 137; Plea Agreement, ECF No. 138.

**Exhibit A**

doesn't matter what our recommendation is now. It's whoever is in control at that time.

*Id.* at 13:03–14:04. AUSA DePadilla then moved on to discuss discovery-related issues, and neither defense counsel nor the Court directly responded to this remark. *See id.* at 14:05–07. Then, later in the hearing, AFPD Kimball circled back to this issue:

> MR. KIMBALL: Judge, just very quickly – with a new administration coming in and certainly that possibility that Mr. DePadilla discussed – if there's a no-seek, they may want to look at it again – sure, that could happen. No one really knows. I think it's unlikely. But if it arises, we can deal with it.

*Id.* at 17:08–13. The parties additionally indicated that it would be appropriate and efficient to set a trial date and a new pretrial motions deadline after the Government issued its final decision with respect to the death penalty. *Id.* at 18:20–19:23.

That same day, following the hearing, the Court ordered that: "[t]he Government shall file its notice of intent to seek the death penalty or a notification that it will not be seeking the death penalty on or before **February 20, 2025**." Order at 13, ECF No. 144. The Court declined to impose any intermediary deadlines on the Government. *See generally id.* As to the upcoming presidential election, the Court indicated that it did "not find that this is a proper factor for consideration and [did] not include[] this factor in its analysis." *Id.* at 13 n.8.

On December 27, 2024, the Government filed a notice regarding Mr. Hue's status (the "No-Seek Notice"), stating that it would "**not** seek a sentence of death against [Mr. Hue] for any of the offenses for which he is charged in criminal case number 2:24-cr-38." Notice, ECF No. 157. The defense team notified Mr. Hue of the news.

**Exhibit A**

Mot. Ex. A ¶ 9, ECF No. 235-1 ("Ramseur Decl."). The defense team also communicated to the two private mitigation specialists, who were contracted to assist with Mr. Hue's defense, that their services were no longer needed. *Id.* ¶¶ 7, 9. On January 3, 2025, the Government tendered a plea offer—a mandatory life sentence—to Mr. Hue, which he rejected on January 15, 2025. Gov't Resp. Opp'n at 7, ECF No. 239; *see* Ramseur Decl. ¶¶ 11–12 ("On January 15, 2025, the defense team communicated by email to the government that Mr. Hue was not accepting the plea offer. That communication indicated that since the government had decided not to seek the death penalty, the plea offer to a mandatory life sentence without parole did not make sense to accept.").

> **C.** **President Trump's January 20, 2025 Executive Order and Attorney General Bondi's February 5, 2025 Memorandum to Federal Prosecutors**

On January 20, 2025, after assuming office, President Trump issued an executive order entitled "Restoring the Death Penalty and Protecting Public Safety."[7] That executive order provides in relevant part that "[t]he Attorney General shall pursue the death penalty for all crimes of a severity demanding its use" and that the Attorney General "shall pursu[e] the death penalty where possible."[8]

On February 5, 2025, the day after she was confirmed by the United States Senate, Attorney General Bondi issued a memorandum to the attorneys in the Department of Justice entitled "Reviving the Federal Death Penalty and Lifting the

---

[7] Exec. Order No. 14164, 90 F.R. 8463, *available at* https://www.whitehouse.gov/presidential-actions/2025/01/restoring-the-death-penalty-and-protecting-public-safety/.

[8] *Id.*

**Exhibit A**

Moratorium on Federal Executions" (the "AG Memorandum").[9] The AG Memorandum provides in relevant part that "[t]he Attorney General's Capital Review Committee is directed to review no-seek decisions in all pending capital-eligible cases (*i.e.*, death-eligible cases that have not yet resulted in a conviction) charged between January 20, 2021, and January 19, 2025."[10] It further provided that "[t]his group shall reevaluate no-seek decisions and whether additional capital charges are appropriate" and indicated that said review "shall be completed within 120 days."[11]

### D. Events Following the Issuance of the AG Memorandum

Meanwhile, on January 14, 2025, the Court emailed the parties to schedule a hearing on two of Mr. Hue's pending pretrial motions (ECF Nos. 110, 111). In response, on January 28, 2025, AFPD Andrew Grindrod inquired if the Court would schedule a status hearing to set a pretrial motions deadline and trial date, following the Government's notice that it would not seek the death penalty against Mr. Hue. On February 13, 2025, the Court emailed the parties to request available trial dates. Ramseur Decl. ¶ 17. In response, on February 18, 2025, AUSA Kristin Bird indicated that pursuant to the AG Memorandum, "the no seek decision [was] under review by the new administration" and it was the Government's "preliminary understanding that re-review [would] be completed within 120 days." Because the Government anticipated two different timelines for trial depending on whether this case was

---

[9] Memorandum from the Att'y Gen (Feb. 5, 2025), *available at* https://www.justice.gov/ag/media/1388561/dl?inline.

[10] *Id.*

[11] *Id.*

**Exhibit A**

proceeding as a capital or non-capital prosecution, it requested that the Court "hold on setting a trial date at this time and [that the Government] be permitted to update the Court at the May 20 Motions Hearing."[12]

Accordingly, on February 19, 2025, the Government filed a second notice regarding Mr. Hue's status, indicating that the decision not to seek the death penalty against Mr. Hue was being reevaluated pursuant to the AG Memorandum. Notice, ECF No. 164; Notice Ex. 1, ECF No. 164-1. The Government reiterated that "this reevaluation [would] be completed within 120 days of the memorandum's issuance" and requested that this case not be set for trial until the reevaluation was completed.[13] Notice, ECF No. 164. That notice did not request an order from this Court extending the existing February 20, 2025 deadline for filing a notice of the Government's intent to seek the death penalty. *See generally id.*

On March 4, 2025, Mr. Hue filed a notice of available trial dates, communicating his "availability to start a 10-day trial" on June 23–July 8, 2025, August 4–12, 2025, and September 3–17, 2025, and asking "that this non-capital case be set for a speedy trial[.]" Notice, ECF No. 167. Mr. Hue additionally responded to the Government's February 19, 2025 notice, advising that said notice "does not change the non-capital nature of the case" and indicating that "[a]lthough it is premature at this time, the defense will respond if the government decides to seek leave of the Court to

---

[12] On May 19, 2025, the Court issued an Order addressing certain pending pretrial motions and striking the May 20, 2025 motions hearing. Order, ECF No. 195.

[13] The AG Memorandum was issued on February 5, 2025. Notice Ex. 1, ECF No. 164-1. 120 days from February 5, 2025 was June 5, 2025.

**Exhibit A**

withdraw the 'no-seek' notice." *Id.* at 1 n.1. The Court did not set a trial date; however, Mr. Hue's earlier-filed pretrial motions—including several motions to suppress, ECF Nos. 110, 111, 158—remained pending, and the Court typically resolves substantive pretrial motions in complex cases before setting a trial date.

By the 120th day after the issuance of the AG Memorandum, June 5, 2025, the Government had not provided the Court or Mr. Hue any notice about whether the Government would be changing its position on seeking the death penalty against Mr. Hue. Mot. at 10, ECF No. 235. Mr. Hue and his defense team were "aware of the June 5, 2025 deadline and believed that, when it passed without any communication from the government, it was a clear indication that the government would not seek to renege on its prior no-seek notice." *Id.*; Ramseur Decl. ¶¶ 17–18 ("When the June 5, 2025, deadline passed without a request for us to present to the Capital Review Committee, I was relieved and believed that we were not under consideration for reevaluation. Mr. Hue was [also] aware of the apparent significance of the passing of the June 5, 2025 date without any indication that the government was going to seek to change its position about the death penalty."). Then, on June 13, 2025, AUSA Bird emailed the Court as follows:

> Earlier today, we were notified that Mr. Hue's case has been referred to the Department of Justice for consideration by the Attorney General as to whether the death penalty should be pursued. Accordingly, this case will undergo further review by the Department's Capital Review Committee. A conference is supposed to be scheduled within 60 days from today's date. We have notified Mr. Hue's attorneys of this development. We have further forwarded the Committee's proposed August 11, 2025 conference date to them. However, we do not know yet whether that date will be available for all of Mr. Hue's attorneys.

**Exhibit A**

*See* Ramseur Decl. ¶ 19 (stating that on June 13, 2025, Mr. Hue's defense team "received communication for the first time" that they were being asked to present to the Capital Case Review Committee ("CCRC") of the Department of Justice for reconsideration of the No-Seek Notice).

On June 23, 2025, the FPD moved to withdraw as counsel, noting an irreconcilable conflict that had arisen between counsel and Mr. Hue. Mot., ECF No. 197. After a review of *ex parte* briefing, ECF No. 200, the Court granted the FPD's request on July 2, 2025. Order, ECF No. 202. The withdrawal of the FPD was a significant loss for Mr. Hue's defense team—the FPD had represented Mr. Hue since his arrest in this case, AFPD Austin was serving as learned counsel, and the FPD had primary responsibility over the mitigation aspects of the case. *See* Ramseur Decl. ¶¶ 7–8, 20.[14] (Mr. Ramseur stating that when he was appointed as counsel on October 15, 2024, "the mitigation submission had already been completed," he "did not focus [his] attention on the mitigation aspects of the case," and he "did not have any contact with any of the possible mitigation witnesses or review any of the mitigation records that had been collected to that point"). It was not easy to find substitute death-qualified attorneys in the area. Ultimately, on August 6, 2025, CJA Attorney Joseph King was appointed as learned counsel pursuant to 18 U.S.C. 3005.

---

[14] Specifically, the FPD had three attorneys assigned as trial counsel and another two attorneys who were assisting with research and writing on the case. Ramseur Decl ¶ 6. In addition to the five attorneys, the FPD also provided an investigator and paralegal. *Id.*

**Exhibit A**

On September 9, 2025, the CCRC of the Department of Justice held a WebEx meeting at which Mr. Ramseur made a presentation of mitigation evidence. Mot. at 10, ECF No. 235. Mr. Ramseur attended this WebEx meeting alone—Mr. King, who was recently appointed as learned counsel, had a prior scheduling conflict and the CCRC was unwilling to reschedule. *Id.* at 10–11; *see* Ramseur Decl. ¶¶ 21–22; Mot. Ex. B ¶¶ 6–9, ECF No. 235-2 ("King Decl."). Further, at this time, the defense team did not have a mitigation specialist involved in the case; the two previously contracted mitigation specialists were both no longer available to assist. Ramseur Decl. ¶ 21.

On October 24, 2025—ten months after filing the original No-Seek Notice—the Government filed a Notice of Intent to Seek the Death Penalty (the "NOI") against Mr. Hue, pursuant to 18 U.S.C. § 3593. Notice, ECF No. 223. Therein, the Government stated that in the event of a conviction on Counts 1, 2, or 3, the Government "will seek the sentence of death for these offenses." *Id.* at 1. It provided certain intent and aggravating factors that it alleged it would prove in justifying a sentence of death. *Id.* at 1–3. The Government did not move for leave of Court to withdraw its earlier filed No-Seek Notice (ECF No. 157). It also did not move for leave of Court to file its untimely NOI, considering the Court's deadline of February 20, 2025 to file any such notice. *See* Order, ECF No. 144. It also offered no reason for not providing its NOI by June 5, 2025—that is, within the 120-day period the AG Memorandum set for the Department of Justice to reevaluate capital cases in which no-seek notices had previously been filed.

**Exhibit A**

On December 4, 2025, the parties appeared before Magistrate Judge Leonard for a status conference. Min. Entry, ECF No. 231. At that time, counsel for Mr. Hue indicated that they would soon move to strike the NOI and requested that the Court wait to set a trial date until that anticipated motion was resolved. *Id.* Judge Leonard ordered a briefing schedule for the anticipated motion to strike. *Id.* As of the entry of this Order, no trial date has ever been scheduled in this case.

### E.      The Motion to Strike the NOI

On January 19, 2026, Mr. Hue filed the instant Motion, wherein he states that the Government's October 24, 2025 NOI is "an affront to fundamental constitutional, statutory, and equitable principles." Mot. at 2, ECF No. 235.[15] Mr. Hue asks the Court to strike the NOI because: (1) "the government *waived* its ability to pursue the death penalty by filing its notice over eight months after this Court's February 20, 2024 deadline for giving such notice and ten months after announcing that it was *not* seeking the death penalty"; (2) "the operative statute, 18 U.S.C. § 3593(a), does not permit the government to seek the death penalty after filing a formal notice that the government was not seeking the death penalty"; (3) "[e]ven if § 3593(a) does not categorically bar such a diametric change in position, the government's October 24, 2025 notice is *per se* untimely under § 3593(a) regarding any future trial date in view of Mr. Hue's detrimental reliance on the December 27, 2024 no-seek notice and the *irreparable* prejudice that he has suffered"; (4) "[t]he government's October 24, 2025 notice,

---

[15] Mr. Hue simultaneously filed a Motion to Exceed the 30-page Limit Applicable to a Brief in Support of a Motion. Mot., ECF No. 236. That motion (ECF No. 236) is hereby **GRANTED**.

**Exhibit A**

assuming *arguendo* that it is timely and that the statute permits such a change in position, is not supported by 'good cause' under § 3593(a)"; (5) "[t]he government is estopped from seeking the death penalty under the circumstances of this case"; and (6) "[p]ermitting the government to seek the death penalty would violate due process and the Eighth Amendment." *Id.* at 2–3.

On February 20, 2026, the Government responded in opposition to the Motion. Gov't Resp. Opp'n, ECF No. 239.[16] The Government argues that: (1) it did not waive its authority to seek the death penalty; (2) the No-Seek Notice was revocable; (3) the NOI was filed a "reasonable time before trial"; (4) it may file an NOI without establishing good cause after previously announcing it would not seek the death penalty; (5) it is not estopped from seeking the death penalty under any theory of estoppel; and (6) its filing of the NOI is consistent with Fifth and Eighth Amendment principles. *See generally id.*

On February 24, 2026, Mr. Hue replied. Reply, ECF No. 240.[17] The Motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

The Federal Death Penalty Act of 1994 ("FDPA") is codified at 18 U.S.C. §§ 3591–3598. 18 U.S.C. § 3593 provides in relevant part:

> **(a) Notice by the Government.**—If, in a case involving an offense described in section 3591, the attorney for the government believes that

---

[16] The Government simultaneously filed a Motion to File Enlarged Response Brief. Mot., ECF No. 238. That motion (ECF No. 238) is hereby **GRANTED**.

[17] Mr. Hue simultaneously filed a Motion to Exceed the 20-page Limit Applicable to a Reply to a Response in Opposition of a Motion. Mot., ECF No. 241. That motion (ECF No. 241) is hereby **GRANTED**.

**Exhibit A**

the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice—

> **(1)** stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

> **(2)** setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

> > The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information. The court may permit the attorney for the government to amend the notice upon a showing of good cause.

18 U.S.C. § 3593(a). The purpose of the FDPA is to "protect the accused from having to endure a trial for his life for which he was not on reasonable notice." *United States v. Ferebe*, 332 F.3d 722 (4th Cir. 2003). Like an indictment, a death notice "protect[s] the fundamental fairness of [the] proceeding[]" and serve[s] to set defendants on notice so that they can adequately prepare to defend themselves." *Id.* at 736.

## III.    ANALYSIS

The Government cannot dispute that, for nearly ten months, the Court and the parties proceeded under the understanding that the Government would not seek the death penalty. Mr. Hue rejected a plea offer to a mandatory life sentence, in part, because of his reliance upon the Government's representation that it would not seek the death penalty. Ramseur Decl. ¶¶ 10–12. As Mr. Ramseur provided in his

**Exhibit A**

declaration, defense counsel would have "attempted to resolve the case in a manner that avoided the death penalty" if he had known that the Government could change its position at will. *Id.* ¶ 15. Thus, Defendant is now prejudiced by the Government's change of position. As fully set forth herein, the Court will strike the Government's NOI for the following reasons: (1) violation of court-ordered deadline and waiver; (2) failure to establish "good cause" for amending its initial notice to not seek the death penalty and objective unreasonableness in filing a delayed notice; and (3) principles of estoppel.

**A.    The Government Affirmatively Waived its Right to File a Notice to Seek the Death Penalty by Failing to Comply with This Court's Deadline**

First, Mr. Hue argues that the Government is precluded from now filing a notice under 18 U.S.C. § 3593 to seek the death penalty because it waived its right to file such a notice by failing to file the NOI by the February 20, 2025 deadline set by this Court. Mot. at 11–17, ECF No. 235. Mr. Hue additionally argues that the Government waived this right by: (1) filing its prior No-Seek Notice; (2) failing to move to withdraw the No-Seek Notice; and (3) failing to request an extension of the Court-ordered deadline to file the NOI. *Id.*

*1.    The NOI Violates the Court's February 20, 2025 Deadline*

First, Mr. Hue argues that the Government is precluded from filing a notice under 18 U.S.C. § 3593 to seek the death penalty because it failed to do so by the February 20, 2025 deadline set by this Court. The Court agrees with Mr. Hue. The Government can no longer file any notice to seek the death penalty because such a

**Exhibit A**

notice would violate the Court's February 20, 2025 deadline. In so holding, this Court joins several district courts across this nation which have struck a notice of intent to seek the death penalty for violating a court-imposed deadline to file such a notice. *See, e.g., United States v. Spurlock*, 782 F. Supp. 3d 987, 1007 (D. Nev. 2025), *appeal dismissed*, No. 25-3040, 2025 WL 2319947 (9th Cir. June 11, 2025) (striking the government's notice to seek the death penalty filed after the court's deadline for filing such a notice); *United States v. Dangleben*, No. 3:23cr72, 2025 WL 2647195, at *3–5 (D. V. I. Sept. 15, 2025) (similar); *United States v. Cole*, 799 F. Supp. 3d 438, 449–53 (D. V. I. 2025) (similar).

The Court has inherent authority to manage cases and courtroom matters, including by ensuring obedience to its orders. *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 607 F.3d 439, 451 (6th Cir. 2010) (holding that a district court's "broad discretion to manage its docket" includes the discretion to strike a filing made after a court-imposed deadline). It is well established that this authority extends to the setting and enforcing of a deadline to file a § 3593 notice. *See Dangleben*, 2025 WL 2647195, at *3 (collecting cases). Of all cases, a criminal case with charges carrying the potential of a death sentence is one in which such a deadline should be enforced. *See Caldwell v. Mississippi*, 472 U.S. 320, 329 n.2 (1985) (holding that courts "'as much as is humanly possible'" should take "'extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee . . . that the sentence was not imposed out of whim, passion, prejudice, or

**Exhibit A**

mistake'" (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 117–18 (1982) (O'Connor, J., concurring))).

This Court previously held that the statutory language in § 3593(a) "implies that the Court has the authority to direct the timing of the filing of a notice of intent to seek the death penalty." Order at 3, ECF No. 144. Notably, in its response to Mr. Hue's motion requesting such a deadline, the Government explicitly agreed that this "Court can certainly set a deadline for filing a notice of intent to seek the death penalty" and further provided that the Government had "no opposition to the Court setting a date certain by which the notice must be filed." Gov't Resp. at 7, ECF No. 133. Accordingly, on October 23, 2024, this Court ordered that "[t]he Government ***shall*** file its notice of intent to seek the death penalty or a notification that it will not be seeking the death penalty on or before **February 20, 2025**." Order at 13, ECF No. 144 (first emphasis added). The Government's NOI, filed approximately eight months after the Court-extended deadline of February 20, 2025, clearly violates that deadline.

The Government does not argue that the Court *cannot* enforce its deadlines; rather, it argues that the Court *should not* do so here for three reasons: (1) the Government's subsequent filing of the NOI after the No-Seek Notice does not violate the statutory requirements of the FDPA; (2) the executive branch has exclusive authority and absolute discretion over prosecutorial decisions and should not be prohibited from bringing additional challenges before trial; and (3) the goals sought to be

**Exhibit A**

accomplished by setting the deadline are not impacted by allowing the NOI to remain. Gov't Resp. Opp'n at 10–15, ECF No. 239.

These arguments are unavailing. The Court rejects the Government's first argument regarding the statutory requirements of the FDPA, as discussed in detail *infra*. The Government's second argument fundamentally mischaracterizes the matter before the Court—a decision to seek the death penalty is not the same as a prosecutorial decision to bring new or additional charges. *See United States v. Constanza-Galdomez*, 787 F. Supp. 3d 131, 142 (D. Md. 2025) ("The government contends that its newfound intent to seek the death penalty should be treated like any other superseding charging document. That is not a serious position."); *see also, e.g., United States v. Ivy*, 83 F.3d 1266, 1296–98 (10th Cir. 1996) (holding that the government forfeited its right to invoke the otherwise applicable 20-year mandatory minimum penalty by failing to object to the presentence report's erroneous statement that the mandatory minimum penalty was only 10 years, notwithstanding the government's timely pretrial filing of an § 851 information in support of the higher mandatory minimum penalty). Regarding the Government's third argument, the Government correctly notes that the purpose of the deadline was to "keep this case on a reasonable and efficient schedule." Order at 13, ECF No. 144. It cannot reasonably be argued that permitting the NOI to remain does not impact that purpose. Although the Court has not yet set a pretrial motions deadline or trial date, the parties have diligently litigated pretrial motions for the last several months. The defense team was doing so with the understanding that this was a non-capital case. Presumably, the defense

**Exhibit A**

team would have operated differently if they believed this to be a capital case. Allowing the NOI to remain in place—even without a pretrial motions deadline or trial date—would require defense counsel to reevaluate its entire pretrial strategy and set the "clock" significantly back in this case. *See* Reply at 11, ECF No. 240 (noting that the defense "has lost valuable time in preparing for a capital trial").

> 2. *The Government Waived its Right to Seek the Death Penalty*

Additionally, the Government waived its right to seek the death penalty against Mr. Hue by filing its No-Seek Notice—an express indication that it would *not* seek the death penalty against Mr. Hue, failing to request an extension of the Court's February 20, 2025 deadline, and failing to move for leave to withdraw the No-Seek Notice and file the NOI in its place. *See Spurlock*, 782 F. Supp. 3d at 1005 (finding that the "government 'intentionally relinquished or abandoned' any challenge to the [] deadline, or at least forfeited any objection, by failing to timely raise it." (citations omitted)); *Dangleben*, 2025 WL 2647195, at *4 (similar).

The Supreme Court has explained that "waiver is the intentional relinquishment or abandonment of a known right," which "extinguish[es]" that right. *United States v. Olano*, 507 U.S. 725, 733 (1933) (noting that "forfeiture is the failure to make the timely assertion of a right," while "waiver is the intentional relinquishment or abandonment of a known right."). The waiver/forfeiture doctrine applies to the Government. *See, e.g., Eberhart v. United States*, 546 U.S. 12, 19 (2005) ("Here, where the Government failed to raise a defense of untimeliness until after the District Court had reached the merits, it forfeited that defense."); *United States v. Perkins*, 108 F.3d

**Exhibit A**

512, 516 & n.15 (4th Cir. 1997) (applying same forfeiture/waiver analysis to a claim of error asserted by the government for the first time on appeal just as the court applies to a claim raised by the defendant for the first time on appeal).

Because the Government neither withdrew nor sought to amend its No-Seek Notice, and then filed its NOI well beyond the February 20, 2025 deadline without requesting an extension, the Court finds that it waived its right to seek the death penalty in this case. *See United States v. Ball*, No. 5cr100, 2006 WL 8570266, at *1 (finding that "[w]aiver and preclusion is an ordinary and unremarkable consequence of failure to meet clear, court-ordered deadlines, whatever the gravity of the case.").[18]

### B. The Government Has Not Complied with the Requirements of Section 3593

Mr. Hue next asks this Court to interpret § 3593(a) "in a manner that does not authorize the government to reverse its prior formal decision *not* to seek the death

---

[18] The Government urges the Court to find that it did not waive its right to seek the death penalty because the Court's February 20, 2025 deadline "was set with the acknowledgement of the parties that a new administration would likely review any decision" and because "the government's notification that it would not seek the death penalty was only in place 52 days before it promptly notified the Court and the defendant that the decision was being reviewed 12/27/2024 to 2/19/2025." Gov't Resp. Opp'n at 15, ECF No. 239. The Court finds such arguments unavailing. The Government cannot use a stray comment asserted during a status conference, implying that the new administration could revisit any decision to not seek the death penalty, to meaningfully argue that it did not waive its right to seek the death penalty. This is especially so because the Government did not request an extension of the Court's deadline, move to withdraw the earlier filed No-Seek Notice, or seek leave of Court to file an untimely NOI, even though it is well understood that such procedural mechanisms exist in federal court. Moreover, as stated by Mr. Hue's counsel, Mr. Hue and his counsel did not believe that the Department of Justice would change its position and pursue the death penalty again, and Mr. Hue relied on that belief in rejecting a plea offer to a mandatory life sentence. Ramseur Decl. ¶¶ 14–15.

**Exhibit A**

penalty[.]" Mot. at 18, ECF No. 235. Rather than conclude that § 3593(a) does not permit revocation of notices indicating a decision not to seek the death penalty *per se*, the Court concludes that *in this case*, the Government cannot revoke its decision to not seek the death penalty against Mr. Hue because any such revocation is without good cause and untimely. *But see United States v. Waggoner*, 339 F.3d 915, 918 (9th Cir. 2003 (finding that the government's decision not to pursue the death penalty is irrevocable); *see also United States v. Suarez*, 801 F. Supp. 3d 872, 878–79 (N.D. Cal. 2025) (similar, relying on *Waggoner*); *United States v. Cerritos*, 180 F. Supp. 3d 432, 438–39 (E.D. Va. 2016) (citing *Waggoner* with approval). The Court considers Mr. Hue's good cause and timeliness arguments in turn.

       1.     "Good Cause"

Mr. Hue argues that any notice of intent to seek the death penalty filed in this case would violate 18 U.S.C. § 3593 because the Government has not made a showing of "good cause." Mot. at 28–35, ECF No. 235. The Court agrees with Mr. Hue.

Section 3593(a) allows the Government to amend a death notice[19] "upon a showing of good cause." 18 U.S.C. § 3593. In this context, "good cause must focus on the diligence of the government in uncovering new information contained in the Amended Death Notice and the timing of when that information was obtained." *United States v. Cuong Gia Le*, 316 F. Supp. 2d 343, 348–49 (E.D. Va. 2004). If there is good cause, the Court must then assess whether the amended notice is untimely.

---

[19] The Court is not persuaded that the FDPA permits the Government to amend a no-seek notice. However, as noted above, for the purposes of this Order, the Court assumes *arguendo* that a no-seek notice may be amended and is therefore subject to the good cause requirement.

**Exhibit A**

*United States v. Le*, 326 F. Supp. 2d 739, 741 (E.D. Va. 2004) ("If no showing of good cause is made, the timeliness of the amended death notice need not be addressed."). The Government has not provided any reason why it would now be permitted to abruptly change course after notifying the Court and the Defendant that it does not intend to seek the death penalty. Based on the substantial reliance interests at stake, the Government's failure to provide any reason whatsoever in justifying a last-minute change precludes it from seeking the death penalty here. *Accord Suarez*, 801 F. Supp. 3d at 878–79.

### 2.     *"A Reasonable Time Before the Trial"*

After establishing good cause to amend a death notice, the Government must also show that a death notice was filed "a reasonable time before the trial." 18 U.S.C. § 3593(a). Here, even assuming *arguendo* that the Government has demonstrated good cause, the Court finds that the NOI is improper under the FDPA because it was not timely filed.

### i.     *Applicability of* Ferebe *or* Wilk

Courts analyzing whether an NOI was filed within a "reasonable time before trial" in recent cases involving reversal of a prior no-seek notice have applied either *Ferebe* or *Wilk*.[20] *See, e.g., Spurlock*, 782 F. Supp. 3d at 1018–22 (applying *Wilk*); *Constanza-Galdomez*, 787 F. Supp. 3d at 139–45 (applying *Ferebe*); *Cole*, 799 F. Supp. 3d at 460–67 (applying *Ferebe*).

---

[20] *United States v. Wilk*, 452 F.3d 1208 (11th Cir. 2006).

**Exhibit A**

However, both *Ferebe* and *Wilk* addressed circumstances in which the death penalty remained a possibility for the duration of pretrial proceedings. *See Wilk*, 452 F.3d at 1223 (noting the government filed the death notice "by the . . . deadline set by the district court"); *Ferebe*, 332 F.3d at 724–26 (making no note of a pretrial deadline for the filing of a death notice or a No-Seek Notice); *United States v. Ferebe*, 2005 WL 1429261, at *2–3 (D. Md. June 16, 2005) (noting, on remand, that despite the fact that "the government had not yet filed a Death Notice," "the case was on schedule for a death penalty trial"); *see also Spurlock*, 782 F. Supp. 3d at 1020 ("The mere existence of the no-seek notice also distinguishes this case from *Wilk*, where 'from the start, all parties knew [it] was a likely death penalty case[.]'"); *Constanza-Galdomez*, 787 F. Supp. 3d at 141 ("*Ferebe* is ordinarily applied in cases where the death penalty was always a possibility, but the government delayed filing a formal death notice."). By contrast, this case presents a materially different posture: the Government initially filed the No-Seek Notice and only later filed the NOI—after the Court's deadline to file such a notice had passed. Neither *Ferebe* nor *Wilk* directly addresses the reasonableness of such a sequence. Nonetheless, the Court begins with the Fourth Circuit's non-exclusive four-factor framework set forth in *Ferebe*. 332 F.3d at 737.

> ii.     The *Ferebe* *Framework and its Limits Here*

Under *Ferebe*, courts evaluating the reasonable timeliness of a notice of intent to seek the death penalty consider, "among other factors that may appear relevant, (1) the nature of the charges presented in the indictment; (2) the nature of the aggravating factors provided in the Death Notice; (3) the period of time remaining before

**Exhibit A**

trial, measured at the instant the Death Notice was filed and irrespective of the filing's effects; and, in addition, (4) the status of discovery in the proceedings." 332 F.3d at 737. As both *Ferebe* and *Wilk* emphasize, this inquiry is not exhaustive but instead requires a holistic assessment of all relevant circumstances. *Id.*; *Wilk*, 452 F.3d at 1221 n.23.

The Court encounters difficulty applying *Ferebe* here because, unlike in *Ferebe* and *Wilk*, no trial date has been set. That fact also distinguishes this case from the recent line of district court decisions striking seek notices filed after an earlier filed no-seek notice, all of which involved a predetermined trial date. *See, e.g., Constanza-Galdomez*, 787 F. Supp. 3d at 144 (holding "109 days . . . patently insufficient to develop a capital defense"); *Spurlock*, 782 F. Supp. 3d at 1019 (holding "a defendant cannot prepare for a capital trial with only 12 days of notice"); *United States v. Merrell*, No. 3:20cr46, 2025 WL 2911170, at *2 (N.D. W. Va. Oct. 7, 2025) (finding seven months of notice insufficient); *Dangleben*, 2025 WL 2647195, at *2 (finding five months of notice insufficient); *Cole*, 799 F. Supp. 3d at 465 (finding 52 days insufficient).

The Government argues that the absence of a trial date forecloses any finding of untimeliness. Gov't Resp. Opp'n at 21–28, ECF No. 239. Defendant, by contrast, argues that the lack of trial date necessitates consideration of additional factors, such as irreparable prejudice. Mot. at 21–28, ECF No. 235.

At first glance, *Ferebe* appears to support the Government's position. 332 F.3d at 739–40 ("A court necessarily errs where it rules on a motion to strike a Death

**Exhibit A**

Notice under section 3593(a)'s timeliness requirement but no trial date is set, or no trial has begun . . . without a date from which to measure the amount of time remaining from the filing to trial, a court cannot reach conclusions as to the objective reasonableness of *that* yet unknown and unidentified interval."). But *Ferebe* did not contemplate a case in which the Government had previously filed a No-Seek Notice. Subsequent district court decisions have suggested that courts may consider "whether the Government should have filed the Death Notice earlier than it did" in analyzing the first *Ferebe* factor. *United States v. Ponder*, 347 F. Supp. 2d 256, 263 (E.D. Va. 2004) (analyzing *United States v. Hatten*, 276 F. Supp. 2d 574, 578 (S.D. W. Va. 2003)). As another judge of this Court explained in *Ponder*: "If the death penalty is to be sought, the sooner everyone knows, the better. This is the policy underlying § 3593 and the impetus for the Court's decision to hold the Government's feet to the fire [by encouraging them to file a NOI earlier rather than later]." *Id.*

Consistent with that reasoning, courts confronting reversals of no-seek notices have examined whether any new evidence justified the delay. *See Constanza-Galdomez*, 787 F. Supp. 3d at 141 (holding that prosecution in which NOI was reversal of initial no-seek posture did not involve any new information or evidence that could justify delay or reversal); *Cole*, 799 F. Supp. 3d at 461 (similar). Accordingly, the Court concludes that it is not constrained to find the NOI reasonable simply because no trial date has been set. Nor would it be appropriate to ignore the actual prejudice suffered by Defendant in evaluating timeliness.

**Exhibit A**

### iii.    *The NOI is Objectively Unreasonable*

First, the procedural history reflects strategic delay by the Government. After the No-Seek Notice was filed, the Court requested available trial dates from the parties. The Defendant provided available dates and requested that this non-capital case be set for a speedy trial. Notice, ECF No. 167. The Government, however, did not provide available dates and instead urged the Court to refrain from setting a trial date due to the possibility of reevaluation following the issuance of the AG Memorandum. Notice, ECF No. 164. Defendant did not object to the possibility of reevaluation at that time, correctly observing that any such objection would have been premature. Notice at 1 n.1, ECF No. 167. However, Defendant expressly indicated that he would respond appropriately *if* the Government decided to seek leave of Court to withdraw the No-Seek Notice. *Id.*

Despite that posture, the Government filed the NOI without seeking leave of Court, thereby depriving Defendant of a meaningful opportunity to lodge an objection. If the Court were to deem the NOI timely solely because no trial date has been set, it would effectively permit the Government to manipulate the scheduling process—delaying trial indefinitely while reconsidering its decision to seek the death penalty, all without affording the Defendant a meaningful opportunity to be heard.

Second, Mr. Hue has suffered substantial and irreparable prejudice. After the Government filed its No-Seek Notice on December 27, 2024, Mr. Hue reasonably believed that death was no longer a possible punishment. *See Constanza-Galdomez*, 787 F. Supp. 3d at 146 ("The anxiety [that the three defendants] have experienced is no doubt significant given the government's abrupt change in position."). Then, when

**Exhibit A**

Mr. Hue was offered a plea to a mandatory life sentence, he rejected that offer because he believed death was off the table, and life in prison was the most extreme penalty he would possibly face. *See* Ramseur Decl. ¶¶ 10–15 (Mr. Hue's lawyer stating that he would have attempted to convince Mr. Hue to take this plea if he believed the death penalty was an option, but did not believe life in prison to be a good offer at the time, considering that it was the same sentence Mr. Hue would receive if he rejected the offer, went to trial, and was convicted).

In addition, in the months in between the filing of the No-Seek Notice and the NOI, the defense team ceased preparing for a capital case. It terminated the services of the mitigation specialists after the No-Seek Notice was filed and redirected its efforts on litigating the pending suppression motions. When the Government later reversed course, the defense was unable to reassemble its mitigation team or adequately prepare for the mitigation presentation to the Department of Justice. That presentation—effectively Defendant's sole opportunity to argue against a death authorization—proceeded without a mitigation specialist or learned counsel due to the unprecedented change in course and abrupt scheduling. *Cf. Constanza-Galdomez*, 787 F. Supp. 3d at 145 ("[The] CRC process also occurred without any meaningful opportunity for defense counsel, learned or not, to develop or present a mitigation case. Because the government had represented to Defendants that it would not seek the death penalty, counsel had no reason to investigate or develop such a case.").

Finally, the *Ferebe* factors, even as adapted here, weigh against the Government. The nature of the charges has not changed since the outset of the case. The

**Exhibit A**

aggravating factors likewise present nothing new. The Government identifies no newly discovered evidence to justify its reversal. It is unclear what discovery, if any, has been produced to Defendant with regard to the sentencing phase. And Defendant has not had reasonable time to conduct his own discovery on mitigation and on defenses to the aggravating factors. In short, "[n]othing has changed other than the favorable position of the new administration regarding pursuit of the death penalty." *Id.* at 143. Taken together, these considerations compel the conclusion that the NOI was not filed within a reasonable time under § 3593(a). Accordingly, the NOI must be struck.

### C. Judicial Estoppel Precludes the Government from Seeking the Death Penalty

Mr. Hue argues that the familiar doctrine of judicial estoppel precludes the Government from arbitrarily reversing course and seeking the death penalty against him after affirmatively representing to the Court and Mr. Hue that it would not do so. *See* Mot. at 36–37, ECF No. 235. Based on the Government's December 27, 2024 No-Seek Notice, the Court agrees with Mr. Hue that the Government is estopped from seeking the death penalty and that this is no longer a death penalty case.

The doctrine of judicial estoppel is intended to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment" and "playing fast and loose" with the courts. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks and citations omitted); *see also Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). So, "where a party assumes a certain position in a legal proceeding, and succeeds in

**Exhibit A**

maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken[.]" *Zedner v. United States*, 547 U.S. 489, 504 (2006).

The Government first argues that "[i]t is far from clear whether judicial estoppel can even apply to the federal government[.]" Gov't Resp. Opp'n at 31, ECF No. 239. While the Supreme Court has stated that "the Government may not be estopped on the same terms as any other litigant," it has been hesitant "to say that there are no cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with the Government." *Heckler v. Cmty. Health Servs. of Crawford Cnty.*, 467 U.S. 51, 60–61 (1984); *see also Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them."). In *Maine*, the Supreme Court applied judicial estoppel against New Hampshire while recognizing the same underlying concerns about applying estoppel against a state government. 532 U.S. at 755–56; *see also United States v. Penn. Indus. Chemical Corp.*, 411 U.S. 655, 674 (1973) (explaining that the government can be "prevent[ed] . . . from proceeding" with a federal criminal prosecution if the defendant relied on federal guidance indicating that its conduct was not criminal). "The government's status therefore is not an exemption, but an important part of the estoppel analysis." *United*

**Exhibit A**

*States v. Meehan*, No. 2:22cr2, 2026 WL 447431, at *3 (S.D. Ind. Feb. 17, 2026). Accordingly, the Court approaches Mr. Hue's judicial estoppel argument with great caution and care, mindful that "the Government may not be estopped on the same terms as any other litigant." *Maine*, 532 U.S. at 755.

There are three elements which must be met to apply judicial estoppel. "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996). "Second, the prior inconsistent position must have been accepted by the court." *Id.* "Finally, the party sought to be estopped must have 'intentionally misled the court to gain unfair advantage.'" *Id.* (quoting *Tenneco Chems., Inc. v. William T. Burnett & Co., Inc.*, 691 F.2d 658, 665 (4th Cir. 1982)). This third factor is the "determinative factor in the application of judicial estoppel to a particular case . . . courts will not apply judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'" *Id.* (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)).

Each of these considerations weigh strongly in favor of applying judicial estoppel in this case. *See, e.g., Constanza-Galdomez*, 787 F. Supp. 3d at 147–49 (determining that the government was estopped from seeking the death penalty after filing a No-Seek Notice based on the status of the proceedings); *Suarez*, 801 F. Supp. 3d at 876–77 (similar). First, the Government's October 24, 2025 NOI is a complete reversal that is "clearly inconsistent" with its prior decision not to seek the death penalty. *Zedner*, 547 U.S. at 504. Second, the Court accepted and relied on the Government's

**Exhibit A**

position, by managing this case as a non-capital case in the nearly ten months between the filing of the No-Seek Notice and the NOI. Finally, and most importantly, the Government would clearly receive an unfair benefit if not estopped because Mr. Hue and his counsel detrimentally relied on the Government's prior decision not to seek the death penalty:

> When I met with Mr. Hue on January 9, 2025, I did not believe that there was any realistic possibility that Mr. Hue was going to be facing the death penalty again because of the government's notice not to seek death. I knew from my own research into the Department of Justice's authorization process that while there was a process to reverse a decision to seek the death penalty, there was not a process to reverse a decision to not seek the death penalty. Furthermore, I knew from speaking with federal resource counsel that there had never been a case where a no-seek decision has been reversed due to a change in administrations and any attempt to do so would be unprecedented. If, in late December and early January 2025, I had believed that the Department of Justice would change its position and pursue the death penalty again, I would have attempted to resolve the case in a manner that avoided the death penalty.

Ramseur Decl. ¶¶ 14–15. While the Court is mindful of the importance of the Government's discretion in prosecuting criminal offenses, it finds that allowing the Government to seek the death penalty in this case after affirmatively manifesting an intention not to do so would be gravely prejudicial to Mr. Hue.[21]

---

[21] Mr. Hue also argues that the Government should be barred from seeking the death penalty under the doctrines of equitable and promissory estoppel. Having already found another estoppel doctrine applies, this Court makes no ruling on equitable or promissory estoppel. Mr. Hue also raises two separate constitutional issues, which this Court need not reach given the multitude of statutory justifications for striking the death notices in this case. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other grounds upon which the case may be disposed of."); *United States v. Chatrie*, 136 F.4th 100, 101 (4th Cir. 2025) (Diaz, C.J., concurring) ("[J]udicial modesty sometimes counsels that we not make grand constitutional pronouncements merely because we

**Exhibit A**

\*       \*       \*

In sum, the Court finds that each of the above-discussed reasons provide an independent basis to strike the NOI: (1) the Government violated the Court-imposed deadline to file such a notice, and waived its right to do so; (2) under § 3593, the Government has not established good cause to amend its notice, and even if it had, the NOI is untimely; (3) principles of judicial estoppel prohibit such grave injustices. Thus, like the *Constanza-Galdomez* court, the Court concludes:

> Here . . . the government decided—certainly not by inadvertence or accident—to reverse course on an issue of critical importance, involving [the Defendant's life], . . . with full knowledge that the reversal would have a chaotic impact on the progression of this case. The government cannot play fast and loose with decisions involving life and death. Despite the government's repeated assertions to the contrary, our legal system has always recognized that death is different. We demand the most from the government when it seeks to impose an irrevocable penalty . . . it would be impossible to provide [the Defendant] with a capital trial that upholds [his] constitutional and statutory rights . . . Courts are constitutionally required to intervene when the government oversteps its bounds. It has done so here. If the government cannot provide [the Defendant] with a capital trial that preserves [his] rights, this Court will not hold one.

787 F. Supp. 3d at 148–49 (internal quotation marks omitted).

## IV.    CONCLUSION

For the foregoing reasons, the Motion (ECF No. 235) is **GRANTED**, and the NOI (ECF No. 223) is **STRICKEN with prejudice**. The Clerk is **DIRECTED** to **STRIKE** the NOI docketed at ECF No. 223. The Motions for Leave to File Excess

---

can."). This case raises obvious constitutional concerns, particularly as to the Due Process Clause of the Fifth Amendment. But insofar as this Court can decide this issue on statutory and estoppel grounds, it declines to make "grand constitutional pronouncements." *Id.*

**Exhibit A**

Pages (ECF Nos. 236, 238, 241) are **GRANTED**. The parties are **DIRECTED** to contact Magistrate Judge Leonard's chambers within three (3) days of this Order to schedule a status conference to set a trial date, pretrial motions deadline, and any remaining discovery-related deadlines[22] in this **non-capital case**. The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record and Magistrate Judge Leonard.

 **IT IS SO ORDERED.**

/s/
_____
Arenda L. Wright Allen
United States District Judge

April 14, 2026
Norfolk, Virginia

---

[22] On September 30, 2024, Mr. Hue filed a Motion for Rule 16 Discovery, requesting a discovery order that recognizes the complexity and seriousness of this case. Mot., ECF No. 108. Defendant requested such an order "because this is a complex capital case." *Id*. at 4. Because this is now a non-capital case, the Motion (ECF No. 108) is **DENIED without prejudice**. The parties are **DIRECTED** to confer and propose new discovery deadlines at the status conference with Judge Leonard. If the parties cannot come to a consensus, the Court will welcome a renewed motion on this issue.

**Exhibit A**