## DECLARATION OF MICHAEL K. BACHRACH, ESQ.

I, Michael K. Bachrach, Esq. declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief:

1.  I am a criminal defense attorney admitted to practice law in the State of New York, the District of Columbia, and the State of Minnesota. I am likewise admitted to practice law in the Southern District of New York, the Eastern District of New York, the District of Colorado, the District of Vermont, the Second Circuit Court of Appeals, the Third Circuit Court of Appeals, the Eighth Circuit Court of Appeals, and the United States Supreme Court.

2.  Additionally, I have been admitted *pro hac vice* in criminal cases in the District of New Jersey, the Eastern District of Virginia, the District of Massachusetts, and the District of Puerto Rico.

3.  I am currently on the CJA Terrorism Panel for the Eastern District of New York, the CJA Capital Panel for the Eastern District of New York, the CJA Panel for the Southern District of New York, the CJA Capital Panel for the Southern District of New York, and the CJA Panel for the Second Circuit Court of Appeals.

4.  I have experience handling cases involving the Classified Information Procedures Act, 18 U.S.C. App. 3, and have been appointed to represent defendants in the Eastern District of New York, the Southern District of New York, the District of Massachusetts, and the Second Circuit Court of Appeals in cases involving national security and/or terrorism.

5.  I am familiar with the procedural differences involved in a case involving classified information and have had access to classified information in its original form as well in classified summaries. I also have experience litigating suppression issues involving classified information, including specifically motions to suppress evidence derived through "enhanced" interrogation techniques (commonly referred to as, "torture") and warrantless surveillance.

6.  In December 2024, I was contacted by Athony Cecutti, Learned Counsel for Fawaz Ahemeid, and asked whether I would be available to serve as additional defense counsel in <u>United States v. Fawaz Ahemeid</u>, 20 Cr. 502 (BMC) (EDNY), a case that I was familiar with based upon prior conversations that Mr. Cecutti and I had previously had. Mr. Cecutti explained to me that the case had been recently "no-seeked" and that there was a chance the Federal Defenders would need to withdraw from the case. Mr. Cecutti called to inquire whether I would be available to replace the Federal Defenders as his co-counsel, and explained that the reason he would seek my appointment in the event the Federal Defenders withdrew from the case was specifically due to my active security clearance, membership on the CJA Terrorism Panel for the Eastern District of

**Exhibit C**

New York, and experience having previously litigated suppression issues involving and relating to classified information.

7. It was made clear to me by Mr. Cecutti at the time of his request, that Attorney General Garland had directed the Government not to seek the death penalty against Mr. Ahemeid in this case, and that as a result it was the understanding of the Court and all parties, including Mr. Ahemeid, that the case was now proceeding non-capitally.

8. Beyond Mr. Cecutti's assurances regarding the then non-capital status of the case, I am familiar with the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.*, and have served as Learned Counsel, lead/local counsel, or additional counsel on 32 death-eligible capital cases including seven that have been authorized for the death penalty.

9. Of those prior authorized cases, I have tried one death penalty case to penalty phase verdict and drafted the motions and participated in jury selection on a second death penalty case that was tried to a penalty phase verdict by my then supervisor. In the other authorized cases that I have worked on, the Notice of Intent to Seek the Death Penalty was either dismissed on motions or deauthorized by the Attorney General prior to trial; in two instances the case ended in a non-death guilty plea.

10. Based upon my capital defense experience, when I was appointed to this case I knew that no Attorney General had *ever* filed a Notice of Intent to Seek the Death Penalty in a case where a prior Attorney General (or even that same Attorney General) had previously directed the Government *not* to seek the death penalty against that same defendant in that same case. I was aware that there had been cases where multiple no-seek determinations were involved due to the impact of superseding indictments, or separate cases for the same defendant, but no instances of a decision to seek the death penalty based upon charges that had been previously no-seeked.

11. Prior to December 2024, I had also researched whether there were any provisions of the Justice Manual or the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.*, that created a process which would allow a no-seek decision to be reversed, and I could find none. I could find provisions allowing for the amendment or withdrawal of a decision to *seek* the death penalty, but no similar provisions relating to the amendment, reversal, or withdrawal of a prior decision *not* to seek the death penalty. Indeed, the Justice Manual refers to a no-seek decision as a "final decision." Justice Manual § 9-10.150.

12. Beyond my direct representation cases, since May 2024 I have been a member of the Federal Death Penalty Resource Counsel Project (hereinafter, "the Project"), a program of the Defender Services Office of the Administrative Office of the U.S. Courts. In that capacity, I have served as Resource Counsel to death-eligible capital defendants nationwide, including those who are currently, or were at the time, authorized for a death-penalty prosecution.

13. Because of all of the above, when I was appointed to Mr. Ahemeid's case, it was clear to me that my appointment was as a non-capital co-counsel, and I understood that the

**Exhibit C**

reason I was asked to participate in this case was due to my experience in national security and terrorism cases. I also understood that because I had been appointed pursuant to 18 U.S.C. § 3006A on a CJA-20 appointment order, *not* 18 U.S.C. § 3005 on a CJA-30 appointment order, my initial appointment was intended by the Court as a non-capital CJA appointment, and that the death penalty was not believed by the Court or the parties to have any continuing relevance to the defense or prosecution of Mr. Ahemeid.

14. Additionally, because of the posture of the case, at the time of my appointment my co-counsel and I did not believe it was necessary to seek a plea bargain from the Government that would avoid the death penalty. A plea to a life or near life sentence (as a means of avoiding the death penalty) was no longer necessary since the avoidance of the death penalty had already been accomplished through Attorney General Garland's no-seek determination. As a result, we did not attempt to negotiate a plea agreement during the final two months of the Biden Administration. For the same reason, we also did not suggest to Mr. Ahemeid that he plead guilty to the Indictment during those final two months to avoid the possibility that a future Attorney General would seek to reverse Attorney General Garland's decision. Such a reversal would have been without any prior precedent in the entire history of the modern Federal death penalty, a history that involves the prosecution of well over 3000 death-eligible defendants.[1]

15. Guideline 10.9.1(A) of the *ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 HOFSTRA L. REV. 913, 1035 (2003) (hereinafter, "ABA Guidelines"), provides, "Counsel at every stage of the case have an obligation to take all steps that may be appropriate in the exercise of professional judgment in accordance with these Guidelines to achieve an agreed-upon disposition." ABA Guideline 10.9.1(B)(9)(a) further provides, "Specifically, counsel should know and fully explain to the client … benefits the client might obtain from a negotiated settlement, including … a guarantee that the death penalty will not be imposed."

16. I have presented training courses to criminal defense attorneys and judges regarding various aspects of the capital trial process including the importance of understanding that a capital defense attorney's primary goal is to avoid a sentence of death. I have taught – and the consensus among experienced Federal capital defense attorneys is that – a life sentence is a defense win in an authorized death penalty case. I truly believe that to be the case.

17. To that end, as part of the June 2, 2025 supplemental mitigation submission that we provided to the Attorney General's Capital Review Committee, we included Mr. Ahemeid's offer to plead guilty in this case in exchange for an agreement not to seek

---

[1] Upon information and belief, the total number of death-eligible defendants prosecuted in the post-Furman era is actually much higher, but I have stated a conservative estimate here that I assume the Government will not dispute. I am not aware whether this issue ever rose prior to the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238 (1972).

**Exhibit C**

the death penalty, and, during our June 9, 2025 meeting with the Attorney General's Capital Review Committee, we stressed that Mr. Ahemeid would be specifically willing to plead guilty to the Indictment – thus carrying a recommended sentence under the United States Sentencing Guidelines of life imprisonment – so long as it was in exchange for an agreement not to seek the death penalty against him in this case.

18. Had we believed prior to President Trump's inauguration that the next Attorney General (i.e., Attorney General Bondi) would seek to reevaluate Attorney General Garland's no-seek determinations and would in some instances attempt to reverse those decisions, we would have worked tirelessly to ensure that Mr. Ahemeid disposed of this case prior to President Trump's inauguration.  I also believe that we would have been able to convince Mr. Ahemeid to plead guilty – either pursuant to a plea agreement or directly to the Indictment – prior to the change in Administrations given the ease in which Mr. Ahemeid expressed a willingness to plead guilty in exchange for a no-seek reaffirmation as part of our supplemental mitigation submission in June 2025.

19. It my strong professional opinion that any competent defense lawyer who knows that the death penalty realistically remains a possible punishment for his or her client would work tirelessly to resolve the case in a manner that permanently avoids the imposition of such penalty against their client, and such would certainly have been my goal for Mr. Ahemeid.  Indeed, it still is.

Dated: New York, New York
 April 27, 2026

Michael K. Bachrach, Esq.

**Exhibit C**